IN THE UNITED STATE DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, <br>     Plaintiffs, <br><br> v. <br><br> CITY OF CHAMPAIGN, ILLINOIS and OFFICER ANDRE DAVIS (officer # 7786), <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. _____ <br><br> EQUITABLE RELIEF IS SOUGHT |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COME Plaintiffs, JACOB SAATHOFF (hereinafter "Jake"), KATHY SAATHOFF (hereinafter "Kathy"), and KELSEY MARKOU (hereinafter "Kelsey"), (hereinafter collectively "Plaintiffs"), by and through their attorneys, Sorling Northrup, Stephen F. Hedinger, of Counsel, and for their Complaint against Defendants, CITY OF CHAMPAIGN and OFFICER ANDRE DAVIS (hereinafter "Officer Davis"), allege as follows:

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution, among other claims.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and venue is proper under U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the corporate limits of the City of Champaign, which is located within this judicial district.

## Facts Related to All Counts

3. Plaintiffs, Jake, Kathy and Kelsey, all are adults who reside on South Crescent Street in Champaign, Champaign County, Illinois. Jake and Kathy are husband and wife, and Kelsey is Kathy's daughter and Jake's step-daughter.

4. Defendant Officer Davis, sued herein in both his individual and his official capacity, is an individual employed at all relevant times as a police officer by the City of Champaign, Illinois. Upon information and belief, Officer Davis' badge number is 7786. At all times relevant hereto, Officer Davis was acting under color of law and within the course and scope of his employment as a police officer for the City of Champaign.

5. Defendant City of Champaign is a municipal corporation incorporated under the laws of the state of Illinois located in Champaign County, and operates the Champaign Police Department, and, at all times relevant to the events complained of herein, was the employer of Officer Davis.

6. Prior to November 17, 2012, Jake, Kathy and Kelsey were owners of a chocolate-colored Labrador retriever named "Dog." As of that date, Jake, Kathy and Kelsey had owned Dog for approximately 4½ years and Dog was almost six years old.

7. Jake had trained Dog as a hunting dog, in particular to retrieve fallen birds, and Jake worked with Dog for hours each day to train and accustom Dog to hunting conditions. Dog was familiar with the sound of a gunshot, and was trained upon hearing a gunshot to freeze and look at the shooter for instructions on where to go to retrieve a downed bird.

8. In addition to training and acting as a hunting dog, Dog was a much loved family pet, who brought joy and happiness to all in Jake, Kathy and Kelsey's household. Kelsey had a

special bond with Dog, and was the person who almost always took him for daily walks around the neighborhood.

9. On Saturday, November 17, 2012, at a little after 5:00 p.m., Kelsey took Dog for a walk. Dog was on a leash, and was wearing two collars with name tag and rabies vaccination tags.

10. The Plaintiffs' house is located directly across Crescent Street to the east from a public high school. On the north end of the high school property is open space that looks park-like, but is school property, bounded by John Street. Kelsey took Dog across Crescent Street to the high school, then turned south and walked around the entire school property. She and Dog had walked all around this school property, and had just turned south from John Street onto Crescent, approaching their home, by about 5:30 p.m. Kelsey and Dog stayed on the sidewalk as they went south.

11. The sun had already gone down by the time Kelsey and Dog began their walk, but street and other ambient lighting provided sufficient light for them to see their way along the sidewalk.

12. The weather that evening was very pleasant, and was unseasonably warm. Consequently, a number of other people were also outside at that time, walking and recreating and otherwise enjoying the weather.

13. The east side of Crescent Street, which is the side where Plaintiffs' house is located, is residential. Single family homes are located near Plaintiffs' house, while further north, near the intersection with John Street, are located several apartment complexes.

14. As Kelsey and Dog turned the corner and headed south on Crescent toward their home, at the park-like area of the public high school property, a gray and white dog ran toward

them from the east across Crescent Street, apparently coming from one of the apartment complexes.

15. When the gray and white dog reached Kelsey and Dog, it immediately lunged at and attacked Dog, and Dog attempted to defend himself. Both thereupon engaged in a dog fight.

16. Several people gathered as Dog and the gray and white dog fought. Kelsey held onto the leash and attempted to maneuver Dog away from the other dog, and to strike and push the other dog in an effort to stop its assault on Dog. At least one of the onlookers also attempted to pull the gray and white dog from off of Dog.

17. One onlooker suggested to Kelsey that Dog could better defend himself if Kelsey were not constraining his movements by pulling on the leash, and Kelsey agreed and dropped the leash. Even then, however, Dog was not able to completely evade the other dog's attack, and the two dogs remained locked together in a dog fight.

18. One onlooker suggested that the police might help, and when Kelsey agreed, the onlooker called for police assistance.

19. On Saturday, November 17, 2012, Officer Davis arrived at the intersection of John and Crescent around 5:30 p.m. in response to a call regarding a dog fight in the area.

20. Upon exiting his police car, Officer Davis had a conversation with Kelsey, and Kelsey told Officer Davis which dog belonged to her.

21. Kelsey informed Officer Davis of two defining characteristics allowing him to easily distinguish her dog. Kelsey stated that the aggressor dog was gray and white, while her dog was chocolate-colored, and she identified her chocolate lab by indicating that he was the one wearing a leash and two collars.

22. Neither the other dog nor Dog displayed any sign of aggression toward anyone in the crowd or to Officer Davis, but focused entirely and exclusively upon fighting each other.

23. At no time did either the gray and white dog or Dog make or threaten physical contact with anyone in the crowd or with Officer Davis.

24. The gray and white dog was completely engrossed in attacking Dog, and Dog's attention was solely focused on protecting himself from the other dog.

25. Within no more than a few seconds after Kelsey identified her dog, Officer Davis drew his gun and fired two shots at the chocolate lab. The first shot missed, but the gunshot noise startled both dogs, and Dog looked up toward the source of the gunshot. Officer Davis then shot again, and this time hit Dog.

26. After Dog was shot the two dogs separated, and Officer Davis then began to shoot at the gray and white dog, which ran back across Crescent Street toward the apartment complexes.

27. Officer Davis ran after the gray and white dog, occasionally firing shots at it. As a result of those shots, at least one bullet from Officer Davis' gun entered into and came to rest in an apartment unit in an apartment complex on the east side of Crescent.

28. Kelsey witnessed the unnecessary shooting of her beloved dog. As Officer Davis fired his first shot Kelsey screamed to him to stop, and yelled that he was shooting the wrong dog. Officer Davis ignored her, shot again, and Kelsey screamed that her dog had been shot.

29. As Officer Davis left to chase after the other dog, Dog crawled over to the grass between the sidewalk and the street, and Kelsey knelt beside him, trying to provide comfort and demonstrating to the best of her ability her love and care and concern for Dog. Dog whimpered and was in obvious pain.

30. Officer Davis soon returned to his police car, near where Dog was dying. A bystander suggested calling an ambulance but Officer Davis refused, stating that an ambulance would not come for a dog. Kelsey asked Officer Davis to take Dog to a veterinarian, but Officer Davis refused, and said he had to stay there because he had discharged his firearm. He did at that time request assistance from Animal Control officers.

31. Dog suffered severe pain and discomfort as a result of being shot by Officer Davis, which lasted from the time he was shot until he died of his wounds, a duration of several minutes. Kelsey was with, and observed and cared for, Dog during much of the time of his suffering and pain, and she watched as he died.

32. Jake and Kathy had been nearby as the incident occurred. When Kelsey realized that Dog was dying and help was not on the way, she ran to get Jake and Kathy. The three arrived at the scene at about the time Dog died. By that time, many other City of Champaign police officers had also arrived on the scene.

33. After Officer Davis shot Dog, the gray and white dog ran eastward across Crescent to a nearby apartment complex, where it crawled under a parked car. An animal control officer arrived and took the gray and white dog into custody without incident or injury. The gray and white dog had no collar, tags, markings, microchip, or indicia of any sort identifying an owner. It was taken to the University of Illinois emergency veterinary clinic for treatment of wounds received during the fight with Dog and a grazing gunshot wound to its leg, and then was taken to and held at the Champaign County Animal Control Department kennel. He was subsequently euthanized without an owner ever being identified.

34. Numerous alternatives were available to Officer Davis to respond to the dog fight in which no person was or had been threatened in any way. Among other things, Officer Davis could and should have done one or more of the following:

- Contacted Animal Control to assist and apply their expertise to separate and control the dogs;

- Used a fire extinguisher, commonly carried as standard equipment in police cars, to douse the dogs, then separated and controlled them when they reacted to the fire extinguisher spray;

- Called for back up police officers to assist with physically separating and controlling the fighting animals;

- Used a taser, or chemical Mace, or some other non-lethal means, to subdue one or both of the dogs;

- Allowed the dogs to continue fighting, which at most would likely have resulted in non-life-threatening injuries to one or both of the dogs.

35. Shooting one or both of the fighting dogs was not necessary in order to break up the fight, but in fact was intended to, and did, result in the destruction by death of the very animal Officer Davis had been dispatched to assist.

36. Dog had never been aggressive, and had never bitten, attacked, endangered, or inflicted injury on any human being on public or private property, nor had he chased or approached any person upon the street, sidewalks, or any public grounds in a menacing attitude or apparent attitude of attack. Dog had no history of aggression, attacks, or bites, but had only prior positive interactions with human beings.

37. Dog's value to Plaintiffs is incalculable. In the four and half years that he was a member of their household, though, Plaintiffs had invested at least $30,000 for professional training, as a hunting dog, and Dog had reached the "Master" level of bird-dog proficiency.

38. After Dog died, he was taken to the University of Illinois veterinary clinic, where a necropsy was performed.

39. Dog died from a gunshot wound.

### Count I – 42 U.S.C. § 1983: Fourth Amendment Violation
### (Against Officer Davis)

40. As and for paragraph 40, Plaintiffs re-allege and incorporate by reference paragraphs 1-39 above, inclusive, as if fully set forth herein.

41. The actions of Officer Davis of shooting and killing Dog, done while acting under color of law, constituted a seizure of Plaintiffs' property in violation of the United States Constitution.

42. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiffs' constitutional rights.

43. The misconduct described in this Count was undertaken with malice, willfulness and/or reckless indifference to the rights of others, specifically the rights of Plaintiffs in their property.

44. As a result of Officer Davis' illegal seizure, Plaintiffs have suffered serious and severe injury, including emotional anguish, pain, suffering, and financial loss due to the time and money expended to train Dog, resulting in a loss of more than $30,000.

WHEREFORE Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, respectfully request that this Court enter judgment in their favor and against Officer Davis, in both his individual and his official capacity, on Count I of their complaint, and award to them damages in an amount deemed just, including costs of this action, including attorney fees and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFFS DEMAND TRIAL BY JURY AS TO COUNT I**

**Count II – 42 U.S.C. § 1983: Fourth Amendment Violation – Monell Claims**
**(Against the City of Champaign)**

45. As and for paragraph 45, Plaintiffs re-allege and incorporate by reference paragraphs 1-44 above, inclusive, as if fully set forth herein.

46. Officer Davis' misconduct, described above, was undertaken pursuant to a policy and practice of the City of Champaign in that:

   a. As a matter of both policy and practice, the City of Champaign is the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control its officers, such that its failure to do so manifests deliberate indifference.

   b. Defendant City of Champaign is charged with duties including the promulgation and adoption of rules and regulations and general and special orders for the governance of the City of Champaign.

   c. Defendant City of Champaign employs policy makers to train and supervise its police officers regarding the use of force, and regarding the use of firearms.

   d. At all times relevant to this Complaint, Officer Davis was acting under the direction and control of the policy makers for the City of Champaign.

   e. At all times relevant to this Complaint, and acting under color of law and pursuant to their policy making authority for the City of the Champaign, the policy makers charged with policy making knowingly, recklessly, maliciously, or with a deliberate indifference and in bad faith to the rights of citizens and a callous disregard of Plaintiffs' rights, failed to instruct, train, supervise, and control police officers in their

duties to refrain from the acts alleged in this Complaint, and/or with regard to proper and appropriate means of addressing situations involving domestic pets, and particularly involving pet dogs.

      f.     Prior to the events described in this Complaint, Officer Davis had on at least one prior occasion improperly discharged his firearm while performing his police duties in the employ of the City of Champaign.  The City of Champaign failed to adequately train and supervise Officer Davis with regard to the appropriate use of a firearm, particularly in light of Officer Davis' history of improper firearm use, with the direct and proximate result that Officer Davis improperly discharged his firearm on November 17, 2012, killing Dog, and also damaging an apartment on the east side of Crescent.  This failure exhibits deliberate indifference by the City of Champaign to the safety of person and property of the citizens of the City of Champaign, including that of Plaintiffs.

      g.     Municipal police officers, including those employed by the City of Champaign, are commonly and routinely called upon as part of their official police duties to interact with domestic animals, including dogs, and with their owners.  Despite the routine nature and the frequency of such contacts, the City of Champaign failed to train its police officers with respect to the proper way to interact with pets and owners, including but not limited to the not-unusual circumstances of a fight between two dogs.

      h.     The serious harm to Plaintiffs was the obvious and expected consequence of the City of Champaign's failure to train and supervise its police officers.

      i.     As a direct and proximate result of the above acts of the City of Champaign, Plaintiffs suffered damages in connection with the deprivation of their

constitutional and statutory rights guaranteed by the Fourth Amendment to the Constitution of the United States and protected by 42 U.S.C. § 1983.

47. In the time since Dog was shot and killed by Officer Davis, the City of Champaign Police Department amended the department's use-of-force policy and has admitted that it will begin training officers to better handle cases involving animals.

48. As a result of Officer Davis' unjust seizure, Plaintiffs suffered both emotional and financial injuries.

WHEREFORE Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, respectfully request that this Court enter judgment in their favor and against the City of Champaign on Count II of their complaint, and award to them damages in an amount deemed just, including costs of this action, and including attorney fees and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFFS DEMAND TRIAL BY JURY AS TO COUNT II**

**Count III – Intentional Infliction of Emotional Distress – State Law Claim
(Plaintiff Kelsey Markou Against Officer Davis)**

49. As and for paragraph 49, Plaintiffs re-allege and incorporate by reference paragraphs 1-48 above, inclusive, as if fully set forth herein.

50. Officer Davis engaged in intentional conduct resulting in the infliction of severe emotional distress by Kelsey, including (1) extreme and outrageous conduct, (2) intent to inflict severe emotional distress or knowledge that there was a high probability that the conduct would do so, and (3) the conduct actually caused severe emotional distress.

51. As an officer of the law, Officer Davis was in a position of authority over Kelsey at the scene of, and at the time of, the shooting of Dog.

52. Because Kelsey told Officer Davis that her dog was the chocolate lab with two collars around his neck, Officer Davis knew or had reason to believe that the chocolate lab belonged to Kelsey.  Further, after he fired the first shot Kelsey told Officer Davis he was shooting her dog, and Officer Davis thereupon shot and hit Dog.

53. Officer Davis knew or had reason to believe that there was a high probability that shooting the chocolate lab would cause severe emotional distress to Kelsey as the owner of the dog, particularly when done in her direct presence, and after she had yelled at him not to shoot her dog.

54. Dog was the victim of an unprovoked attack by the gray and white dog, and Officer Davis had been dispatched to the corner of Crescent and John to protect and defend Dog from that attack.  The act by Officer Davis of shooting Dog, as described above, under these circumstances and in front of Kelsey, and after Kelsey asked him not to, was extreme and outrageous.

55. As a direct and proximate result of the actions of Officer Davis, Kelsey has suffered severe emotional distress, among other injuries.

WHEREFORE Plaintiff, KELSEY MARKOU, respectfully requests that this Court enter judgment in her favor and against Officer Davis, in both his individual and official capacity, on Count III of her complaint, and award to her damages in an amount deemed just, including costs of this action, and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFFS DEMAND TRIAL BY JURY AS TO COUNT III**

### Count IV – Conversion – State Law Claim
### (Against Officer Davis)

56. As and for paragraph 56, Plaintiffs re-allege and incorporate by reference paragraphs 1-55 above, inclusive, as if fully set forth herein.

57. By shooting and killing Dog with no lawful reason or justification, Officer Davis exerted deliberate and wrongful control over Plaintiffs' dog.

58. The Plaintiffs owned Dog, and they had an immediate right to possession of their dog.

59. Kelsey demanded possession of her dog by clearly informing Officer Davis which dog belonged to her with the obvious expectation that Officer Davis would then retrieve and return the dog, and by asking him not to shoot Dog.

60. As a direct and proximate result of the actions of Officer Davis, Plaintiffs suffered the permanent loss of their property, which had both actual and sentimental value.

WHEREFORE Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, respectfully request that this Court enter judgment in their favor and against Officer Davis, in both his individual and official capacity, on Count IV of their complaint, and award to them damages in an amount deemed just, including costs of this action, and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFFS DEMAND TRIAL BY JURY AS TO COUNT IV**

### Count V – Respondeat Superior
### (Against the City of Champaign)

61. As and for paragraph 61, Plaintiffs re-allege and incorporate by reference paragraphs 1-60 above, inclusive, as if fully set forth herein.

62. At all times while committing the acts alleged in the preceding paragraphs and Counts, Officer Davis was an employee and an agent of the City of Champaign, and at all relevant times acted within the course and scope of his employment.

63. The City of Champaign is liable as principal for all torts committed by its employees and agents in the course and scope of performing their work, including for conversation and infliction of emotional distress.

WHEREFORE Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, respectfully request that this Court enter judgment in their favor and against the City of Champaign on Count V of their Complaint, and award to them damages in an amount deemed just, including costs of this action and punitive damages where available by law, and for any other relief that this Court deems just and appropriate under the circumstances.

### PLAINTIFFS DEMAND TRIAL BY JURY AS TO COUNT V

### Count VI --Humane Care for Animals Act
### (Against Officer Davis and the City of Champaign)

64. As and for paragraph 64, Plaintiffs re-allege and incorporate by reference paragraphs 1-63, inclusive, as if fully set forth herein.

65. By shooting Dog, Officer Davis intentionally committed an act that caused Dog to suffer serious injury and death. Officer Davis committed this act in the course and scope of his employment by the City of Champaign.

66. Dog was considered by Plaintiffs to be, and Dog was, a pet.

67. Plaintiffs, collectively and individually, had a right of ownership in Dog on November 17, 2012.

68. Plaintiffs incurred expenses as a result of Officer Davis' intentional act, including veterinary expenses and other expenses intended to rectify the effects of the cruelty, pain, and suffering of Dog.

69. Each of the Plaintiffs suffered emotional distress as a direct and proximate result of Officer Davis' killing of Dog.

70. Pursuant to 510 ILCS 70/16.3, each Plaintiff is entitled to punitive or exemplary damages of not less than $500 but not more than $25,000 for each act of abuse to which Dog was subjected from each of Officer Davis and the City of Champaign. Also pursuant to that statute, Plaintiffs are entitled to their reasonable attorney's fees and costs actually incurred in prosecuting this action.

71. Also pursuant to 510 ILCS 70/16.3, this Court is authorized, and Plaintiffs hereby ask this Court, to enter one or more injunctive orders against Officer Davis and against the City of Champaign to protect animals from any further acts of abuse, neglect, or harassment by these Defendants.

WHEREFORE Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, respectfully request that this Court enter judgment in their favor and against Officer Davis, in both his individual and his official capacity, and against the City of Champaign, on Count VI of their complaint, and award to them damages sufficient to compensate them for the expenses they incurred and the emotional distress they each have suffered, and to award punitive or exemplary damages as allowed by statute, and to enter an order enjoining Defendants from committing similar acts of aggravated cruelty to animals in the future, and to award to Plaintiffs

their attorney's fees and their costs in bringing this action, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFFS DEMAND TRIAL BY JURY AS TO COUNT VI**

Dated: November 8, 2013	Respectfully submitted,

	JACOB SAATHOFF, KATHY SAATHOFF and
	KELSEY MARKOU, Plaintiffs

	/s/  Stephen F. Hedinger

	Stephen F. Hedinger (#6198999)
	Attorneys for Plaintiffs
	Sorling Northrup
	1 North Old State Capitol Plaza, Suite 200
	P.O. Box 5131
	Springfield, IL 62705
	Telephone:  (217) 544-1144
	Facsimile:   (217) 522-3173
	E-Mail:  sfhedinger@sorlinglaw.com