E-FILED
Saturday, 25 April, 2015  12:12:54 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATE DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHAMPAIGN, ILLINOIS and OFFICER ANDRE DAVIS (officer # 7786), <br><br> Defendants. | No.  13-cv-02253 |

## PLAINTIFFS' MOTION IN LIMINE

NOW COME Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, through their attorneys, Sorling Northrup, Stephen F. Hedinger of counsel, and submit their Motion in Limine, seeking to bar, exclude and/or limit certain evidence which Defendants may attempt to offer at trial in this matter. In support, Plaintiffs state as follows:

1.       Defendants' joint Rule 26(a) Initial Disclosures submitted to Plaintiffs in this case identified only four people as individuals with discoverable information whom Defendants may use to support their defenses, concerning the following topics: (1) Kelsey Markou, "regarding the scene which prompted the call for police;" (2) Andre Davis, "regarding the call received which led to his arrival at the scene, statements provided by witnesses at the scene, actions taken and the reasons for the actions taken by him;" (3) Tyrone L. Jones, "regarding his observations at the time;" and (4) Champaign police sergeant Matthew J. Crane, "regarding his investigation of the scene, statements from witnesses he interviewed, finding the other animal and describing the condition of the other animal." A true and accurate copy of the Defendants'

Rule 26(a) Initial Disclosures is attached hereto as Exhibit 1. Defendants have served upon Plaintiffs no supplementation to the original Rule 26(a) Initial Disclosures.

2.      Plaintiffs also timely served separately upon each Defendant interrogatories asking identification of all witnesses each Defendant intended to call to testify, and for the information required by Rule 26(a) as to each witness, and for other information.

3.      Interrogatory 13, directed to Defendant Davis, requested as follows: "Identify all witnesses who You intend to call to testify in this case, providing the information described in the Definitions set forth above, and specifically identify any such witnesses who must be disclosed pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure."

4.      In his response to Plaintiffs' interrogatories, Defendant Davis answered No 13: "No witnesses have been identified at this time, yet Defendant will supplement as necessary." Defendant Davis has never submitted a supplement either to his response to Plaintiffs' interrogatories or to Defendants' Initial Disclosures. A true and accurate copy of Defendant Davis' Answers to Plaintiffs' First Interrogatories is attached hereto as Exhibit 2.

5.      Interrogatory 12, directed to Defendant City of Champaign, requested as follows: "Identify all witnesses who You intend to call to testify in this case, providing the information described in the Definitions set forth above, and specifically identify any such witnesses who must be disclosed pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure."

6.      In its response to Plaintiffs' interrogatories, Defendant City of Champaign answered No. 12: "No such witnesses, other than the Champaign Police Officers identified in the police report, have been identified at this time. Defendant will supplement as necessary." Defendant City of Champaign has never supplemented its answer either to Plaintiffs' interrogatories or to Defendants' Initial Disclosures. A true and accurate copy of the Defendant

City of Champaign's Answers to Plaintiffs' First Interrogatories is attached hereto as Exhibit 3.

7.     **Motion in Limine No. 1**: In light of Defendants' disclosures and discovery responses, Plaintiffs move that (A) Defendant Davis and Defendant City of Champaign be limited to call as a witness at trial only Kelsey Markou, Defendant Davis, Tyrone Jones, and Sgt. Matthew Crane, and only with respect to the topics specifically identified by the disclosures, and (B) Defendant City of Champaign be barred from calling any of the "Champaign Police Officers identified in the police report" because the City of Champaign never identified the anticipated topics of their testimony, and never identified the "police report" that was referenced, and (C) Defendant Davis and Defendant City of Champaign both be barred from calling any other witnesses concerning any matter whatsoever, and from questioning the four identified potential witnesses concerning any matter other than those specifically identified in the disclosures.

8.     Interrogatory 12, directed to Defendant Davis, requested as follows: "Identify any facts or legal authority that You contend tend to defeat or diminish any aspect of Plaintiffs' claim for a calculation of damages in This Litigation."

9.     In his response to Plaintiffs' interrogatories, Defendant Davis answered No 12: "Officer Davis has no support for the Plaintiffs' claim for a calculation of damages in this litigation although he will supplement as necessary."

10.    Interrogatory 11, directed to Defendant City of Champaign, requested as follows: "Identify any facts or legal authority that You contend tend to defeat or diminish any aspect of Plaintiffs' claim for a calculation of damages in This Litigation."

11.    In its response to Plaintiffs' interrogatories, Defendant City of Champaign answered No 11: "No such legal authority has been identified at this time, yet Defendant will supplement as necessary."

12.     **Motion in Limine No. 2**: In light of Defendants' discovery responses, Plaintiffs move that Defendant Davis and Defendant City of Champaign each be barred from introducing any testimony or other evidence, or presenting any legal authority, in opposition to Plaintiffs' damage claims and calculations in this case.

13.     Interrogatory 14, directed to Defendant Davis, requested as follows: "If You contend that there is any lawful justification or excuse for the shooting of Dog by You on November 17, 2012, state the lawful justification or excuse and state all factual and legal support for the contention."

14.     In his response to Plaintiffs' interrogatories, Defendant Davis answered No 14: "All justifications are included in the documentation provided to Plaintiffs on Aug. 5, 2014."

15.     Interrogatory 13, directed to Defendant City of Champaign, requested as follows: "If You contend that there is any lawful justification or excuse for the shooting of Dog by Office [sic] Andre Davis on November 17, 2012, state the lawful justification or excuse and state all factual and legal support for the contention."

16.     In its response to Plaintiffs' interrogatories, Defendant City of Champaign answered No 13: "No such authority has been identified at this time, yet Defendant will supplement as necessary."

17.     Documentation provided to Plaintiffs on August 5, 2014, consisted of the documents Defendants were to submit as their Rule 26 Initial Disclosures; none appeared to bear in any way upon factual or legal justification for the shooting by Defendant Davis of Dog on November 17, 2012.

18.     **Motion in Limine No. 3**: In light of Defendants' discovery responses, Plaintiffs move that Defendant City of Champaign be barred from introducing any testimony or other

evidence, or presenting any legal authority, purporting to provide any lawful justification or excuse for the shooting by Defendant Davis of Dog on November 17, 2012, and that Defendant Davis be limited to presenting only such documentary evidence that was included in a document produced by Defendants to Plaintiffs on August 5, 2014, but excluding any testimony from any witness (which was never disclosed), purporting to provide any lawful justification or excuse for the shooting by Defendant Davis of Dog on November 17, 2012.

19.     Tyrone Jones is a third party to any issue involved in this case. He was a mere witness to and good Samaritan involved in the November 17, 2012 events leading up to Defendant Davis' illegal shooting of Dog; Jones has no stake or claim in any outcome of this case. Despite his neutral position, during his deposition counsel for Defendants asked him certain personal and potentially sensitive or embarrassing questions, including about his educational background, about his upbringing in Chicago, and about the uncle he came to Champaign to live with (specifically including incarceration).  A true and accurate copy of the first and last pages, and of pages 29 – 30, of the transcript of the deposition of Tyrone Jones is attached hereto as Ex. 4.

20.     The personal and potentially sensitive or embarrassing information concerning witness Jones is not relevant in any way to any issue in this case, and any questioning of Mr. Jones about those matters would serve no purpose but to embarrass him and possibly to improperly enflame the jury.

21.     <u>Motion in Limine No. 4</u>: Plaintiffs move that Defendants be barred from questioning Tyrone Jones about his uncle's criminal background or incarceration, or about Jones' own educational background or family background, or from presenting any other information or evidence in the possession of Defendants, including the City of Champaign's

police department, concerning the same.

22.    During Defendants' deposition of Plaintiff Kelsey Markou, counsel for Defendants inquired as to whether the neighborhood in which Kelsey was walking Dog on November 17, 2012, which is the neighborhood in which Plaintiffs live, was "a little bit more seedy or not up to par," and he asked for her opinion about "the quality of those apartment complexes." He also asked whether she had ever "felt a little bit unsafe for any reason" while walking in the neighborhood. The question and the topic of the question were clearly intended to cast the neighborhood in an unwarranted and improper negative light, so as to raise an unjustified emotional response to somehow blame the neighborhood itself for Defendant Davis' illegal, unwarranted and willful actions. A true and accurate copy of the first and last pages, and of pages 16 - 17, of the transcript of the deposition of Kelsey Markou is attached hereto as Ex. 5.

23.    <u>Motion in Limine No. 5</u>: Plaintiffs request that Defendants be admonished, instructed and ordered not to question any witness or to present any other evidence concerning the character or demographics of the neighborhood or in any other way to suggest through questioning that the character or demographics  m of the area of Champaign in which the incident occurred was in any way relevant to or responsible for  Defendant Davis' act of shooting Dog on November 17, 2012.

WHEREFORE Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, request that this Court grant Plaintiffs' Motions in Limine numbered 1 through 5 set forth above, and limit and otherwise bar and control the evidence and testimony in this case accordingly, and grant in favor of Plaintiffs all such other and further relief as this Court deems just and appropriate.

Date: April 24, 2015                         Respectfully submitted,

JACOB SAATHOFF, KATHY SAATHOFF and
KELSEY MARKOU, Plaintiffs

/s/  Stephen F. Hedinger

Stephen F. Hedinger (#6198999)
Attorneys for Plaintiffs
Sorling Northrup
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone:  (217) 544-1144
Facsimile:  (217) 522-3173
E-Mail:  sfhedinger@sorlinglaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

JACOB SAATHOFF, KATHY )
SAATHOFF, and KELSEY MARKOU, )
) 
Plaintiffs, )
)
v. )    No. 13-02253
)
CITY OF CHAMPAIGN, ILLINOIS )
and OFFICER ANDRE DAVIS )
(officer # 7786), )
)
Defendants. )

## RULE 26(a) INITIAL DISCLOSURES

NOW COME the Defendants, CITY OF CHAMPAIGN, ILLINOIS, and OFFICER ANDRE DAVIS, by their attorneys, Thomas, Mamer & Haughey, LLP, by David E. Krchak, and for their initial disclosures, state as follows:

1.      The names and addresses of individuals likely to have discoverable information which Defendants may use to support their defenses (excluding those used only for impeachment) are as follows:

- Kelsey Markou, Plaintiff.

- Andre Davis, Defendant, may be contacted through his attorney at P.O. Box 560, Champaign, Illinois 61824-0560; phone number 217-351-1500.

- Tyrone L. Jones, 1417 Hollycrest Dr., Champaign, Illinois 61821; phone number 217-359-7305.

- Champaign Police Sergeant Matthew J. Crane may be contacted through the attorney for the Defendant, City of Champaign, P.O. Box 560, Champaign, Illinois 61824-0560; phone number 217-351-1500.



EXHIBIT
# 1

2.    The subject of information of the persons disclosed in paragraph 1:

- Kelsey Markou will testify regarding the scene which prompted the call for police.

- Andre Davis, Defendant, will testify regarding the call received which led to his arrival at the scene, statements provided by witnesses at the scene, actions taken and the reasons for the actions taken by him.

- Tyrone L. Jones is a disinterested third party witness who will testify regarding his observations at the time.

- Sergeant Matthew J. Crane will testify regarding his investigation of the scene, statements from witnesses he interviewed, finding the other animal and describing the condition of the other animal.

3.    Documents in Defendants' possession, custody or control which may be used to support its defenses are:

- Radio dispatch logs.

- Reports of internal investigation following the incident.

These documents will be made available to Plaintiff's attorney upon request. In addition, the Defendants possess copies of police reports including statements made by the Plaintiff. They may be viewed and/or copied in the offices of Defendants' attorney.

4.    With regard to any insurance agreement, Officer Andre Davis is being defended and, if necessary, will be indemnified by the City of Champaign for non-punitive damages up to $250,000.00. Thereafter, the City provides insurance coverage in the amount of $1,000,000.00 through One Beacon Insurance Company and excess coverage of $10,000,000.00 through

2

National Casualty Insurance Company with regard to both Officer Davis and the City as a municipal corporation. Insurance agreements are available for inspection upon request.

Respectfully submitted,

CITY OF CHAMPAIGN, ILLINOIS and OFFICER ANDRE DAVIS, (officer # 7786), Defendants

BY:   THOMAS, MAMER & HAUGHEY, LLP

BY:   _____

David E. Krchak, Bar No. 3127316
THOMAS, MAMER & HAUGHEY, LLP
30 Main St., Suite 500
P.O. Box 560
Champaign, IL  61824-0560
Phone: (217) 351-1500
Fax:    (217) 351-2169
krchak@tmh-law.com

IN THE UNITED STATE DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

JACOB SAATHOFF, KATHY SAATHOFF,    )
and KELSEY MARKOU,    )
   )
      Plaintiffs,    )
   )
      v.    )    No.  13-cv-02253
   )
CITY OF CHAMPAIGN, ILLINOIS and    )
OFFICER ANDRE DAVIS    )
(officer # 7786),    )
   )
      Defendants.    )

**DEFENDANT DAVIS' ANSWERS TO PLAINTIFFS' FIRST INTERROGATORIES**

NOW COMES Defendant ANDRE DAVIS, by his attorneys, THOMAS, MAMER & HAUGHEY, LLP, and for his Answers to Plaintiffs' First set of Interrogatories, states:

1.    State Your educational background.

ANSWER:   Please see Attachment A.

2.    State Your employment history to the present, including all full and part time work, from the completion of high school.

ANSWER:   Please see Attachment A.

3.    Identify and describe all police and law enforcement training You have received:

    a.    Prior to being employed the first time as a police officer;
    b.    Subsequent to having been employed for the first time as a police officer;
    c.    Subsequent to being employed as a police officer by the City of Champaign, Illinois;
    d.    Specific to the use of deadly force in any circumstance;
    e.    Specific as to interactions and police activities involving animals.

ANSWER:   All such training is included in Attachment A.

4.    Identify by name, type and year(s) all pets or other animals You have ever had in Your own household, and for each identified pet or other animal that is deceased, identify the means of the pet's or other animal's death:

ANSWER:   Officer Davis does currently own a dog.

**EXHIBIT**

tabbies # 2

5.      Identify, describe, and explain the circumstances of any fines, citations, disciplinary proceedings, or investigations Relating To any animal that has ever resided in Your household, or that were in any way Related To You and Your interactions with any animals.

ANSWER:    Officer Davis has never been disciplined for any animal that has resided in his household, or that has been affiliated with him.

6.      Identify and describe any Negative Interactions You have ever had with or related to any animal, and the full circumstances giving rise to each Negative Interaction.

ANSWER:    Officer Davis has never personally had a negative interaction with a dog, so as to impact his perspective on dogs.

7.      Describe in Your own words the Incident, starting from the dispatch call that sent You to the Incident and ending with Your last involvement in any way Related to the Incident (whether that last involvement was writing a report, discussing the Incident with a supervisor, etc.), except only for Your communications with Your attorneys concerning This Litigation. Include with the description Your explanation for each action You took, and state and describe as precisely and exactly as You can what each person said.

ANSWER:    Ofc. Davis' recollection of the incident at issue in this case is contained in the Champaign Police Dept. police report included in the Aug. 5, 2014 document production, Champaign Case # cc 1211545.

8.      Describe all discussions, communications, conferences, or any other interactions You have had with anyone (except Your attorneys), including with Your superiors, city council members, members of the press, etc., Relating To the Incident, except as described in Your answer to interrogatory number 7 above.

ANSWER:    Officer Davis briefed Sgt. Crane following the incident and participated in a brief disciplinary meeting with his supervisors in the Champaign Police Department.

9.      State how many interactions You have had with dogs as a part of your professional police work during Your police career, and describe each to the best of Your recollection with due consideration of and reference to reports and other records.

ANSWER:    Officer Davis has had approximately six interactions with dogs as part of his professional police work.  The details of four of those instances can be recalled:
1)    A dog was hit by a car.  Officer Davis had to remove the dog from the scene.
2)    Two dogs were aggressively fighting in a bedroom.  Officer Davis called animal control.
3)    Officer Davis took a stray dog to animal control.
4)    Officer Davis was present when another Champaign Police Officer was addressing two dogs fighting.

-2-

10.     Identify all facts upon which You have based Your Answer, or have otherwise relied upon, in making the denials of the allegations of the following paragraphs of the Complaint: 41, 42, 43, and 44.

ANSWER:     All such facts are contained in the Champaign Police Dept. police report included in the Aug. 5, 2014 document production, Champaign Case # cc 1211545.

11.     Describe in detail, including all circumstances (including dates, persons involved, location, etc.) and all consequences (including injuries or deaths, any professional discipline, and the outcome of any internal investigations), each instance or incident in which You discharged a firearm during the course and scope of Your activity as a police officer.

ANSWER:     Please see Attachment B for Officer Davis' Disciplinary Record.
Officer Davis has fired his service weapon at three times during the course of his employment as a police officer.
    1)  The incident at issue in this case.
    2)  Accidental discharge in 2009.
    3)  Euthanize an injured deer in 2012.

12.     Identify any facts or legal authority that You contend tend to defeat or diminish any aspect of Plaintiffs' claim for a calculation of damages in This Litigation.

ANSWER:     Officer Davis has no support for the Plaintiffs' claim for a calculation of damages in this litigation although he will supplement as necessary.

13.     Identify all witnesses who You intend to call to testify in this case, providing the information described in the Definitions set forth above, and specifically identify any such witnesses who must be disclosed pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

ANSWER:     No witnesses have been identified at this time, yet Defendant will supplement as necessary.

14.     If You contend that there is any lawful justification or excuse for the shooting of Dog by You on November 17, 2012, state the lawful justification or excuse and state all factual and legal support for the contention.

ANSWER:     All justifications are included in the documentation provided to Plaintiffs on Aug. 5, 2014.

15.     Identify each person who witnessed or claims to have witnessed the Incident.

ANSWER:     Please see all documents included in the Aug. 5, 2014 correspondence.

16.     Identify each person, not named in Your answer to the preceding interrogatory, who was present or claims to have been present at the scene immediately before, at the time of and/or immediately after the Incident.

ANSWER:     No other individuals are known, beyond those included in the Aug. 5, 2014
                correspondence.

17.     Identify all equipment You carried with You or had immediately available, either on Your person or in Your squad car, at the time of the Incident on November 17, 2012.

ANSWER:     Please see Attachment A.

OFFICER ANDRE DAVIS, (Officer # 7786), Defendant

BY:

Samuel A. Rosenberg, Bar No. 6302881
THOMAS, MAMER & HAUGHEY, LLP
30 Main St., Suite 500
PO Box 560
Champaign, IL  61824-0560
Phone: (217) 351-1500
Fax:     (217) 351-2169
srosenberg@tmh-law.com

-4-

IN THE UNITED STATE DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

JACOB SAATHOFF, KATHY SAATHOFF,     )
and KELSEY MARKOU,                  )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )        No.  13-cv-02253
                                    )
CITY OF CHAMPAIGN, ILLINOIS and     )
OFFICER ANDRE DAVIS                 )
(officer # 7786),                   )
                                    )
            Defendants.             )

**DEFENDANT CITY OF CHAMPAIGN'S ANSWERS TO PLAINTIFFS'
FIRST INTERROGATORIES**

NOW COMES the Defendant CITY OF CHAMPAIGN, ILLINOIS by its attorneys, THOMAS, MAMER & HAUGHEY, LLP, and for its Answers to Plaintiffs' Interrogatories, state:

1.      Identify any facts known to You that tend to disprove or disagree with the allegations of the following paragraphs of the Complaint:  6, 7, 8, 9 10, 11, 14, 15, 16, 17, 18, 23, 29, 31, 32, 33, 34, 36, 37, 54, 66, 68, and 69.

ANSWER:  Response regarding:

> 6: Defendant has no independent knowledge as to the ownership history of the labrador retriever at issue in this case or the age of the dog.

> 7: Defendant has no independent knowledge of the training history of the dog at issue in this case other than documents received from Plaintiff.

> 8: Defendant has no independent knowledge as to the emotions the dog elicited from the Plaintiffs.

> 9: Defendant has no independent knowledge of the statements in Paragraph 9.

> 10: Defendant has no independent knowledge as to the statements in Paragraph 10.

> 11: Defendant has no independent knowledge of the light conditions on Nov. 17, 2012.  The light conditions are mentioned in the Police Report of this incident, provided to Plaintiffs' counsel on Aug. 5, 2014.

> 14: Defendant has no independent knowledge as to the observations of the Plaintiff, Kelsey Markou, or where the gray and white dog came from on Nov. 17, 2012.

> 15: Defendant has no independent knowledge as to the actions of the gray



EXHIBIT
# 3

and white dog at issue in this case.

16: Defendant has no independent knowledge as to the behavior of any onlookers or the actions of Ms. Markou with regards to the dogfight at issue.

17: Defendant has no independent knowledge as to the suggestions of onlookers or the behavior of the dogs involved in the fight.

18: Defendant has no independent knowledge as to the statements in Paragraph 18.

23: Defendant has no independent knowledge as to the statements in Paragraph 23 other than officer observations contained in the Police Report of this incident, provided to Plaintiffs' counsel on Aug. 5, 2014.

29: Defendant has no independent knowledge as to the efforts of Ms. Markou or the condition of the dog at issue in this case following the dogfight.

31: Defendant has no independent knowledge as to the dog's condition following its injuries and preceding his death other than information from the necropsy report completed in this matter.

32: Defendant has no independent knowledge as to Paragraph 32 other than officer observations contained in the Police Report of this incident, provided to Plaintiffs' counsel on Aug. 5, 2014.

33: Defendant has no independent knowledge as to the gray and white dog at issue other than officer observations that it was seized by an Animal Control officer contained in the Police Report of this incident, provided to Plaintiffs' counsel on Aug. 5, 2014.

34: Objection. There are not allegations to respond to, but rather only inappropriate speculative assertions.

36: Defendant has no independent knowledge as to the history of the dog at issue in this case.

37: Defendant has no independent knowledge as to the numeric monetary value of the dog at issue or the dog's training level.

54: Defendant objects to the characterization of the acts by Officer Davis as extreme and outrageous and has no independent knowledge as to the nature of the attack at issue other than those observations contained in the Police Report provided to Plaintiffs' counsel on Aug. 5, 2014.

66: Defendant has no independent knowledge as to what the dog was "considered" to be by the Plaintiffs.

2

68: Defendant has no independent knowledge as to the expenses incurred by the Plaintiffs other than those contained in documents received from Plaintiffs.

69: Defendant has no independent knowledge as to the emotional distress caused from the death of the dog.

2.      Identify any facts upon which You have based Your Answer, or have otherwise relied upon in whole or in part, in making the denials of the allegations of the following paragraphs of the Complaint:  21, 24, 25, 28, 35, 36, 46(a), 46(e), 46(f), 46(g), 46(h), 46(i), 47, 48, 50, 51, 52, 53, 55, 57, 59, 60, 63, 70, and 71.

ANSWER:     The Answers to the Complaint paragraphs listed are based upon the information and statements articulated in the Champaign Police Dept. reports previously provided to Plaintiffs' counsel on Aug. 5, 2014.

3.      Identify every officer of the Champaign Police Department, and every other agent or employee of the City of Champaign, that was present on the scene or in any way involved in the Incident immediately before, during, or at any time after the Incident and identify any notes, emails, text messages, or other communications or documents from any such person relating to the Incident.

ANSWER:     All communications and personnel directly involved in the incident are contained in the document production submitted to Plaintiffs' counsel on Aug. 5, 2014.

With regards to the 911/METCAD Dispatch, the 911 call was received by Mendy (Holycross) Besley (#6637).  Jeremy Ausmus (#6610) was the CPD police dispatcher and sent the officers.  An additional call came in for an individual hearing gun shots.  That was received by David Bellmore (#6623).  Another call was received by Mendy Beasley (#6637) following the incident, reporting that a bullet went through their wall.

4.      Identify all questions, inquiries, other requests for information, or testing or evaluation you make to any potential or prospective Champaign Police Department officer relating to the potential or prospective officer's past history and familiarity with animals, and/or the potential or prospective officer's fear, dislike or other reaction to animals.

ANSWER:     No inquiries are made of Champaign Police Department officers regarding animal history.

3

5. Identify all questions, inquiries, other requests for information or testing or evaluation You have ever made to Officer Andre Davis, either before or after he was accepted as an officer with the Champaign Police Department, relating to his past history and familiarity with animals, and/or his fear, dislike or other reaction to animals, and state in detail all of Officer Andre Davis's responses to such questions, inquiries, other request for information or testing or evaluation.

ANSWER: No inquiries have been made of Officer Davis regarding his history or familiarity with animals.

6. State the number and frequency of interactions police officers employed by the Champaign Police Department had with domestic animals during their official duties during the years 2007 to the present, providing the number per each calendar year.

ANSWER: The Champaign Police Department does not keep records as to the frequency or number of interactions that officers have with domestic animals.

7. Identify and describe all training and supervision provided to prospective or employed Champaign police officers concerning:

a. Interactions with animals,

b. Use of deadly force and in particular the use of firearms,

c. Use of weapons in residential neighborhoods and/or populated areas, and

d. The use of force during interactions involving animals.

ANSWER: Please see Attachments D and E.

In April of 2013 the Champaign Police Department had 58 officers attend a class regarding dog behavior.

Defendant objects to subparagraphs b and c, as they are excessively burdensome due to the volume of training that takes place.

8. Identify all persons in or through whose apartments or property any bullets were found or had passed that had been fired from Officer Andre Davis's gun subsequent to the Incident on November 17, 2012.

ANSWER: All information regarding Paragraph 8 was provided in the police report forwarded to Plaintiffs' counsel on Aug. 5, 2014.

4

9. State and describe all discipline given to Defendant Officer Andre Davis:

    a. For the Incident involved in this case,

    b. For any other incident that involved the discharge of a firearm, and

    c. For any other incident or infraction other than those described in Paragraphs a. and b. above. None

ANSWER: Please see Attachment B.

10. Identify each person who has provided any information or had any involvement with the answering of these interrogatories, and for each person identified state the specific interrogatories for which that person provided information or involvement.

ANSWER: All individuals who provided information in order to answer these interrogatories are included in the document production of Aug. 5, 2014, or are affiliated with the City of Champaign., or their external counsel. Please identify which record keepers you wish to source. Information concerning those not employed by the City of Champaign Legal Department can be forwarded.

11. Identify any facts or legal authority that You contend tend to defeat or diminish any aspect of Plaintiffs' claim for or calculation of damages in This Litigation.

ANSWER: No such legal authority has been identified at this time, yet Defendant will supplement as necessary.

12. Identify all witnesses who You intend to call to testify in this case, providing the information described in the Definitions set forth above, and specifically identify any such witnesses who must be disclosed pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

ANSWER: No such witnesses, other than the Champaign Police Officers identified in the police report, have been identified at this time. Defendant will supplement as necessary.

13. If You contend that there is any lawful justification or excuse for the shooting of Dog by Office Andre Davis on November 17, 2012, state the lawful justification or excuse and state all factual and legal support for the contention.

ANSWER:     No such authority has been identified at this time, yet Defendant will
            supplement as necessary.

14.     Identify each person who witnessed or claims to have witnessed the Incident.

ANSWER:     All such individuals who witnessed or claim to have witnessed the incident
            that are known to the Defendant are included in the document production of
            Aug. 5, 2014.

15.     Identify each person, not named in answer to preceding interrogatory or Your
answer to interrogatory number 3 above, who was present or claims to have been present at
the scene immediately before, at the time of and/or immediately after the Incident.

ANSWER:     Defendant is not aware of any other individuals.

16.     Identify all standard equipment required by your policies and procedures to
be carried by every on-duty uniformed police officer in the employ of the Champaign Police
Department, either on their person or in their assigned squad car.

ANSWER:     Please see Attachment F.

6

17.     Identify all policies and procedures relating to the care, feeding and training of dogs owned and/or used by the Champaign Police Department from 2007 to the present, and for each dog so owned and/or used, state:

  a. Name, breed, age, and cost to purchase;

  b. Annual cost for care and feeding;

  c. Describe all initial and ongoing training and state whether the training is done by outside consultants or by Champaign Police Department employees; and

  d. Describe the living arrangements for each dog (e.g. reside with trainer, etc.).

ANSWER: Please see Attachment C.

CITY OF CHAMPAIGN, ILLINOIS, Defendant
BY:

Samuel A. Rosenberg, Bar No. 6302881
THOMAS, MAMER & HAUGHEY, LLP
30 Main St., Suite 500
PO Box 560
Champaign, IL  61824-0560
Phone: (217) 351-1500
Fax:     (217) 351-2169
srosenberg@tmh-law.com

**In The Matter Of:**

*SAATHOFF v.*

*CITY OF CHAMPAIGN, ILLINOIS*

*TYRONE JONES*

*February 27, 2015*

*Area Wide Reporting and Video Conferencing*

*www.areawide.net*

*scheduling@areawide.net*

*301 W. White Street*

*Champaign, IL  61820*

EXHIBIT

# 4

Original File 0227JONT.txt

Min-U-Script® with Word Index

SAATHOFF v.
CITY OF CHAMPAIGN, ILLINOIS

TYRONE JONES
February 27, 2015

**Page 1**

1         IN THE UNITED STATES DISTRICT COURT
             FOR THE CENTRAL DISTRICT OF ILLINOIS
2                    URBANA DIVISION

3

4    JACOB SAATHOFF, KATHY                )
     SAATHOFF and KELSEY MARKOU,          )
5                                         )
              Plaintiffs,                 )
6                                         )
         vs.                              )    No. 13-cv-02253
7                                         )
     CITY OF CHAMPAIGN, ILLINOIS          )
8    and OFFICER ANDRE DAVIS              )
     (Officer #7786),                     )
9                                         )
              Defendants.                 )
10

11

12

13

14

15             DEPOSITION OF TYRONE JONES
                   CHAMPAIGN, ILLINOIS
16                 FEBRUARY 27TH, 2015
                       3:30 P.M.
17

18

19

20        Jill Nicole Stevens:  CSR # 084-004212

21     Area Wide Reporting and Video Conferencing
                 301 West White Street
22             Champaign, Illinois  61820
                    (800) 747-6789
23

24

**Page 2**

1                        INDEX

2    APPEARANCES:

3    For the Plaintiffs:
         Stephen F. Hedinger
4        SORLING NORTHRUP
         Attorneys at Law
5        1 North Old State Capitol Plaza, Suite 200
         Springfield, Illinois  62705
6        (217) 544-1144
         sfhedinger@sorlinglaw.com
7
     For the Defendants:
8        Thomas S. Yu
         THOMAS, MAMER & HAUGHEY, LLP
9        Attorneys at Law
         30 East Main Street, 5th Floor
10       Champaign, Illinois  61824-0560
         (217) 351-1500
11       tyu@tmh-law.com

12   Also Present:
         Jake Saathoff
13       Kathy Saathoff

14

15

16

17

18

19

20

21

22

23

24

**Page 3**

1                  INDEX - CONTINUED

2

3    EXAMINATION BY:                              PAGE

4    Mr. Hedinger                                   5

5    Mr. Yu                                        26

6    Mr. Hedinger                                  62

7    Mr. Yu                                        70

8    Mr. Hedinger                                  73

9
     EXHIBITS:
10   #              DESCRIPTION                  PAGE

11   Jones 1        Photographs                   59

12   Saathoff 5     Photograph                    60

13   Saathoff 8     Photograph                    60

14

15

16

17

18

19

20

21

22

23

24

**Page 4**

1                    STIPULATION

2

3         IT IS HEREBY EXPRESSLY STIPULATED AND

4    AGREED by and between the parties that the

5    deposition of TYRONE JONES may be taken on

6    FEBRUARY 27TH, 2015, at the Law Offices of Thomas,

7    Mamer & Haughey, LLP, 30 East Main Street, Suite

8    500, Champaign, Illinois, pursuant to the Rules of

9    the Federal Court and the Rules of Federal Procedure

10   governing said depositions.

11

12         IT IS FURTHER STIPULATED that the

13   necessity for calling the Court Reporter for

14   impeachment purposes is waived.

15

16

17

18

19

20

21

22

23

24

SAATHOFF v.
CITY OF CHAMPAIGN, ILLINOIS

TYRONE JONES
February 27, 2015

Page 29

1  conversation?
2  A.  About this case.
3  Q.  Going over what you saw?
4  A.  Exactly.
5  Q.  Okay.
6  A.  Because I was a witness of it.
7  Q.  Right.  Do you have -- I'm sorry, have
8  you -- what is your education background?
9  A.  I graduated.
10  Q.  High school?
11  A.  12th grade.
12  Q.  Excuse me?
13  A.  I graduated from 12th grade.
14  Q.  In Chicago?
15  A.  Yes.
16  Q.  What school was that?
17  A.  That was a second chance school,
18  Cornerstone Academy.
19  Q.  Cornerstone Academy?  And I take it you
20  didn't have anymore education after that?
21  A.  No.
22  Q.  Okay.  What brought you to Champaign?
23  A.  My uncle.
24  Q.  Your uncle?  He moved here?

Page 30

1  A.  He -- yeah, he was here before I got here,
2  but he had -- he had turned his self in.  And I been
3  here since -- ever since 2008.
4  Q.  I'm sorry, I missed that part.  What did
5  you say?  Where did you say your uncle went?
6  A.  He went to jail.
7  Q.  Oh.
8  A.  He turned his self in.
9  Q.  Turned himself in?
10  A.  Right.
11  Q.  Okay.  And so is he still not living with
12  you?
13  A.  Right, he is still locked up.
14  Q.  Okay.  Did you mention whether you have
15  ever given a deposition before?
16  A.  I have never.
17  Q.  Never?  Have you ever been involved in a
18  lawsuit of any kind?
19  A.  No, I haven't.
20  Q.  Have you ever -- have you had any criminal
21  cases ever?
22  A.  No, I don't.
23  Q.  Okay.  Have you ever been called to
24  testify as a witness in any other case?

Page 31

1  A.  No, I haven't.
2  Q.  All right.  So, you did talk briefly about
3  having been around dogs.
4  A.  I have.
5  Q.  It sounds like it was for most of your
6  life.
7  A.  I grew up with them, yes.
8  Q.  So, for you, is it fair to say that you
9  are comfortable around dogs?
10  A.  I am.
11  Q.  Including pit bulls?
12  A.  I am.
13  Q.  All right.  And I think you mentioned that
14  you have been around pit bulls and German Shepherds.
15  A.  Yes.
16  Q.  If you remember, are there any other
17  breeds that you have been around that you are
18  comfortable around?
19  A.  I am comfortable with all animals.
20  Q.  Okay.  In particular, do you know what
21  Labradors look like?
22  A.  Yes, I do.
23  Q.  Okay.  So, you can tell the difference
24  between a Lab and a pit bull?

Page 32

1  A.  Yes, I can.  I used to work at a pet
2  store.
3  Q.  Okay.  Jumping ahead, the two dogs that
4  were involved in this dog fight --
5  A.  Yes.
6  Q.  -- that we're talking about, would it be
7  fair to say that they were a similar size?
8  A.  No.
9  Q.  No?  Okay.  How would you describe their
10  sizes?
11  A.  Well, the pit bull, I would say that its
12  body mass was a little more than the Lab.  The only
13  reason the Lab looked like it was bigger than the
14  pit bull is because of his height.
15  Q.  Okay.  So, you think the pit bull weighed
16  more than the Lab?
17  A.  Yes.
18  Q.  The information in this case and the
19  police reports indicate that the fight -- the dog
20  fight happened like 5:20ish on November 17th.  Does
21  that sound right to you?
22  A.  Yes.
23  Q.  You had indicated to Mr. Hedinger that you
24  had run into the pit bull much earlier.

Page 73

1  so you would call that humble.

2      Q.  Do you feel like the officer got excited

3  and wasn't humble?

4      A.  I feel like the officer was confused on

5  what was going on, so that made his actions and

6  choice of actions a little weird.

7      MR. YU: Okay.  That's all I have.

8          EXAMINATION

9  BY MR. HEDINGER:

10     Q.  And, I'm sorry, I just want to follow up

11  on that question about five minutes before the first

12  shot.

13     A.  Uh-huh.

14     Q.  What was he doing for that five minutes?

15  Because five minutes is kind of a long time.  Watch

16  this second hand sweep there and you can see how

17  long it takes to get to a full minute.

18     A.  Right.

19     Q.  So, my question is five minutes, you know,

20  was he --

21     A.  Maybe I should have said a minute or

22  two --

23     Q.  Okay.

24     A.  — not five minutes.  But as I said -- the

Page 74

1  reason I said five minutes is probably like

2  overexaggerating.

3      Q.  No, I understand, and that's why I am

4  asking you, because sometimes people say things like

5  that, but you don't really think through what five

6  minutes really is.  It takes a while.

7      A.  Right, I was just —

8      Q.  You would say it really didn't --

9  characterize it this way.  Did it take a long time

10  or a fairly short time before he started shooting?

11     A.  Short.

12     MR. HEDINGER: Okay.  That's all I've got

13  then.  Thanks.  Tom, anything?

14     MR. YU: No.

15     MR. HEDINGER: Okay.  Mr. Jones, she's

16  been typing this all up and when she's done, she

17  will create kind of a little document out of that

18  that has everything we have asked and everything you

19  have answered.  You have the right to look that over

20  to make sure she's gotten all of your answers

21  correct.

22     THE WITNESS: All right.

23     MR. HEDINGER: You don't have to do that;

24  you can say you waive it, but if you want to review

Page 75

1  it and make sure she accurately --

2      THE WITNESS: I spoke the truth, so I

3  shouldn't have to look over it.

4      MR. HEDINGER: Okay.  Do you want to waive

5  it then?

6      THE WITNESS: It's waived.

7      MR. HEDINGER: Okay.

8  (The deposition was concluded at 5:34 p.m.)

Page 76

1                CERTIFICATION

2

3      I, JILL NICOLE STEVENS, Certified
Shorthand Reporter and Registered Professional

4  Reporter, do hereby certify that TYRONE JONES came
before me on FEBRUARY 27TH, 2015, and swore before

5  me to testify to the truth, the whole truth and
nothing but the truth regarding his knowledge

6  touching upon the matter in controversy.

7      I do further certify that I did take
stenographic notes of the questions propounded to

8  said witness and his answers thereto and that said
notes were reduced to typewritten form under my

9  direction and supervision.

10     I do further certify that the attached and
foregoing is a true, correct and complete copy of my

11  notes and that said testimony is now herewith
returned.  I do further certify that said deposition

12  was taken at the Law Offices of Thomas, Mamer &
Haughey, LLP, 30 East Main Street, Suite 500,

13  Champaign, Illinois.

14     I do further certify that I am not related
in any way to any of the parties involved in this

15  action and have no interest in the outcome thereof.
Dated at Villa Grove, Illinois, March 5, 2015.

16

17         Jill Nicole Stevens, Reporter

18

1

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE CENTRAL DISTRICT OF ILLINOIS
2                  URBANA DIVISION

3

4   JACOB SAATHOFF, KATHY              )
    SAATHOFF and KELSEY MARKOU,        )
5                                      )
                 Plaintiffs,           )
6                                      )
           vs.                         )   No. 13-cv-02253
7                                      )
    CITY OF CHAMPAIGN, ILLINOIS        )
8   and OFFICER ANDRE DAVIS            )
    (Officer #7786),                   )
9                                      )
                 Defendants.           )
10

11

12

13

14

15            DEPOSITION OF KELSEY MARKOU
16                 CHAMPAIGN, ILLINOIS
                   FEBRUARY 20TH, 2015
17                    12:00 P.M.

18

19

20      Jill Nicole Stevens:  CSR # 084-004212

21   Area Wide Reporting and Video Conferencing
                301 West White Street
22          Champaign, Illinois  61820
                   (800) 747-6789
23

24





Page 2

1                           INDEX

2   APPEARANCES:

3   For the Plaintiffs:
        Stephen F. Hedinger
4       SORLING NORTHRUP
        Attorneys at Law
5       1 North Old State Capitol Plaza, Suite 200
        Springfield, Illinois  62705
6       (217) 544-1144
        sfhedinger@sorlinglaw.com
7
    For the Defendants:
8       Thomas S. Yu
        THOMAS, MAMER & HAUGHEY, LLP
9       Attorneys at Law
        30 East Main Street, 5th Floor
10      Champaign, Illinois  61824-0560
        (217) 351-1500
11      tyu@tmh-law.com

12  Also Present:
        Jake Saathoff
13      Kathy Saathoff

14

15

16

17

18

19

20

21

22

23

24

Page 3

1                    INDEX - CONTINUED

2

3   EXAMINATION BY:                              PAGE

4   Mr. Yu                                        5

5

6   EXHIBITS:
    #         DESCRIPTION                       PAGE

7   1         Complaint                          97

8   2         Plaintiffs' 26(a) Disclosures     113

9   4         Plaintiffs' Answers to            113
              Interrogatories
10
    5         Photograph                         28
11
    8         Photograph                         29
12

13

14

15

16

17

18

19

20

21

22

23

24

Page 4

1                         STIPULATION

2

3            IT IS HEREBY EXPRESSLY STIPULATED AND

4   AGREED by and between the parties that the

5   deposition of KELSEY MARKOU may be taken on

6   FEBRUARY 20TH, 2015, at the Law Offices of Thomas,

7   Mamer & Haughey, LLP, 30 East Main Street, Suite

8   500, Champaign, Illinois, pursuant to the Rules of

9   the Federal Court and the Rules of Federal Procedure

10  governing said depositions.

11

12           IT IS FURTHER STIPULATED that the

13  necessity for calling the Court Reporter for

14  impeachment purposes is waived.

15

16

17

18

19

20

21

22

23

24

Page 5

1            12:11 p.m.

2            KELSEY MARKOU,

3   having first been duly sworn, testified as follows:

4            EXAMINATION

5   BY MR. YU:

6       Q.   First question, when I need to refer to

7   you, how would you like me to address you?  As

8   Kelsey?  Ms. Markou?

9       A.   Kelsey is fine, yeah.

10      Q.   Okay.  Thank you.  You were present for

11  the deposition of your mom earlier this morning, so

12  you have heard a lot of the ground rules I already

13  went over with her.  Would it be helpful for me to

14  refresh you on that or do you want to just --

15      A.   No, I am set.  You are good.

16      Q.   The one thing I am going to ask you is

17  this:  Jill is doing the court reporting and she is

18  working very hard at making sure she gets everything

19  down --

20           MR. HEDINGER:  Working up a sweat.

21  BY MR. YU:

22      Q.   Yeah, so what I am going to ask you is

23  when you answer my questions, try to keep your voice

24  up and towards her so she gets everything down --

---

Page 14

1  out every day for hours and I took both of them
2  every day, probably six out of seven times a week,
3  only resting for a day, as long as it didn't rain or
4  it wasn't freezing.
5      Q.  So, to do that circle eight route with
6  dog, one loop, how long would that usually take you?
7      A.  An hour, hour and 15 maybe, but most of
8  the time like an hour because Boo was about
9  45 minutes, so if you add on the extra 20 minutes,
10  that's about accurate.
11     Q.  That seems like a long walk.
12     A.  It is.
13     Q.  Can you explain why it was -- why you
14  wanted to do it for an hour or so?
15     A.  When I work out, I don't work out to just
16  do 30 minutes; I do it for a long, extended period
17  of time, so that's kind of why I do it that way.
18     Q.  Okay.  So, in part, for your own health
19  benefits?
20     A.  That and Dog, just because he liked going,
21  so it was like why not take the extra 20 minutes
22  because he didn't care.
23     Q.  Did Dog ever give you any issues while you
24  walked him on that path?

---

Page 15

1      A.  No, never.
2      Q.  Do you think he needed that pinch collar?
3      A.  He walked quick, like quickly, so like
4  just to give himself the extra room to restrain him
5  because he would just go; he was the type to just --
6  he knew what we were doing; he would know exactly
7  which way you are going because you take him on the
8  same route every day.
9          So, if you put him on his normal collar,
10  he would just go and know that you were going to
11  follow him, so it gave me a little bit of extra time
12  because after that point I would already be shooting
13  a basketball for two hours; then I would go walk Boo
14  for another hour and then I would walk him, so by
15  that time I was a little bit gassed out, so to have
16  that collar just allowed him to walk at the pace
17  that was actually better for him so he wasn't like
18  choking himself because he would like go so fast
19  because he would get so excited that he would just
20  go so he couldn't breathe.
21     Q.  So, from your description then, it sounds
22  like most of the time he was in front of you; you
23  weren't in front of him on the walk.
24     A.  No, he was next to me or like slightly in

---

Page 16

1  front of me to the left where they are supposed to
2  be when you walk them.
3      Q.  I asked some questions of your mom.  Have
4  you ever had any sort of unpleasant experiences
5  while walking Dog?
6      A.  No, never.
7      Q.  Any encounters of any other animals that
8  were not pleasant?
9      A.  Nope, because Dog just wanted to walk and
10  get home to eat.  He didn't care about anybody else.
11     Q.  Even other animals?
12     A.  No.  Like he would acknowledge they are
13  there and look at them, but he would just keep going
14  on his route because he knew what he was doing.
15     Q.  Okay.  Do you recall me asking some
16  questions about that apartment complex?
17     A.  Yeah, I remember.
18     Q.  Do you have anything to add other than
19  what your mom already said about it?
20     A.  Is there anything specific that you would
21  want to know in detail?
22     Q.  Sure.  I guess I was wondering -- this is
23  only my impression, so you can --
24     A.  That's fine.

---

Page 17

1      Q.  -- clarify if I am not stating it
2  correctly.  I was wondering if that apartment
3  complex maybe was a little bit more seedy or not up
4  to par and that's where the stray pit bull came
5  from.  Do you have any sense of the quality of those
6  apartment complexes?
7      A.  Not really.  I know that people in them
8  can have dogs, so I have seen dogs like around, but
9  people have always been with them like, you know,
10  watching them, having them on leashes, so I never
11  thought anything different of it.  And I have been
12  around people in those apartment complexes and they
13  are no different from like any other person.
14     Q.  Okay.  Have you ever seen any unleashed
15  dogs during your walking route?
16     A.  Never.
17     Q.  Have you ever seen any stray dogs?
18     A.  Never.
19     Q.  Did you ever have an instance while you
20  were walking Dog where you felt a little bit unsafe
21  for any reason?
22     A.  No.
23     Q.  Have you ever seen Dog be aggressive
24  towards another person or animal?

---

Page 118

1    A.    **Exactly, which that correlates to me**
2    **saying it was an equal fight, but you said --**
3    Q.    Well, it doesn't have to be at that moment
4    in time, but at different points in the fight some
5    people were saying the brown dog was the aggressive
6    one and some people are saying the gray dog was the
7    aggressive one at different points during the fight.
8    A.    **To me, I am saying it was equal. There**
9    **was no Dog was over the other dog, the other dog was**
10   **over Dog.  It was an equal fight.**
11   Q.    But is it possible at some point in time,
12   someone could have been watching the fight and
13   thought Dog was the more aggressive dog and was
14   winning the fight at that --
15   A.    **I can't tell.**
16   Q.    But from your perspective, is it possible?
17   A.    **No, because they are both equal.**
18   Q.    But they were rolling around.
19   A.    **They weren't rolling around.  They were**
20   **pushing up on each other, getting leverage.  No one**
21   **was ever really on their back.**
22   Q.    I am not putting words in your mouth.  The
23   words you used before were rolling around --
24   MR. HEDINGER: I object.  I think you are

Page 119

1    mischaracterizing her -- I think she has been
2    consistent that she said they weren't rolling
3    around.  I think she has told you two or three times
4    now that they weren't rolling around.
5    BY MR. YU:
6    Q.    If I am misstating it, I apologize.  I
7    thought that was the phrase you used, but I won't
8    use that one if that's not what happened.
9        So, I asked you whether people in the
10   crowd -- what the people in the crowd were saying
11   and it sounds to me like you are not sure.  Is that
12   fair?
13   A.    Yeah.
14   Q.    So, if someone said without a doubt --
15   somebody at one point in this struggle said the
16   brown dog was the aggressive one, it's possible?
17   A.    I don't know.
18   MR. YU: Okay.  I am done with that stack.
19   I am going to go through my notes.  We might be very
20   close to being done.
21   (Pause.)
22   MR. YU: Kelsey, I have gone through my
23   notes and records and I have asked the questions I
24   wanted to and I want to thank you for leaving school

Page 120

1    and accommodating our schedule.  We are on a tight
2    schedule.  And nothing I can say is going to lessen
3    the emotional things you are going through, but I
4    want to thank you for being mature and answering the
5    questions the best you could today and I realize
6    that it wasn't the easiest thing to do, so I want to
7    thank you for preparing and giving us clear answers
8    and I appreciate all that you are doing to move this
9    case along.
10   **THE WITNESS:** Thank you.
11   **MR. HEDINGER:** We will waive.
12   (The deposition was concluded at 2:34 p.m.)

Page 121

1                   CERTIFICATION
2
3        I, JILL NICOLE STEVENS, Certified
     Shorthand Reporter and Registered Professional
4    Reporter, do hereby certify that KELSEY MARKOU came
     before me on FEBRUARY 20TH, 2015, and swore before
5    me to testify to the truth, the whole truth and
     nothing but the truth regarding her knowledge
     touching upon the matter in controversy.
6
7        I do further certify that I did take
     stenographic notes of the questions propounded to
8    said witness and her answers thereto and that said
     notes were reduced to typewritten form under my
     direction and supervision.
9
10       I do further certify that the attached and
     foregoing is a true, correct and complete copy of my
11   notes and that said testimony is now herewith
     returned.  I do further certify that said deposition
12   was taken at the Law Offices of Thomas, Mamer &
     Haughey, LLP, 30 East Main Street, Suite 500,
13   Champaign, Illinois.

14       I do further certify that I am not related
     in any way to any of the parties involved in this
15   action and have no interest in the outcome thereof.
     Dated at Villa Grove, Illinois, March 4, 2015.
16
17
               Jill Nicole Stevens, Reporter

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2015, I electronically filed the foregoing Plaintiffs' Motion in Limine with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. David E. Krchak
Mr. Thomas Yu
Thomas, Mamer & Haughey, LLP
30 Main Street, Suite 500
P.O. Box 560
Champaign, IL 61824-0560

/s/ Stephen F. Hedinger

Stephen F. Hedinger (#6198999)
Attorneys for Plaintiffs
Sorling Northrup
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone:  (217) 544-1144
Facsimile:  (217) 522-3173
E-Mail:  sfhedinger@sorlinglaw.com