IN THE UNITED STATE DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHAMPAIGN, ILLINOIS and OFFICER ANDRE DAVIS (officer # 7786), <br><br> Defendants. | No. 13-cv-02253 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE***

NOW COME Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, through their attorneys, Sorling Northrup, Stephen F. Hedinger of counsel, and for their response to Defendants' Motion *In Limine* (d/e #51), state as follows:

1. <u>Davis's Post-Dogfight Chase and Pursuit of the Smaller Dog</u>.

Defendants first "request that Plaintiffs be barred from making any comment, suggestion, mention or argument to the jury through Plaintiffs or their witnesses regarding evidence of Davis's subsequent chase and shooting of the smaller dog (not owned by Plaintiffs)." The justification Defendants give for this gag order are that the evidence is not relevant to Davis's seizure of Dog, and that somehow and for some unstated reason the evidence's probative value would be outweighed by the danger of confusing and distracting the jury "from focusing on Davis's actions and intentions while addressing the dogfight." This motion should be denied for the following reasons:

    a.     Allowance of this request would in fact be counter-productive, and would deprive the jury of relevant information while substantially confusing the jury

about the reason for the abrupt end of presented evidence. As the evidence already before this Court supporting the cross motions for summary judgment shows, both parties have already placed significant emphasis not only upon what happened up to the point Davis shot and killed Dog, but also what happened thereafter. The police reports of the situation do not end upon the two shots fired at Dog, but instead discuss Davis's subsequent actions, the arrival of other investigating officers and of animal control, removal of the pit bull from the scene, and other follow-up activities. The testimony is also a continuum – far from ending abruptly upon shooting Dog, Davis continued his involvement by turning and shooting several times at the pit bull, then leaving the area to chase and shoot again at it. He then returned to his squad car and only then sought animal control assistance. Tyrone also continued his own involvement by talking to other responding officers, giving a statement, and approaching the pit bull along with Sergeant Crane and Davis. Sergeant Crane investigated after Davis was finished shooting, and observed the wounded pit bull. Dog died at some point in time after Davis shot him, after limping several feet away and then falling over. Kelsey tried to comfort Dog, then ran to get Jake and Kathy. Jake and Kathy arrived at the scene several minutes after Davis shot Dog. Photos were taken of Dog after he died, and photos were also taken of the pit bull. Emergency veterinary care was given to the pit bull, documented both by testimony and by written reports, and continuing care was also provided to the pit bull while he was housed at the Champaign County animal control facility. In all, substantial relevant evidence, some related merely to context but some

directly relevant to facts of consequence in this case, occurred after Davis quit shooting at Dog. Defendants do not attempt to explain how all of this information could even be filtered from the jury? – would the police reports be redacted so that the only remaining legible parts were of what happened up to the point Davis shot Dog? Or that there would be a large blackened portion where Davis started shooting at and chasing the pit bull? Would the testimony similarly have to end at that point? Even if the redactions and exclusions were limited to Davis chasing and shooting at the pit bull, would not that limitation substantially confuse the jury – what was Davis doing between the time he shot Dog and the time he radioed for a supervisor and animal control? Whatever happened to the pit bull? (Parenthetically, Plaintiffs object to Defendants' reference to the pit bull as being the "smaller" dog –even if that accurately states Davis's impression, it is not an undisputed fact that the pit bull was smaller – Tyrone testified that he thought the pit bull actually weighed more, in fact, and Kelsey thought the two were of about equal size).

b. Defendants fail to offer any explanation as to why evidence of Davis's actions immediately after shooting Dog, and particularly his shooting at and chasing after the pit bull, could possibly confuse or distract the jury. Defendants express concern that the evidence concerning the pit bull might "confuse and distract the jury from focusing on Davis's actions and intentions while addressing the dogfight," but they do not explain any basis for that fear, nor do they explain, even if there is a basis for that particular fear, why the jury must "focus" upon Davis's actions and intentions in the few seconds he spent watching the dog

fight before he killed Dog. Other aspects of the situation also warrant the jury's focus, such as the total amount of time Davis was at the scene, and the condition of the dogs as a result of the so-called "vicious" fight. Moreover, one big issue in this case is the City's own policy, and the Defendants have admitted that six of Davis's seven shots were within and in accordance with policy. The fact that even the City considered the seventh shot to be contrary to policy, and why, would seem of direct relevance to important issues in this case.

2. <u>The Subsequent Modification of Champaign Police Department's "Use of Force" Policy.</u>

Defendants' second request is that Plaintiffs be disallowed from offering evidence that within only a couple of months after Davis killed Dog in compliance with City policy the policy was changed. In support, they claim without analysis that the change was a "subsequent remedial measure" that is inadmissible pursuant to Rule 407 of the Federal Rules of Evidence. Like their first request, this motion is meritless.

   a. Rule 407 only applies where certain elements are met, including that "measures are taken that would have made an earlier injury or harm less likely to occur," and only if the evidence is offered to prove certain things; however, even if Rule 407's bar is applicable for some reasons, the Rule concludes by noting that the proffered evidence may still be admissible if offered for other reasons. Defendants do not analyze the elements of Rule 407 at all, and therefore have forfeited any analysis of this issue by the Court.

   b. The amendment to the City's policy is not offered to prove any of the four

things identified by Rule 407. It is not offered to prove negligence, a product or design defect, or a need for warnings or instructions. Moreover, it is not being offered to prove "culpable conduct," because the culpable conduct in this case was that of Davis in shooting Dog. That conduct is culpable as a matter of Illinois and federal law, irrespective of the City's policy; the policy is merely the City's express agreement with and acceptance and encouragement of Davis's bad conduct.

c. Even if the evidence might otherwise be inadmissible under Rule 407, it is nevertheless admissible because it is relevant to prove the meaning of the word "dangerous," which was part of the policy at the time Davis shot Dog. The City's former policy did not define a "dangerous" animal, but the amendment, in conjunction with Davis's actions, clarifies that a "dangerous" animal at the time Dog was shot was not just one which threatened a human being, but also one which threatened another animal.

3. The Testimony of Chelsea Angelo.

Defendants seek to bar the testimony of Chelsea Angelo because she "has no independent personal knowledge of any of the facts of this case." Defendants claim that "any opinion testimony she may have as a lay witness regarding dog behavior, dog training or police officer training would not be based upon first-hand knowledge or observations and would be excluded," citing Rules 602 and 701 of the Federal Rules of Evidence. Defendants' argument reveals a serious misunderstanding of the role of lay opinion testimony in the federal courts.

a.  Angelo was the City of Urbana animal control officer for more than

fourteen years. For a while during her time there, current Champaign police chief Anthony Cobb was her supervisor. She has substantial experience with and first-hand knowledge of various techniques available to stop dogs from fighting, of training and other methods to assure that responding police officers have the knowledge and skills to respond to emergency calls of dogs fighting, of types of equipment useful in addressing dog fights, and of the behavior of dogs relevant to dog fights and breaking them up. She experienced and responded to "countless" dog fights in her fourteen years as animal control officer. She personally knows the Saathoffs, and she has personal knowledge of their relationship with Dog and of the impact the shooting had upon them. She offered her services to train police officers in animal control techniques following the shooting of Dog, and Chief Cobb accepted her offer. Plaintiffs intend to offer her testimony on all of these subjects, which are clearly relevant to this case.

b.  Based upon the above description, it is clear that Defendants are incorrect in asserting that Angelo has no "independent personal knowledge of any of the facts in this case." Even if by "facts of this case" they only mean the specific events that have led to the Plaintiffs' causes of action, obviously she has "independent knowledge" since she knew the importance the Plaintiffs placed upon their relationship with Dog (clearly relevant to Plaintiffs' damages calculations), and she was the one to whom the City turned to provide the missing training after

Davis shot Dog. More fundamentally, the relevance of her testimony need not be limited to such a narrow description of "facts." Neither Rule 602 nor Rule 701 limits the scope of a witness's testimony in that regard – Rule 602 says the testimony must be based on "personal knowledge of the matter," which incorporates far more than the mere operative facts of the event in question. Rule 701 allows for lay witness opinion testimony that is based upon the witness's perception, and all of the proffered testimony of Angelo is based upon her own direct personal knowledge and experiences.

c.  Rule 401, not cited by Defendants, concerns the "Test for Relevant Evidence;" it is a two-step test requiring consideration of whether evidence tends to make any fact more or less probable, and whether the fact is of consequence in determining the action. The description of Angelo's testimony clearly meets this standard.

d.  Angelo's testimony will have consequence in determining this action, will be based upon her own personal knowledge of the behavior of dogs while fighting, of means and techniques for stopping dog fights, of training that is useful to police officers for responding to fighting dogs, of the Plaintiffs' relationship with their dog, and of the specific training provided to the Champaign police department, among other things. There clearly is no basis even for limiting her testimony in any way by means of an *in limine* order, let alone to bar it altogether.

4.   The Testimony of Officer Matthew Iverson.

Defendants' motion directed to Officer Iverson's potential testimony is similar to that directed to Angelo's testimony. Defendants argue that, since Iverson "testified that he has no independent personal knowledge of any of the facts of this case," "any opinion he may have as a lay witness regarding dog behavior, dog training or police officer training would not be based on the witness's first-hand knowledge or observations and would be excluded," again citing Rules 602 and 701 of the Federal Rules of Evidence. The same analysis and results applied to the motion directed to Angelo apply here, as well.

   a. Defendants are aware, from discovery produced by Plaintiffs in this case, that Dog was an American Kennel Club pure-bred Labrador retriever, that Plaintiffs loved and maintained him as a member of their household, and that they also were deep in the process of training him for advanced hunting work. Dog was within one session of training of reaching his master-level certification, and from the time he began training he worked almost daily with Jake, so that they would work together as a good hunting team. The multi-year training, some taught out-of-state by seasoned and experienced trainers, taught Dog to respond to verbal and audible and hand commands, and to become accustomed to swimming through water (sometime frigid), running over all manner of terrain, and otherwise moving quickly to retrieve fallen birds and then to return with the prey unharmed from his mouth. He was also trained to be attentive but not frightened upon hearing gunshots. All of this training took hours upon hours of Jake's time, and cost the Plaintiffs significant amounts of money which they gladly spent in anticipation of the

    finished product of Dog with his master hunter certification and the skills that training provided. The loss of Dog struck Plaintiffs not only in their hearts, but also in their hopes and plans for and financial investment in the future.

  b. The experience of Officer Iverson as a K-9 officer employed by the City of Champaign in many ways paralleled or even matched the experience of Plaintiffs. His testimony acknowledges the nature and amount of training needed to create and maintain a good working dog and a useful relationship with the dog, the many hours of personal time he spent with his dogs, and the importance of working one-on-one with a working dog. He also has first-hand, personal experience with the equipment necessary to train and keep a dog, including equipment necessary for transporting the dog, food and veterinary care, logistics (travel and otherwise), and other expenses. He also testified about the personal impact of the loss of a dog with which one has had a close working relationship – despite characterizing his dogs as "police tools," Iverson acknowledged that when his second dog, Tango, had to be retired and shortly thereafter be put down due to health issues, he was thankful and grateful that the department supported him with a turnout of more than two dozen officers all there to honor Tango, along with numerous tributes on Facebook, Twitter and elsewhere. Even his own family members, although not as deeply involved with Tango, felt his loss very keenly and deeply. Iverson himself retired not long after Tango retired.

  c. Officer Iverson's experience also bridges between Plaintiffs and Defendants. Officer Iverson was obviously very familiar with dogs and dog behaviors, and

  as part of his daily job he had to learn to "read" and understand the behavior of his and others' dogs. He is also personally familiar with the Champaign Police Department's protocol for training its regular officers and its K-9 officers, and he acknowledges that Champaign did not train any but the K-9 officers in issues involving dog behaviors and how to deal with dogs. He also has personal experience in breaking up a dog fight.

d. As with Angelo's testimony, that of Iverson is all certainly relevant to this litigation, and it is also based upon his personal experience and knowledge, and is rationally based upon his own perception. He is and will be offered as a Rule 701 lay witness. His testimony is not objectionable upon any basis presented by Defendants. There clearly is no basis even for limiting his testimony in any way by means of an *in limine* order, let alone to bar it altogether.

WHEREFORE Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, request that this Court deny in its entirety the Defendants' Motion *In Limine*, and award in favor of Plaintiffs all such other and further relief as this Court deems just and appropriate.

Date: May 8, 2015

Respectfully submitted,

JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, Plaintiffs

/s/ Stephen F. Hedinger

Stephen F. Hedinger (#6198999)
Attorneys for Plaintiffs
Sorling Northrup
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone:  (217) 544-1144
Facsimile:   (217) 522-3173
E-Mail:  sfhedinger@sorlinglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2015, I electronically filed the foregoing Plaintiffs' Response to Defendants' Motion *In Limine* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. David E. Krchak
Mr. Thomas Yu
Thomas, Mamer & Haughey, LLP
30 Main Street, Suite 500
P.O. Box 560
Champaign, IL 61824-0560

/s/ Stephen F. Hedinger

Stephen F. Hedinger (#6198999)
Attorneys for Plaintiffs
Sorling Northrup
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone: (217) 544-1144
Facsimile: (217) 522-3173
E-Mail: sfhedinger@sorlinglaw.com