E-FILED
Monday, 18 May, 2015  02:08:51 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| **JACOB SAATHOFF, KATHY SAATHOFF,** ) | |
| **and KELSEY MARKOU,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Case No. 13-CV-2253** |
| ) | |
| **CITY OF CHAMPAIGN, ILLINOIS, and** ) | |
| **OFFICER ANDRE DAVIS,** ) | |
| ) | |
| **Defendants.** ) | |

### ORDER

This case is before the court for ruling on the Motion for Summary Judgment (#43) filed by Defendants City of Champaign and Officer Andre Davis, and the Motion for Partial Summary Judgment (#46) and Motion to Strike Non-Disclosed Testimony (#49) filed by Plaintiffs, Jacob Saathoff, Kathy Saathoff and Kelsey Markou.  This court has carefully reviewed the arguments of the parties and the documents filed by the parties.  Following this careful and thorough review, Defendants' Motion for Summary Judgment (#43) is GRANTED in part and DENIED in part, Plaintiffs' Motion for Partial Summary Judgment (#46) is DENIED, and Plaintiffs' Motion to Strike Non-Disclosed Testimony (#49) is DENIED.

FACTS[1]

Plaintiffs Jacob Saathoff and Kathy Saathoff are husband and wife.  Plaintiff Kelsey Markou is Kathy's daughter and Jacob's step-daughter.  Each of them was an owner of a chocolate-colored Labrador retriever dog named "Dog."  They obtained Dog in 2008 and, on November 17, 2012, Dog was about 4½ years old.  That day, Markou, who was 18 years old at the time, was walking Dog in their neighborhood.  Dog was wearing a fabric collar with his dog and rabies licenses and a metal "choker" collar for better control.  A leash was attached to the choker collar.

By about 5:20 p.m., Markou had walked her normal route with Dog and was close to the corner of John Street and Crescent Drive, about a half block from Plaintiffs' home.  Markou saw a stray pit bull run toward them.  Once the pit bull reached Dog, the dogs sniffed each other briefly.  Then, without warning or provocation, the pit bull grabbed at Dog's neck, trying to bite and get a hold.  Although startled by the attack, Dog immediately began to defend himself, and soon the dogs were locked in a fight.  Tyrone Jones lived in the neighborhood.  He had seen the stray pit bull in the area and described the pit bull as gray with white spots, including a white belly.  Jones witnessed the beginning of the attack.  He testified that the attack occurred at around the time the sun would go down.  He ran across the street to assist Markou.  Jones testified that he

---

[1] The facts are taken from Defendants' statement of Undisputed Material Facts, Plaintiffs' statement of Undisputed Material Facts and the documents submitted by the parties, including deposition transcripts.  This court has only included facts which are material to the issues raised and are adequately supported by admissible evidence in the record.

had substantial experience with dogs as he grew up in Chicago. His uncle had raised and fought pit bulls. Jones testified that he had witnessed dogfights on many occasions, and from those experiences he gained knowledge of how to stop dogs from fighting.

At the beginning of the dogfight, only Markou and Jones were present, but before long three juveniles, two girls and a boy, also arrived at the scene and observed the fight. As the dogs fought, Jones and Markou attempted to break them apart. Jones suggested that Markou drop Dog's leash in order to allow Dog to more freely defend himself, and Markou did so. Both Jones and Markou then tried kicking at the dogs, but were unsuccessful in parting them. Jones grabbed a nearby tree branch and tried to use it to lever between the dogs, but that was unsuccessful. Following a short period of fighting, Jones asked Markou if she wanted someone to call the police for assistance. Markou agreed and one of the juveniles telephoned the police and reported the dog attack. Jones testified that Markou was hysterical and he was trying to calm her down.

Defendant Davis became employed as a police officer by the City of Champaign in 2004. On November 17, 2012, Davis was traveling in his squad car westbound on John Street around Mattis Avenue en route to a residential burglary alarm call. Davis heard a dispatch call for someone who was walking a dog and the dog was being attacked by a pit bull. While still en route to the alarm call, Davis continued westbound on John Street approaching the intersection at Crescent Drive. Davis testified that there "was a group of people that were frantically waving me down." Davis pulled his car over, stopping it within about 10 feet of the dogfight. Davis stopped at approximately

5:27 p.m.  Davis testified that if he hadn't been flagged down he would not have stopped but would have proceeded to his burglary alarm call.  After he stopped, Davis trained his spotlight on the fighting animals.

Upon exiting his car Davis inquired, and was told, that the attacked dog belonged to Markou.  Both Markou and Jones told Davis that her dog was a chocolate-colored Labrador retriever and was wearing a collar with a leash attached.  Davis heard Markou and Jones describe Markou's dog, but he testified that he had difficulty distinguishing between the two dogs' colors and believed both to have been dark in color.  Markou testified that, because the dogs were engaged in fighting, sometimes the dogs were illuminated by the spotlight and sometimes they were not.  Davis testified that he positioned himself between the spotlight and the dogs and there appeared to be a shadow being cast down upon the dogs.  Davis testified that he is color blind and has difficulty distinguishing between greens, reds, browns, and grays, especially at night depending on lighting conditions.   Markou testified that there was a significant amount of light at the scene.  Jones testified that they pointed at the lab and identified it as Markou's dog.

Davis drew closer to the dogs and one dog appeared to be a pit bull, the other dog he could not clearly identify because he could only see from the midsection to the hind legs.  Davis observed the smaller dog positioned underneath the bigger dog.  By this time, Davis was within 5 to 7 feet of the dogfight.  Davis testified that "[i]t appeared as if the bigger dog was clearly dominating and mauling the smaller dog."  Jones

4

testified that "the Lab was giving the pit a run for its money." Davis testified that, to

him, the dominating dog was dark and the dog on the bottom was darker. Davis stated

that the smaller dog had a white belly. Davis testified that he could see the leash but he

could not tell who it was attached to because it was tangled up between the two dogs.

Jones also testified that when the dogs were fighting, "you really couldn't even tell that

he [Dog] had a leash." Davis testified that he was getting confusing information from

the bystanders. He stated that the kids were yelling "it is the gray dog, it is the brown

dog, not the brown dog." Markou testified that somebody said, "Shoot it."

Davis testified that the larger dog had a muscular build and had a larger head on

it. He stated that, to him it did not resemble a chocolate lab but did resemble a pit bull.

Davis unholstered his gun and aimed at the larger dog certain that it was the aggressor

dog. Davis testified that he shot at the larger solid colored dog "[t]o prevent the smaller

dog from being mauled to death."[2] Davis discharged his firearm but missed. He

---

[2] Davis testified that, during the course of his employment as a police officer he had been involved in prior interactions involving dogs. Those interactions included several occasions where he was called upon to collect a stray dog and remove it to the Champaign County Animal Control facility and a call concerning a deceased dog that had been hit by a car. In addition, Davis had been involved in two prior dogfight incidents. During his first year or two with the police department, he was called to serve as backup to another officers who responded to a fight between two tied-up pit bulls. During that incident, the responding officer attempted to use a catchpole, attempted to beat the dogs to separate them, and attempted to use "OC" spray (i.e. pepper spray), none of which was effective in stopping the dogfight, and following which, upon supervisor approval, the pit bull that was winning the fight was shot and killed by the responding officer. The fight resulted in severe injuries to the other dog, including ripped flesh, exposed inner flesh, and substantial blood. In an incident in 2007, Davis, as a responding officer, was called to address a situation of two pit bulls fighting in a closed bedroom. Davis contacted animal control officers who arrived and were able to break up the fight. The dog that was losing the fight suffered severe injuries. Davis testified that the City purchased a catchpole in 2005 for the purpose of capturing and restraining dogs.

5

discharged his firearm a second time and hit his target.  Markou screamed and Davis

realized he shot Markou's dog.  The two dogs separated and Davis then observed that

the other dog was a pit bull.  The dog's ears were pinned back, his teeth were glaring,

his eyes were widened and it was indicating a heightened state of aggressiveness.

Davis was concerned that someone may get bit, attacked, or mauled by this dog.  Davis

shot at the pit bull and chased after the pit bull as it fled the scene.  Davis testified that

he fired four shots at the pit bull.  He fired one more shot that ended up going through

the wall of one of the apartment units across Crescent Drive, and landing on the floor of

the unit's kitchen.  The apartment was unoccupied at the time.  Dog was determined to

be dead at the scene.  The pit bull was picked up by animal control and ultimately put

down.  Davis testified that the whole event took approximately two minutes.

The Champaign Police Department (CPD) conducted an investigation of Davis's

conduct on November 17, 2012.  Jon Swenson, who was the office of professional

standards lieutenant at the time, conducted the investigation.  Following the

investigation, CPD concluded that Davis's decision to discharge his weapon was within

CPD's policy.  The "Use of Force" policy in effect on November 17, 2012, provided that

"Deadly force may be used to kill a dangerous animal or an animal that is so severely

injured that humanity requires its disposal to prevent further suffering."[3]  The CPD

_____

[3]  The policy was revised following this incident.  The policy now provides,
"Deadly force may be used to kill an animal that either presents an imminent threat of
death or great bodily harm to a person or is so severely injured that humanity requires
its disposal to prevent further suffering."  To the extent that Plaintiffs are relying on the
new policy to show that Davis and the City of Champaign are culpable in this action,
this court concludes that evidence regarding the new policy is inadmissible under Rule

determined that Davis's use of force was within police policy because he used deadly

force to kill a dangerous animal.   Anthony Cobb, Chief of the CPD, testified that he

concluded that there was confusion at the scene as to which dog was responsible for the

attack and that Davis was concerned about the safety of bystanders in the immediate

area.  As a result of the investigation, Davis was suspended for one day based upon his

discharge of his weapon into an apartment.   Davis had previously received a letter of

reprimand for accidentally discharging his weapon in 2009.

       In February 2013, Davis was promoted to the position of detective.  Davis has

received over 1,300 police training hours, which included training in "Use of Force" and

use of firearms.  Stephanie Joos, the Director of Champaign County Animal Control

since 2005, testified at her deposition that there is no specific training available to

respond to dogfights because every situation is so different.  Joos also testified that, in

her almost 18 years in Animal Control services, she is aware of dogfights happening

maybe once or twice a year.

## PROCEDURAL HISTORY

       On November 8, 2013, Plaintiffs filed their Complaint (#1) against Defendants.

In Count I, Plaintiffs alleged that the actions of Davis in shooting and killing Dog

constituted a seizure of Plaintiffs' property in violation of the United States

Constitution.  Plaintiffs sought damages from Davis under 42 U.S.C. § 1983.  In Count

---

407 of the Federal Rules of Evidence.  Rule 407 provides, in pertinent part: "When
measures are taken that would have made an earlier injury or harm less likely to occur,
evidence of the subsequent measures is not admissible to prove . . . culpable conduct."
Fed. R. Evid. 407.

II, Plaintiffs alleged that Davis' misconduct was undertaken pursuant to a policy and practice of the City of Champaign.  Plaintiffs alleged that the City of Champaign had a policy and practice of failing to train its officers adequately to handle their firearms and interact with domestic animals.  Plaintiffs sought damages from the City of Champaign under 42 U.S.C. § 1983 based upon *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).  In Count III, Plaintiff Markou sought damages from Davis under Illinois law for intentional infliction of emotional distress.  In Count IV, Plaintiffs sought damages from Davis under Illinois law for conversion of their property.  In Count V, Plaintiffs sought damages from the City of Champaign under Illinois law based upon respondeat superior.  In Count VI, Plaintiffs sought damages from Davis and the City of Champaign under the Illinois Humane Care for Animals Act, 510 Ill. Comp. Stat. 70/16.3 (West 2012).  Plaintiffs also sought injunctive relief under the Act.

On February 20, 2014, Defendants filed their Answer and Affirmative Defenses (#8).[4]  Defendant Davis asserted the affirmative defense of qualified immunity, arguing that he was entitled to qualified immunity because "any action taken by him regarding this incident was objectively reasonable in light of the facts in front of him."  Both Defendants asserted the affirmative defense of immunity under § 2-202 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), 45 Ill. Comp. Stat. 10/2-202, regarding the claims under Illinois law. Defendants also

---

[4] In Response to Plaintiffs' Motion to Strike Answer (#13), Defendants filed an Amended Answer and Affirmative Defenses (#18).  The affirmative defenses remained the same.

8

raised as an affirmative defense that it is not a violation of the Humane Care for Animals Act for a law enforcement officer to use force, including deadly force, to protect humans.  Defendants also filed a Motion to Dismiss Counts II and IV of the Complaint (#9).

On March 26, 2014, a Rule 16 conference was held before Magistrate Judge David G. Bernthal.  Discovery deadlines were set and the case was set for trial on July 7, 2015. On June 30, 2014, this court entered an Order (#23) which accepted Judge Bernthal's Report and Recommendation (#22) and denied Defendants' Motion to Dismiss Counts II and IV.

On March 31, 2015, Defendants filed a Motion for Summary Judgment (#43) with attached supporting exhibits.  Defendants argued that they are entitled to summary judgment on all of Plaintiffs' claims.  Defendants argued that Davis is entitled to summary judgment as to Plaintiffs' § 1983 claim against him because his conduct was reasonable and he is entitled to qualified immunity.  Defendants also argued that there is no basis for imposing liability on the City of Champaign based upon *Monell* and that they are entitled to summary judgment on all of Plaintiffs' state law claims under the Tort Immunity Act.  On April 6, 2015, Plaintiffs filed their Motion for Partial Summary Judgment (#46) and supporting exhibits (#47).  Plaintiffs argued that they are entitled to summary judgment as to liability on all of their claims and the case should proceed to trial only on the issue of damages.  On April 21, 2015, Plaintiffs filed a Motion to Strike Non-Disclosed Testimony (#49).  The Motion to Strike and Motions for Summary

9

Judgment are now fully briefed and ready for ruling.

ANALYSIS

I.  MOTION TO STRIKE

In their Motion to Strike (#49), Plaintiffs asked this court to strike the following exhibits attached to Defendants' Motion for Summary Judgment: (a) the deposition testimony of Anthony Cobb, Chief of the CPD; (B) the affidavit of Chief Cobb; (C) the affidavit of Defendant Davis; and (D) the deposition testimony of Stephanie Joos, Champaign County Animal Control Officer.  Plaintiffs argued that Defendants did not disclose these witnesses in discovery as persons with discoverable information that Defendants may use to support their defenses and, pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, these witnesses must be excluded.  Plaintiffs argued that Defendants' failure to identify these witnesses and/or the subject matter of their testimony was not harmless.  Plaintiffs argued that, had they known of Defendants' intention to rely on these specific witnesses for the specific topics of testimony identified, Plaintiffs would have questioned each of the witnesses during their depositions on those specific topics.  Plaintiffs argued that they were prejudiced because they were deprived of the opportunity to probe into the witness's knowledge concerning the issues raised.  Plaintiffs also argued that Defendants' failures were not substantially justified and the only viable option, at this late date, is exclusion of the evidence.

On May 4, 2015, Defendants filed their Response to Motion to Strike (#57).

10

Defendants stated that the basis for Plaintiffs' motion is that the substance of the affidavits and deposition testimony came as an unfair surprise to them and thus must be stricken and barred.  Defendants argued that Plaintiffs' position demonstrated a misunderstanding of the Federal Rules of Civil Procedure and should be denied.  Defendants argued that all of the evidence referenced in the subject affidavits and deposition testimony was made known to Plaintiffs during the discovery process and there is no basis for striking this evidence.  This court agrees.

As far as Chief Cobb, Plaintiffs disclosed him as a witness in their Rule 26(a) disclosures on March 28, 2014.  Plaintiffs stated that Chief Cobb was expected to testify concerning the policies and procedures of the City of Champaign Police Department and about all training given to police officers with respect to interactions between police officers and domestic pets.  In addition, the documents disclosed by Defendants as part of routine discovery in this case, provided on October 17, 2014, and February 5, 2015, included correspondence between Plaintiffs and Chief Cobb regarding the City's investigation of Davis's conduct, Davis's training logs and Police Department policies and procedures regarding Use of Force.  Chief Cobb's deposition was taken by Plaintiffs on February 27, 2015, and he answered questions regarding the City's investigation of Davis's conduct, the policies and procedures of the Police Department and the training given to police officers.  The affidavit of Chief Cobb supplements his deposition testimony relating to policies, procedures and training.

As far as Davis's affidavit, the statements in the affidavit simply summarize the

11

information in police training logs that were disclosed by Defendants on October 17, 2014 and February 5, 2015, as part of routine discovery in this case.

As far as the deposition testimony of Stephanie Joos, Plaintiffs issued a subpoena for a deposition pursuant to Rule 45 to "Designated Officer, County of Champaign, Animal Control Department." On February 27, 2015, Joos appeared in compliance with the subpoena and testified regarding the lack of specific training available to respond to dogfights and the rarity of dogfights taking place.

Rule 26(e) of the Federal Rules of Civil Procedure provides that supplemental disclosures must be made "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process*." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). This court agrees with Defendants that Plaintiffs are arguing that Defendants somehow failed to comply with the applicable rules of discovery by failing to update their Rule 26 Disclosures and Answers to Interrogatories to include all of the topics covered in the witness depositions. This court finds Plaintiffs' arguments baseless, especially considering that Plaintiffs took the depositions they are seeking to have stricken. This court concludes that the supplemental disclosures Plaintiffs have argued are necessary are absolutely not required because the evidence was "otherwise made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). Plaintiffs' Motion to Strike Non-Disclosed Testimony (#49) is DENIED.

## II.  MOTIONS FOR SUMMARY JUDGMENT

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).  However, a court's favor toward the nonmoving party does not extend to drawing "[i]nferences that are supported by only speculation or conjecture."  *Singer*, 593 F.3d at 533, *quoting Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008).  Specifically, to survive summary judgment, "the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial."  *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007), *citing Celotex Corp.*, 477 U.S. at 322-23.

In this case, the parties have filed cross-motions for summary judgment.  By filing cross-motions seeking summary judgment, the parties do not waive their right to a trial on the merits.  *Market St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 590 (7th Cir.

1991); *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003).  Each

side is asking this court to grant it judgment as to liability without a trial but, if the

judge disagrees, each side wants a trial.  *See Crespo*, 294 F. Supp. 2d at 991, *citing Miller*

*v. LeSea Broad, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996).   A court is not required to grant

summary judgment as a matter of law for either side when faced with cross-motions for

summary judgment.  *See Frey*, 941 F.2d at 590; *Crespo*, 294 F. Supp. 2d at 991.  "Rather,

the court is to evaluate each motion on its merits, resolving factual uncertainties and

drawing all reasonable inferences against the movant."  *Crespo*, 294 F. Supp. 2d at 991,

*citing Brownlee v. City of Chicago*, 983 F. Supp. 776, 779 (N.D. Ill. 1997).  If a question of

fact exists, the court must deny the cross-motions for summary judgment and continue

with a trial.  *See Crespo*, 294 F. Supp. 2d at 992.

### B.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1.  SECTION 1983 CLAIM

Defendants first contend that, under the facts here, Davis is not liable under §

1983 because he acted reasonably under the circumstances.  Defendants argue that

Davis was flagged down by a group of bystanders and had to make spur-of-the-

moment assessments and decisions.  Defendants contend that Davis's conduct was

reasonable because he mistakenly, but reasonably, determined that the smaller dog

engaged in the dogfight was the dog owned by Markou.  Defendants further contend

that, even if a constitutional violation occurred, Davis is entitled to qualified immunity.

In their Response,[5] Plaintiffs contend that it was unreasonable under the circumstances for Davis to shoot at either dog. Plaintiffs insist that other means should have been used to break up the dogfight, including calling for the catchpole. Plaintiffs also argue that Davis should have requested supervisor approval before he shot at the dogs. Plaintiffs argue that Davis clearly committed a constitutional violation and is not entitled to qualified immunity.

The Seventh Circuit has noted that every circuit which has considered the issue has held that the killing of a companion dog constitutes a "seizure" within the meaning of the Fourth Amendment. *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008). Therefore, a police officer who unreasonably kills a person's pet violates that person's Fourth Amendment rights. *Phillips v. City of Chicago*, 2013 WL 4779185, at *1 (N.D. Ill. 2013), *citing Viilo*, 547 F.3d at 710. The police officer's actions are constitutional only if reasonable. *Viilo*, 547 F.3d at 710, *citing United States v. Place*, 462 U.S. 696, 703 (1983). The use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable. *Viilo*, 547 F.3d at 710, *citing Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210-11 (3rd Cir. 2001); *see also Taylor v. City of Chicago*, 2010 WL 4877797, at *2 (N.D. Ill. 2010).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[5] This court notes that, per Plaintiffs' request, this court has considered the arguments made by Plaintiffs in their Motion for Partial Summary Judgment, as well as the arguments made in Plaintiffs' Response, in ruling on Defendants' Motion for Summary Judgment.

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Taylor*, 2010 WL 4877797, at *3. The qualified immunity determination involves two questions: (1) whether the acts establish a violation of a constitutional right and (2) whether the constitutional right was clearly established at the time of the violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Taylor*, 2010 WL 4877797, at *3. A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "Qualified immunity protects an officer from liability if a reasonable officer could have believed that the action taken was lawful, in light of clearly established law and the information the officer possessed at the time." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 527-28 (7th Cir. 2012), *citing Omdahl v. Lindholm*, 170 F.3d 730, 733 (7th Cir. 1999).

In this case, disputed facts exist regarding the reasonableness of Davis's actions. There is a dispute over how much light was available to see the dogs and distinguish them from each other. Markou testified that there was sufficient light but Davis indicated that there was a shadow on the dogs and, to him, both dogs looked dark in color. There is also a dispute regarding how urgent the situation was and whether immediate action was called for or whether other options were open to Davis. Plaintiffs

16

insist Davis should have tried other means to separate the dogs.  However, Jones and Markou had tried to break up the fight, to no avail, even though Jones testified that he had experience in breaking up dogfights.  In addition, Davis clearly believed it was a serious situation and had seen two other dogs get grievously injured in dogfights.

This court concludes that a jury could determine that Davis's actions were reasonable under the circumstances and could also determine that he is entitled to qualified immunity.  *See Brandon v. Vill. of Maywood*, 157 F. Supp. 2d 917, 931 (N.D. Ill. 2001) (officer entitled to qualified immunity because reasonable officers under the same circumstances could have made a reasonable mistake).  On the other hand, a jury could determine that Davis acted too quickly in shooting at the dog he thought was the aggressor.  A jury could conclude that he should have attempted to use other means to deal with the situation and, at the very least, should have confirmed that he was shooting the right dog.

This court therefore concludes that there are material disputes of fact as to this issue which must go to trial.  *See Thurman v. Gorman*, 2010 WL 5369088, at * 3 (N.D. Ill 2010) (the plaintiff presented sufficient evidence, when viewed in the light most favorable to the plaintiff, to create a genuine issue of material fact as to whether the police officer acted reasonably in shooting the plaintiff's dog).  Therefore, Davis is not entitled to summary judgment on Plaintiffs' § 1983 claim against him, and Count I remains pending.

2. *MONELL* CLAIM

17

Defendants next argue that the City of Champaign is entitled to summary judgment on Plaintiffs' *Monell* claim.  Defendants argue that the record is devoid of any evidence of any prior incidents of improper use of deadly force upon dogs by CPD police officers.  They argue that Plaintiffs cannot prove that there existed actual, repeated, recurring situations resulting in a pattern of constitutional violations. Defendants also contend that, in fact, situations where police officers or animal control are called to deal with dogfight situations are rare and there is no specific training available to respond to dog fights because every situation is different.  Defendants argue that Plaintiffs cannot show a lack of training which could result in liability under *Monell*.

In their Response, Plaintiffs insist that the City of Champaign's express policy allowed Davis to shoot Dog even though Dog did not pose a danger to any person, and even though Davis could have, but did not, attempt any alternative means of separating the dogs prior to pulling his gun and shooting.  Plaintiffs have argued that the City is liable under *Monell* for having an express policy that was enforced in this case and which caused the constitutional deprivation.  Plaintiffs also argued that CPD personnel deal with dogs on a very routine basis and have not been adequately trained.  Plaintiffs relied on the testimony of Sergeant Matthew Crane that it was a weekly occurrence for police officers to encounter dogs in someone's home.[6]  Plaintiffs also relied on the fact that Davis had been involved in three dogfights as a police officer and testified that it

---

[6]  However, Crane also testified that "[m]ost of the time they are friendly dogs."

18

was not unusual for a call to be placed from field officers requesting the Department's

dog catchpole.  Plaintiffs contend that this evidence "points to a situation where

encounters and interactions with dogs are so frequent and expected that the City's

failure to provide training for such encounters amounts to deliberate indifference."

Although municipalities are "persons" for purposes of § 1983, liability against

them cannot arise vicariously.  *Monell*, 436 U.S. at 691-92.  Instead, municipalities are

liable only for acts for which the entity is responsible, meaning acts the entity has

embraced as policy or custom.  *Id.* at 690-91, 694.  Therefore, "[b]efore the City can be

liable under Section 1983, the plaintiff must show either '(1) an express policy that,

when enforced, causes a constitutional deprivation; (2) a widespread practice that,

although not authorized by written law or express municipal policy, is so permanent

and well settled as to constitute a custom or usage with the force of law; or (3) an

allegation that the constitutional injury was caused by a person with final policymaking

authority.'" *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997), *quoting McTigue v.

City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).  Moreover, the plaintiff must show a

"direct causal link between a municipal policy or custom and the alleged constitutional

deprivation."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  Failure to train can

give rise to § 1983 liability in limited circumstances.  *Id.* at 387.  Inadequate police

training causes § 1983 liability "only where the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact."  *Id.* at

388.  Only where the failure to train reflects a deliberate or conscious choice by the

municipality can it be liable for such a failure.  *Id.* at 389.

This court first concludes that Plaintiffs' argument about the City's express policy fails.  The problem with Plaintiffs' argument about the City's express policy is that there is nothing unconstitutional about the policy.  The policy provides that deadly force may be used to kill a "dangerous animal."  The Seventh Circuit has stated that the use of deadly force on a pet is reasonable if the pet poses an immediate danger and the use of force is unavoidable.  *Viilo*, 547 F.3d at 710.  Therefore, this court concludes that the City's express policy is consistent with the law and did not cause the alleged constitutional violation.  *See Brown*, 269 F.3d at 216.

Plaintiffs have argued that the City's policy violates Illinois law and was subsequently changed by the City, constituting an admission that its policy resulted in the constitutional deprivation here.  This court finds Plaintiffs' arguments unpersuasive. As already noted, to the extent that Plaintiffs are relying on the subsequent change in the policy to show the City's culpability, it is inadmissible under Rule 407 of the Federal Rules of Evidence.  More importantly, Plaintiffs have not shown that the policy violates Illinois law.  Plaintiffs have cited to a definition from the Animal Control Act, which states that "[d]angerous dog" means a dog "that behaves in a manner that a reasonable person would believe poses a serious and unjustified imminent threat of serious physical injury or death to a person or a companion animal." 510 Ill. Comp. Stat. 5/2.05a (West 2012).  Plaintiffs have provided no explanation as to why this definition has any application to this case.  Defendants have argued that it does not apply because

this is not "a run of the mill, dog running-at-large case."  Nonetheless, this court concludes that the definition is entirely compatible with the City's policy.  Therefore, this court concludes that Plaintiffs have not shown that the City is liable under *Monell* based on its express policy.

This court also concludes that Plaintiffs have not shown a lack of training sufficient to impose liability on the City of Champaign under *Monell*.  While there has been evidence presented that police officers encounter dogs on a frequent basis, there is no evidence that, other than the incident which resulted in the shooting of Dog, there has been a problem with the way police officers have responded to these encounters. There is no evidence from which a trier of fact could conclude that any failure to train reflects a deliberate or conscious choice not to provide necessary training.  *See Brown*, 269 F.3d at 216.

The City of Champaign is therefore entitled to summary judgment as to Count II of Plaintiffs' Complaint.

### 3.  STATE LAW CLAIMS

Defendants have also argued that they are entitled to summary judgment on all of Plaintiffs' state law claims, Counts III through VI,  under the Tort Immunity Act.  The Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."  745 Ill. Comp. Stat. 10/2-202 (West 2012).  For purposes of the Tort Immunity Act, willful and wanton conduct is "a course of action which shows an actual

or deliberate intention to cause harm or which, if not intentional, shows an utter
indifference to or conscious disregard for the safety of others or their property."  745 Ill.
Comp. Stat. 10/1-210.

Plaintiffs have argued that the Tort Immunity Act does not apply in this case
because Davis was not enforcing any law, but was simply involved with general police
duties and responsibilities at the time he shot Dog.  Plaintiffs note that he came on the
scene accidentally and was actually en route to a different call.  This court disagrees.
Davis was on duty as a police officer and was flagged down by individuals who had
called 911 for police assistance.  Responding to a 911 call is an activity which has been
found to be an act of executing or enforcing the law.  *See Taylor*, 2010 WL 4877797, at *5,
*citing Bruecks v. County of Lake*, 658 N.E.2d 538, 539-40 (Ill. App. Ct. 1995); *Morris v. City
of Chicago*, 474 N.E.2d 1274, 1276 (Ill. App. Ct. 1985).  This court therefore concludes that
Davis's actions were taken in the execution or enforcement of the law.  This court
concludes that it simply cannot make any difference that Davis was on his way to
respond to a different call when he was flagged down and decided to respond to the
911 call seeking police assistance for a pet dog being attacked by a pit bull.  This court
further concludes that the case law cited by Plaintiffs does not support their position.
*Cf. Aikens v. Morris*, 583 N.E.2d 487 (Ill. 1991) (Tort Immunity Act did not apply where
police officer's squad car struck the plaintiff's automobile while the officer was
transporting a prisoner from one jail to another); *Simpson v. City of Chicago*, 599 N.E.2d
1043 (Ill. App. Ct. 1992) (Tort Immunity Act did not apply to police officer who was

22

driving to a non-emergency call when his squad car collided with a bicycle).

     Defendants argue that they are entitled to immunity because Davis's judgments and actions were made under circumstances that were tense, uncertain, and rapidly evolving.  Defendants further argue that Davis's decision to use deadly force was reasonable and consistent with CPD policies and procedures.  Defendants argue that, given the totality of the circumstances, Davis made a reasonable mistake in determining which of the dogs involved in the dog fight was owned by Markou.  Defendants therefore contend that Davis's conduct is protected by the Tort Immunity Act because his actions were not made with an actual or deliberate intention to cause harm to Plaintiffs or their dog.  Defendants argue that Davis's actions were, in fact, made in response to bystanders who flagged him down to handle a dogfight and in response to Markou who was hysterical and wanting him to help her and her dog.  Defendants contend that, in response to these circumstances, Davis assessed that the dogs were dangerous to each other, bystanders and him.  Davis then shot the larger, dominating dog to help Markou.  Defendants argue that Davis is afforded the protections of the Tort Immunity Act under these circumstances.

     In Response, Plaintiffs argue that Davis's actions in shooting Dog constitute "willful and wanton conduct" as defined by the statute because his actions showed "an utter indifference to or conscious disregard for the safety of others or their property."

     This court concludes that Davis's actions in shooting Dog cannot be considered

"willful and wanton conduct." There is no evidence to show that Davis was doing anything other than attempting to shoot the aggressor dog in order to help Markou. There is no evidence that Davis wanted to injure Plaintiffs' dog or was indifferent to what happened to Plaintiffs' dog. *See McDowell v. Vill. of Lansing*, 763 F.3d 762, 768 (7th Cir. 2014). Davis made a mistake and shot the wrong dog, and this court has concluded that the issue of whether he acted reasonably under the circumstances must go to the jury. But this court concludes that, even if a jury finds his conduct unreasonable, there would be no basis for finding it to be "willful and wanton conduct." The Seventh Circuit has recently recognized that "'[w]ilful and wanton conduct, as contemplated in [the Tort Immunity Act], consists of more than mere inadvertence, incompetence, or unskillfulness.'" *McDowell*, 763 F.3d at 768, *quoting Geimer v. Chicago Park Dist.*, 650 N.E.2d 585, 592 (Ill. App. Ct. 1995). This court concludes that Davis did not engage in a course of action which showed an actual or deliberate intention to cause harm or which, if not intentional, showed an utter indifference to or conscious disregard for the safety of others or their property.

This court notes that Plaintiffs have argued that Defendants raised no arguments requesting summary judgment as to Count VI of the Complaint, Plaintiffs' claim seeking relief under the Humane Care for Animals Act, 510 Ill. Comp. Stat. 70/16.3. This is clearly not true, Defendants sought summary judgment as to all of Plaintiffs' state law claims, including Count VI.

For all of the reasons stated, Defendants are entitled to summary judgment on

24

Counts III, IV, V, and VI of Plaintiffs' Complaint.

### C.  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs have argued that they are entitled to summary judgment as to liability on all of their claims.  In ruling on Defendants' Motion for Summary Judgment, this court concluded that there are genuine disputes as to the material facts regarding Plaintiffs' § 1983 claim against Davis which preclude summary judgment in Davis's favor.  In considering Plaintiffs' Motion for Partial Summary Judgment as to this claim, this court must draw all reasonable inferences against Plaintiffs and in favor of Davis. Viewed in this light, this court must again conclude that genuine disputes as to the material facts exist as to the reasonableness of Davis's actions so that summary judgment cannot be granted in Plaintiffs' favor.  This court notes that the case relied on by Plaintiffs does not support the Plaintiffs' argument that summary judgment should be granted in their favor.  In *Viilo*, the Seventh Circuit did not state that the plaintiff was entitled to summary judgment, but dismissed the police officers' appeal, finding that the existence of disputed issues of fact deprived it of jurisdiction to address the defendants' qualified immunity defense. *See Viilo*, 547 F.3d at 711-12.  Because of the disputed facts, the case had to go to trial.

In addition, this court has concluded that Defendants are entitled to summary judgment as to the remaining Counts of Plaintiff's Complaint.  Therefore, Plaintiff's Motion for Partial Summary Judgment (#46) must be DENIED.

IT IS THEREFORE ORDERED THAT:

25

(1)  Plaintiffs' Motion to Strike Non-Disclosed Testimony (#49) is DENIED.

(2)  Defendants' Motion for Summary Judgment (#43) is GRANTED in part and DENIED in part.  Judgment is entered in favor of Defendant the City of Champaign on Plaintiffs' *Monell* claim and in favor of Defendant Davis and the City of Champaign on Plaintiffs' state law claims.  This case will proceed to trial on Plaintiffs' § 1983 claim against Davis.

(3)  Plaintiffs' Motion for Partial Summary Judgment (#46) is DENIED.

(4) The parties' Motions in Limine (#51, #56) remain pending.

(5) This case remains scheduled for a final pretrial conference on May 22, 2015 at 10:30 a.m. and for a jury trial on July 7, 2015 at 9:30 a.m.

ENTERED this 18th day of   May   , 2015.

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE