## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| **JACOB SAATHOFF, KATHY SAATHOFF,** ) | |
| **and KELSEY MARKOU,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Case No. 13-CV-2253** |
| ) | |
| **OFFICER ANDRE DAVIS,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

This case is before the court for ruling on the Supplemental Motions in Limine (#81) filed by Defendant Officer Andre Davis. This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Defendant's Supplemental Motions in Limine (#81) are GRANTED in part and DENIED in part.

## STANDARD

Although already stated several times in this case (#66, #79), the court will repeat that the "motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). District courts have "broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). A motion *in*

*limine* "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson*, 115 F.3d at 440. Therefore, "the party moving to exclude evidence *in limine* has the burden of establishing the evidence is not admissible for any purpose." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Unless this high standard is met, rulings on evidentiary matters should be deferred until trial so that issues of foundation, relevance and prejudice may be resolved in the proper context. *Mason*, 631 F. Supp. 2d at 1055-56; *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003); *see also Jonasson*, 115 F.3d at 440.

## SUPPLEMENTAL MOTIONS IN LIMINE

On May 28, 2015, April 24, 2015, Defendant filed a Motion for Leave to File Supplemental Motions in Limine (#74). On June 5, 2015, this court entered an Order (#79) and granted Defendant's Motion. Accordingly, on June 5, 2015, Defendant's Supplemental Motions in Limine (#81) were filed in this court. On June 22, 2015, Plaintiffs filed their Response (#85).

## PUNITIVE DAMAGES

Defendant first argued that Plaintiffs' request for punitive damages must be stricken. Defendant pointed out that this court, in its Order (#65) ruling on the Motions for Summary Judgment, stated:

> This court concludes that Davis did not engage in a course of action which showed an actual or deliberate intention to cause harm or which, if not intentional, showed an utter indifference to or conscious disregard for the safety of others or their property.

2

Defendant argued that this court has ruled, as a matter of law, that Defendant did not engage in conduct which showed "complete indifference" to Plaintiffs' safety or rights. Defendant further stated that the Seventh Circuit pattern jury instruction on punitive damages provides that the jury may assess punitive damages:

> only if you find that [defendant's] conduct was malicious or in reckless disregard of Plaintiff's rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff. Conduct is in reckless disregard of Plaintiff's rights if, under the circumstances, it reflects complete indifference to Plaintiff's safety or rights.

*Seventh Circuit Model Civil Jury Instructions, Sec.* 7.24 (2009).

Defendant argued that this court has ruled that the standard for assessing punitive damages has not and cannot be met based on the undisputed material facts of the case. Defendant contended that a contrary jury verdict would be inconsistent with the "law of the case."

In their Response (#85), Plaintiffs first argued that there are procedural problems with Defendant's request. Plaintiffs contended that this request is actually a motion to strike rather than a motion in limine. Plaintiffs also argued that Defendant should have raised this argument in his motion for summary judgment and pointed out that Defendant agreed to a punitive damages instruction as part of the agreed jury instructions. In addition, Plaintiffs stated that Defendant orally moved to strike Plaintiffs' request for punitive damages at the final pretrial conference and this court denied the motion. This court stated that a determination as to the appropriateness of a

3

punitive damages instruction should await the close of evidence.[1]

Substantively, Plaintiffs argued that there is no inconsistency between this court's summary judgment ruling and the proposed § 1983 punitive damages instruction. Plaintiffs contended that this court's ruling that Defendant was entitled to judgment on Plaintiffs' state law claims under the Tort Immunity Act addressed Defendant's indifference to the *safety of Plaintiffs or their property* whereas the remaining § 1983 claim against Defendant addresses indifference to *Plaintiffs' constitutional rights*.

Plaintiffs argued that the United States Supreme Court has held "that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves *reckless or callous indifference* to the *federally protected rights of others*," quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983) (emphasis added). Plaintiffs also stated that punitive damages in a civil rights case "are appropriate when the defendant acted wantonly or willfully, or was motivated in his actions by ill will or a desire to injure," quoting *Hagge v. Bauer*, 827 F.2d 101, 110 (7th Cir. 1987).

Plaintiffs argued that, because the standards are different, any award of punitive damages in this case would not be in any way inconsistent with this court's summary judgment ruling. In addition, Plaintiffs argued that the testimony of Markou and Jones would support a punitive damages instruction in this case. Plaintiffs contended that the

---

[1] Defense counsel raised this issue for the first time at the Final Pretrial Conference orally and spontaneously in the context of jury instructions and other miscellaneous jury trial matters. Upon review of this court's earlier ruling, and after submission of a written motion by the Defendant and a response by Plaintiffs, the court believes this is an issue which should be decided prior to commencement of trial.

4

testimony of Markou and Jones showed that there was no basis for confusion about

which dog was Markou's and also showed that no one was in any danger at the time

Defendant arrived and shot Markou's dog.  Plaintiffs argued that Defendant's true

intent and motive was to shoot and kill both dogs.  Plaintiffs argued that a ruling

regarding whether the issue of punitive damages should go to the jury should await the

close of Plaintiffs' evidence.

In ruling on the parties' Motions for Summary Judgment, this court carefully

reviewed all of the documents provided, including the deposition transcripts.

Following this careful and thorough review, this court concluded that Defendant was

entitled to summary judgment on all of Plaintiffs' state law claims under the Tort

Immunity Act because Defendant's actions in shooting Dog could not be considered

"willful and wanton conduct."  This court stated:

> There is no evidence to show that Davis was doing anything other
> than attempting to shoot the aggressor dog in order to help Markou.
> There is no evidence that Davis wanted to injure Plaintiffs' dog or
> was deliberately indifferent to what happened to Plaintiffs' dog.  *See
> McDowell v. Vill. of Lansing*, 763 F.3d 762, 768 (7th Cir. 2014).  Davis
> made a mistake and shot the wrong dog, and this court has
> concluded that the issue of whether he acted reasonably under the
> circumstances must go to the jury.  But this court concludes that,
> even if a jury finds his conduct unreasonable, there would be no
> basis for finding it to be "willful and wanton conduct."  The Seventh
> Circuit has recently recognized that "[w]ilful and wanton conduct, as
> contemplated in [the Tort Immunity Act], consists of more than mere
> inadvertence, incompetence, or unskillfulness."  *McDowell*, 763 F.3d
> at 768, *quoting Geimer v. Chicago Park Dist.*, 650 N.E.2d 585, 592 (Ill.
> App. Ct. 1995).  This court concludes that Davis did not engage in a
> course of action which showed an actual or deliberate intention to
> cause harm or which, if not intentional, showed an utter indifference
> to or conscious disregard for the safety of others or their property.

This court has reviewed the deposition transcripts of Markou and Jones again. This court adheres to its conclusion that there is no basis for finding that Defendant engaged in willful and wanton conduct.  In discussing the incident, Jones testified that he and Markou described Markou's dog and pointed to Markou's dog when Defendant came on the scene.  But Jones described Defendant as "confused" on three occasions. Jones testified, "I guess he was confused because he ended up shooting towards her dog."  Jones also stated that Defendant "looked confused" after Jones told him he shot the wrong dog.  Jones testified that he felt "like the officer was confused on what was going on, so that made his actions and choice of actions a little weird."  Markou testified that, if Defendant could not distinguish between the two dogs, he should not have shot. This court again concludes that, while the question of whether Defendant's conduct was reasonable must go to the jury, the evidence does not show intention to cause harm or utter indifference to or conscious disregard for the safety of others or their property.

Plaintiffs have argued that the standard for awarding punitive damages is different from the standard for determining whether the Tort Immunity Act applies. Plaintiffs claim that, while this court found no evidence of utter indifference to the safety of others or their property, punitive damages can be awarded if there is indifference to Plaintiffs' constitutional rights.  In the context of this case and the ruling on the Motion for Summary Judgement,  this is at best a distinction without a difference and at worst a disingenuous argument. [2]

---

[2] Further, it is telling that Plaintiffs have recognized that punitive damages under § 1983 "are appropriate when the defendant acted wantonly or willfully, or was motivated in his actions by ill will or a desire to injure."

The constitutional right at issue here is the seizure of Plaintiffs' property through the accidental shooting of the Plaintiff's dog. This court explicitly ruled that there is no evidence that Defendant intended to cause harm or engaged in willful and wanton conduct. Consequently, this court's finding that the evidence does not show utter indifference to the safety of Plaintiffs' property has to mean that the evidence does not show utter indifference to Plaintiffs' constitutional rights.

Accordingly, the court concludes that punitive damages are not warranted in this case and no jury instruction on punitive damages will be given. Defendant's request to strike Plaintiffs' request for punitive damages is GRANTED.

EVIDENCE OF VALUE OF DOG

Defendant's second, third, and fourth requests relate to evidence Plaintiffs have disclosed that they intend to present regarding damages for the loss of their dog. Defendant stated that Plaintiffs have identified "Veterinary Records/Receipts" in their Trial Exhibit List and provided copies of veterinary bills as part of discovery. Defendant argued that veterinary services provided before the subject incident are not appropriate for the jury to consider as compensatory damages and should be excluded. Defendant contended that these services have no relevance to the jury's determination of the value of Plaintiffs' dog. Defendant stated that Plaintiffs have also identified "Training documents (Paul Lance)" in their Trial Exhibit List and provided copies of invoices for AKC registration, pet recovery microchip, kennel fees, and hunting dog training fees. Defendant argued that these invoices pre-date the subject incident and are not appropriate for the jury to consider as evidence of compensatory damages.

7

Plaintiffs have also produced a spreadsheet of itemized fees and costs, showing a total of $13,833.00.  Defendant pointed out that approximately half of the itemized fees pre-date the subject incident and the other half post-date the subject incident.  Defendant argued that these items are not appropriate for the jury to consider as evidence of compensatory damages.

In their lengthy Response, Plaintiffs have argued that all of this evidence is relevant to their claim for damages for the loss of their dog, Dog.  As far as the spreadsheet, Plaintiffs acknowledged that some of the expenses listed were incurred prior to Dog's death (during Dog's training) and some were incurred subsequently (during the training of their other dog, Boo).  Plaintiffs argued that "[i]n both events, these costs are expenses directly related to obtaining the specialized training that Dog underwent, and that will have to be replicated when Plaintiffs purchase a replacement dog" so that "clearly these costs are recoverable in this case."

"Damages are awarded in § 1983 actions to compensate individuals for injuries resulting from the deprivation of their constitutional rights."  *Busche v. Burkee*, 649 F.2d 509, 518 (7th Cir. 1981).  The United States Supreme Court has stated that "[t]o the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages."  *Carey v. Piphus*, 435 U.S. 247, 256-57 (1978).  Both federal and state rules on damages may be utilized in determining the appropriate damages under § 1983.  *See Henning v. Nicklow*, 2009 WL 3642739, at *4 (N.D. Ind. 2009).  The court in *Henning* stated that, under Indiana law,

"the measure of damages for the loss of an animal is its fair market value at the time of the loss." *Id.* The court concluded in that case that "Plaintiffs' testimony about [their dog's] characteristics 'as a companion, pet, and watch dog' may indeed be relevant, at least to some extent, in determining the dog's value." *Id.*

The parties have not cited any federal case law dealing with the issue of the compensatory damages which may be recovered for the loss of a dog, so this court has turned to Illinois law for guidance. In Illinois, earlier cases "provided for damages based on a pet's fair market value, as evidenced by the pet's qualities and commercial value, and for the loss of its services." *Anzalone v. Kragness*, 826 N.E.2d 471, 477 (Ill. App. Ct. 2005), *citing Spray v. Ammerman,* 66 Ill. 309 (1872); *Demeo v. Manville*, 386 N.E.2d 917, 918 (Ill. App. Ct. 1979). In *Demeo*, a case cited by Plaintiffs in their Objections to Defendant's Supplemental Proposed Jury Instructions (#82), the court upheld an award of damages of $500 for the death of a one-year-old show dog that appeared in four shows and won first prize in each and was sired by an international grand champion. *Demeo*, 386 N.E.2d at 918-19. However, Illinois courts have since recognized that this method of computing damages does not account for circumstances where the pet has no market value. *Anzalone*, 826 N.E.2d at 477.

Courts have thus taken the position that "in such cases it would be unjust to limit the damages to the fair market value and, instead, use the so-called 'value to the owner' (also known as 'actual value to the owner' or 'actual value') as the measure of damages." *Id., citing Restatement (Second) of Torts* § 911, Comment e, at 474 (1965). Illinois courts have stated:

9

> [T]he proper basis for assessing compensatory damages in such a
> case is to determine the item's 'actual value [to the owner,] . . . [who]
> is 'entitled to demonstrate its value to him by such proof as the
> circumstances admit.'

*Jankowski v. Preiser Animal Hosp., Ltd.*, 510 N.E.2d 1084, 1086 (Ill. App. Ct. 1987); *see also*
*Anzalone*, 826 N.E.2d at 477.

The court in *Jankowski* stated that the "concept of actual value to the owner may
include some element of sentimental value in order to avoid limiting the plaintiff to
merely nominal damages" and that it "appears clear that damages in such cases, while
not merely nominal, are severely circumscribed." *Jankowski*, 510 N.E.2d at 1087.
Therefore, the court in *Anzalone* recognized that "recovery in the death of a pet is
geared toward compensation for the loss of personal property and, consequently, the
emotional increment in that loss, while recognized, has been severely restricted."
*Anzalone*, 826 N.E.2d at 478.  In *Anzalone*, the plaintiff's cat was attacked and killed by a
Rottweiler while the cat was being boarded at an animal hospital. *Id.* at 473.  The court
in *Anzalone* stated that "the amount of $100,000 claimed by plaintiff in damages is
excessive under the existing precedent." *Id.* at 478.

In *Leith v. Frost*, the plaintiffs' dog was attacked by their neighbor's dog. *Leith v.
Frost*, 899 N.E.2d 635, 637 (Ill. App. Ct. 2008).  The plaintiffs sued their neighbor and
sought $4,784 in veterinary bills they incurred in treating their dog's injuries. *Id.*  At
trial, the neighbor presented evidence that the value of a dachshund like the plaintiffs'
dog was between $150 and $200. *Id.* at 639.  The trial court then awarded $200 in
damages. *Id.*  The court stated that, under Illinois law, "a dog is considered personal
property." *Id.*  The court then reasoned that "the cost of repairs to personal property is

10

usually the measure of damages, but when the cost of repairs exceeds the fair market value of the personal property, the value of the personal property becomes the ceiling on the amount of damages which can be recovered." *Id.* On appeal, the court concluded that the measure of damages in that situation "may include, but is not limited to, the reasonable and customary cost of necessary veterinary care and treatment." *Id.* at 641, *quoting Burgess v. Shampooch Pet Indus., Inc.*, 131 P.3d 1248, 1252 (Kan. Ct. App. 2006). The appellate court then concluded that the plaintiffs demonstrated how much the dog was worth to them by paying $4,784 for the dog's veterinary care after the dog was injured. *Id.* The court then modified the trial court's judgment to award the plaintiffs $4,784 in damages. *Id.*

This court is certainly sympathetic to the loss Plaintiffs have suffered. However, the key concept in the case law cited, and in the sections of the Restatement of Torts that Plaintiffs have relied upon, is that damages must be geared toward providing compensation *for the loss of personal property*. This court is concerned that Plaintiffs have not entirely grasped this concept: that the loss of their dog is, from a legal standpoint, *a loss of personal property*. Indeed, many of the arguments raised by plaintiff show a fundamental disconnect between the law related to their loss of personal property (their dog) and their claims and arguments which are directed to the loss attributable to the death of a human being. For example, in their Response (#85), Plaintiffs have referred to their dog as a "victim" that Defendant voluntarily shot and killed, as though the dog was a human being. Further, the documents provided to this court by Plaintiffs in response to Defendants' Motion for Summary Judgment (#54) include emails sent by

Plaintiff Jacob Saathoff to the City of Champaign's City Manager.  The emails stated that "a member of our family was brutally murdered by a Champaign police officer" and referred to Plaintiffs' "complaint against the officer that killed our family member." In one email, Saathoff stated that they were "talking about a WRONGFUL DEATH." Again, even though the court is sympathetic to the loss of a the Plaintiffs' dog, the court must reiterate that the dog is an item of personal property and not a human being.

In the Pretrial Order (#67) prepared by the parties and entered on May 22, 2015, Plaintiffs calculated their damages for the loss of their dog at $83,000, *in addition to* their damages for emotional injury/pain and suffering.  This total  included $3,000 for value of replacement, $30,000 for cost of lost improvements to the dog, and $50,000 for lost profits/ loss of breeding opportunity.  This court concludes that, based upon the applicable case law, $83,000 as the value of a companion dog cannot be considered reasonable.  Indeed, relevant case law would support a value for a dog *possibly* in the thousands of dollars, but certainly not in the tens of thousands.

First of all, Plaintiffs may recover the value of the dog to them *or* the cost of replacing the dog, but not both.  Plaintiffs have focused most of their arguments on the value of the dog they lost, but have also argued that they should be allowed to introduce evidence regarding replacement costs. The court will not allow evidence as to both of these; the Plaintiffs must choose under which theory they wish to proceed.[3]  As

---

[3]  This court notes that § 927 of the Restatement of Torts, which Plaintiffs have relied on, states that, for damages for the "Destruction of a Thing," a plaintiff may recover "the value of the subject matter" *or* its "replacement value" under some circumstances.  *Restatement (Second) of Torts* § 927(1).

far as the evidence which will be allowed to show the value of the dog to Plaintiffs, this

court concludes that the evidence simply cannot include every expense they had during

the dog's lifetime.  Plaintiffs have not cited any authority which states that these

expenses are recoverable as damages.[4]  This court therefore concludes that the amounts

Plaintiffs paid for veterinary bills and training are not recoverable damages.

Accordingly, this court agrees with Defendant that the veterinary bills and training

invoices are not admissible in evidence.[5]

     In this court's view, the proper measure of damages for Plaintiffs' loss of their

dog is the reasonable value of the dog to them.  Plaintiffs will be allowed to present

testimony regarding the dog's qualities as a companion dog and as a hunting dog.[6]

Plaintiffs will also certainly be allowed to present evidence of the emotional distress

they suffered after their dog's death.  However, because Plaintiffs are claiming

---

[4]  This court notes that there is no evidence that Plaintiffs incurred any veterinary bills for their dog after he was shot.

[5]  This court notes that, clearly, the spreadsheet itemizing expenses totaling $13,833, cannot be admitted into evidence.  The spreadsheet is a confusing statement which Plaintiffs acknowledge includes expenses paid for the dog and also includes expenses that Plaintiffs incurred for the training of their other dog, Boo, after the dog's death.

[6]  At this point, this court is concerned that any evidence regarding the value of the dog for breeding would be based solely on conjecture and speculation.  This court notes that Plaintiffs must prove damages "by a preponderance of the evidence."  *Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 879 (7th Cir. 1970).  "Damages may not be awarded on the basis of conjecture or speculation."  *Id.; see also Benford v. Everett Commons, LLC*, 10 N.E.3d 354, 361 (Ill. App. Ct. 2014).

Thus, prior to Plaintiffs eliciting any testimony regarding breeding value, Plaintiffs should advise the court and be prepared to proceed in a Fed.R.Evid 104 hearing with non-speculative evidence including breeding contracts and similar evidence, establishing that the breeding component of the dog's value (a common chocolate Labrador retriever) was not merely conjecture or wishful thinking.

emotional injury/pain and suffering as a separate item of damages, this evidence cannot be considered by the jury in determining the reasonable value of Plaintiffs' dog.

Defendant's request to bar Plaintiffs from introducing veterinary bills, training invoices and a spreadsheet of itemized expenses incurred before and after the death of Plaintiffs' dog is GRANTED.

## DR. STEVE JACOBS

Defendant's fifth request is for an order barring the testimony of Dr. Steve Jacobs. Defendant stated that, in their Rule 26 Disclosures, Plaintiffs identified Dr. Jacobs as a lay witness who "will testify concerning Dog, his behavior and personality, and the condition of his health prior to November 17, 2012." In their Answer to Interrogatories, Plaintiffs identified Dr. Jacobs of SPORTSVET Animal Medical Center as a lay witness who "will testify about his knowledge of Dog, of Dog's general health and well-being, of the care that the Saathoff family provided to Dog, about the value of hunting dogs, and about the importance of a close personal relationship between owner and animal."

Defendant argued that, to the extent that Dr. Jacobs' testimony was intended to be used to lay a foundation for veterinary bills, such testimony was unnecessary because these bills are not recoverable. Defendant also argued that, to the extent the testimony was intended to be expert testimony regarding the value of hunting dogs or the importance of a close personal relationship between owner and animal, the testimony should be excluded because no expert has been disclosed in this case. Finally, Defendant argued that, to the extent his testimony is intended to offer lay

14

testimony as to his knowledge of Dog, of Dog's general health and well being, and the care provided by the Saathoff family, this testimony should be excluded because it would be duplicative of the anticipated testimony of Plaintiffs and contrary to the goals of simplifying the issues and limiting the number of witnesses for a fair and expeditious trial.

In their Response, Plaintiffs argued that Dr. Jacobs should be allowed to lay a foundation for the veterinary bills.  Plaintiffs also argued that they do not intend to ask Dr. Jacobs to state any opinion that would constitute expert opinion testimony. Plaintiffs also stated that they do not expect any testimony by Dr. Jacobs to be duplicative of other testimony.  Plaintiffs argued that, to the extent it may be, it would constitute the testimony of a disinterested third person which may be considered to have greater credibility.  Plaintiffs also argued that potential duplicativeness is not an adequate basis for barring the testimony.

This court agrees with Defendant that the veterinary bills are not admissible so Dr. Jacob's testimony is not necessary to lay a foundation for them.  This court concludes, however, that Dr. Jacobs could present direct evidence relevant to the issue of damages regarding Plaintiffs' care of their dog and the general health of their dog from his own observations, although certainly not the cost of veterinary bills and treatment.

This court will not bar the evidence at this stage of the proceedings based upon the fact that it may be duplicative of some of the testimony presented by Plaintiffs. Defendant may object during the trial to any testimony of Dr. Jacob (or any plaintiff) if

it is duplicative of prior testimony.  Ergo, Dr. Jacobs may present testimony consistent with this order and Defendant's request to bar Dr. Jacobs' testimony is DENIED.

PAUL LANCE

For his sixth request, Defendant asked this court to bar the testimony of Paul Lance.  Defendant stated that, in Plaintiffs' Answer to Interrogatories, Paul Lance is identified as a lay witness who "will testify to his experience as trainer of Dog, about the diligence and hard work that the Saathoff family put into training Dog, about Dog's abilities and prospects as a hunting dog, about the relationship between owner and animal in a hunting dog family, about the importance and effectiveness of personal training efforts by a dog owner, and about the value of a highly trained bird dog."

Defendant argued that, to the extent that Lance's testimony is intended to be used to lay a foundation for invoices related to kennel fees and hunting dog training fees, this testimony is unnecessary because these invoices are not recoverable.  Also, to the extent that Lance's testimony is intended to be expert testimony, it should be excluded because no expert has been disclosed in this case.  Lastly, Defendant argued that, to the extent that his testimony is intended to offer lay opinion testimony, the testimony would be duplicative of the anticipated testimony of Plaintiffs and contrary to the goals of simplifying the issues and limiting the number of witnesses for a fair and expeditious trial.

Plaintiffs argued that Lance should be allowed to provide foundation for the training invoices, that he will not be asked to provide expert opinion testimony and that they do not expect Lance's testimony to be duplicative.  This court has concluded that

16

the training invoices are not admissible.  However, this court concludes that Lance possibly could provide testimony regarding his direct knowledge of Plaintiffs' dog's training and hunting abilities (although not an accounting of the costs associated with training, kennel fees, etc.).  The exact nature of this evidence, however, is not known to the court at this time. Thus, this court will not bar this evidence at this time based upon the fact that the testimony is irrelevant or hearsay or may be duplicative of some of the testimony presented by Plaintiffs.  Defendant's request to bar Lance's testimony is DENIED.  Defendant remains free to object to Lance's testimony as it is introduced.

RAYMOND FLETCHER AND SPUD ALLEN

Defendant's seventh request is for an order barring the testimony of Raymond Fletcher and Spud Allen.  Defendant stated that Plaintiffs identified these witnesses as being able to testify "about his relationship with the Saathoff family, his knowledge of the Saathoffs and their interactions with Dog, and about his observations and experiences on the evening of November 17, 2012, and specifically concerning the events at the scene shortly after Dog was shot."

Defendant stated that neither of these witnesses were occurrence witnesses to the events that led up to the shooting of Plaintiffs' dog.  They are friends of Plaintiffs and arrived at the scene of the subject shooting sometime after the Saathoffs arrived. Defendant argued that their testimony is irrelevant as to whether Defendant's shooting of the dog was reasonable and would be duplicative of the anticipated testimony of Plaintiffs and contrary to the goals of simplifying the issues and limiting the number of witnesses for a fair and expeditious trial.

Plaintiffs have responded that the testimony of Fletcher and Allen will be relevant to the issue of damages because they were on the scene immediately after the shooting and have direct personal knowledge of the shock and trauma the shooting caused to each of the three Plaintiffs.  Plaintiffs argued that the witnesses would also be able to testify concerning the importance each Plaintiff placed upon their relationship with their dog and the significant damage done to them each individually as a result of Defendant's action.  Plaintiffs argued it was doubtful that the testimony of these two witnesses would be duplicative of any other testimony.

This court concludes that Fletcher and Allen *may* provide testimony relevant to the issue of damages consistent with Plaintiff's representation that they have direct personal knowledge of the shock and trauma the shooting caused to each of the three Plaintiffs. The court is mindful, however, that such testimony can easily stray into hearsay,  and in fact, may be primarily based upon hearsay - the statements of the individuals at the scene as to what occurred.  Therefore, the court direct Plaintiffs to explain and advise Fletcher and Allen *not to offer hearsay testimony*. This court will not bar their testimony at this time and Defendant's request is DENIED.  This court will deal with any problems with overly duplicative testimony or testimony regarding Plaintiffs' statements to Fletcher and Allen at trial.[7]

---

[7] Upon request of either party, the court will conduct a Fed.R.Evid. 104 hearing prior to Fletcher and Allen testifying before the jury.

To be clear, the court is concerned that the bulk of Fletcher's and Allen's testimonies will be a hearsay recitation of the shooting of Plaintiffs' dog. The court will not permit this. The court *will* permit Fletcher and Allen to describe the emotional impact and state of the Plaintiffs which they directly observed after the incident.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Supplemental Motions in Limine (#81) is GRANTED in part and DENIED in part.

(2) This case remains scheduled for a miscellaneous hearing on July 6, 2015, at 10:30 a.m. and for a jury trial on July 7, 2015 at 9:30 a.m.

ENTERED this __29th__ day of ___June___, 2015.

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE