IN THE UNITED STATE DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, <br><br> Plaintiffs, <br><br> v. <br><br> OFFICER ANDRE DAVIS, <br><br> Defendant. | ) ) ) ) ) ) ) No. 13-cv-02253 ) ) ) ) ) |

PLAINTIFFS' TRIAL MEMORANDUM RE: DAMAGES

NOW COME Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, through their attorneys, Sorling Northrup, Stephen F. Hedinger of counsel, and for their Trial Memorandum concerning damages, state as follows:

1. This is Plaintiffs' lawsuit for damages for the harm they incurred as a result of Defendant Andre Davis shooting and killing Plaintiffs' dog, Dog. From the inception of this litigation Defendants have advanced the mistaken view that Plaintiffs' damages in this case were limited to the fair market value of Dog at the time he was killed; Defendants have asserted that, since Dog was considered to be personal property under the eyes of the law, Plaintiffs should be limited to recovery based upon the general personal property loss formula, value at the time of destruction.

2. Plaintiffs have never disagreed that Dog, like any animal under Illinois law, was considered personal property, but Plaintiffs consistently asserted that the damage theory they wanted applied to their situation was the value of the destroyed dog to them, which is the alternative damage formula available when the value to the owner

of <u>any</u> personal property exceeds the market value, such that application of the general rule would be inequitable. The two formulae are set forth in §911 of the Restatement (Second) of Torts – the general formula is referred to as the "exchange value," defined as "the amount of money for which the subject matter could be exchanged or procured if there is a market ...," and the alternative formula is "the value to owner if this is greater than the exchange value." (Plaintiffs have also consistently requested damages for all other injuries they have suffered as a result of the Defendant's unlawful seizure of their property).

3. Plaintiffs have always taken the position that the value of Dog to them exceeded the exchange value, and they have opposed Defendant's jury instructions and otherwise argued that Defendant's formula was insufficient and inappropriate, and that the case should permit evidence of the value Dog had to them, and that the jury should be instructed that its damage calculations should use that formula.

4. This Court has now largely agreed with Plaintiffs. Both in this Court's June 29, 2015 Order (#93) and in the Court's proposed jury instructions (#97), the Court has adopted Plaintiffs' formula and not accepted Defendant's. The Order, in fact, states: "In this court's view, the proper measure of damages for Plaintiffs' loss of their dog is the reasonable value of the dog to them." (Order #93, at 13).

5. Notwithstanding this Court's agreement with Plaintiffs' theory of damages, two questions appear to remain about the evidence that will be competent at trial to assist in establishing the value of Dog to the Plaintiffs, and this memorandum is intended to provide Plaintiffs' authorities and arguments relating to these issues.

### Evidence of Costs of Training

6. This Court's June 29 Order prohibited Plaintiffs from offering into evidence documentation concerning the amount of money they spent training Dog to become a proficient hunting dog (Order, #93, at 13) ("... the amounts Plaintiffs paid for ... training are not recoverable damages"), and the Order also stated that Plaintiffs' witness Paul Lance will not be permitted to provide "an accounting of the costs associated with training, kennel fees, etc." (Order, #93, at 17).

7. Plaintiffs never intended to offer evidence of the amounts they spent training Dog as recoverable damages in and of itself. Rather, evidence of the amounts they spent training Dog is relevant to prove the value Plaintiffs placed upon Dog and the services he was able to provide, which cannot be duplicated. Plaintiffs agree with this Court's assessment that the measure of damages here is not "replacement costs" as such, which would presume that Dog was replaceable and that the exchange value would suffice to make Plaintiffs whole. However, in asking the jury to determine the value to Plaintiffs, the amount that Plaintiffs were (and are) willing to pay to produce a highly trained hunting dog is strong evidence, and even necessary evidence, of the value they placed upon Dog.

8. Taliferro v. Augle, 757 F.2d 157 (7th Cir. 1985), concerned a lawsuit by an individual against police officers who, among other things, were responsible for the loss and destruction of the plaintiff's personal writings. The court, citing §911 of the Restatement (Second) of Torts, agreed that "an author may prove nonmarket damages for the tortious destruction of a manuscript" where there is no dollar value that can be given to the manuscript, but the court continued by noting that the plaintiff must

provide some "proof of the value of the manuscript," and provided as examples "proof of the cost in time or materials of reconstructing" the destroyed manuscript. 757 F.2d at 161-62. In that case the damage figure the jury awarded had been "pulled out of [the] hat" of the plaintiff's lawyer during closing argument, and the appellate court rejected the award (ordering a remittitur or new trial, at plaintiff's option). 757 F.2d at 161-63.

9. Comment e to §911 of the Restatement (Second) of Torts, which the Taliferro court cited, addresses proof of value to owner as including "the original cost, and the quality and condition at the time of loss." With respect to destroyed personal manuscripts, the comment states evidence of value can include "the value of time spent in producing it or necessary to spend to reproduce it."

10. Applied here, the Taliferro ruling and comment e teach that evidence of Dog's value to Plaintiffs can and should include not only his "original cost," but his "quality and condition" at the time of his death, along with "the value of time spent" creating him prior to his death – which includes the value of the specialized training he received. While Dog is irreplaceable, competent evidence of his value to Plaintiffs also includes the cost that would be "necessary to spend to reproduce" a dog of his caliber and qualities. Just as a "reproduced" piece of writing will not be a duplicate of the destroyed version, neither would a "reproduced" hunting dog be a clone of Dog – but Plaintiffs should be entitled, per §911 and per Taliferro, to the value of reproducing him to the extent that is possible.

11. Other cases are also instructive and support Plaintiffs' position. In King Fisher Marine Service, Inc. v. NP Sunbonnet, 724 F.2d 1181 (5th Cir. 1984), rehr'g denied,

729 F.2d 315 (5th Cir. 1984), the plaintiff had purchased a specialized barge needed for use as a drydock. 724 F.2d at 1182-83. The plaintiff paid $30,000 for the barge in February 1979, 724 F.2d at 1185, and then hired the defendant tug to tow the barge to plaintiff's location. During the tow trip, two days after plaintiff purchased the barge, the barge sank and was a total loss as a result of the tug operator's negligence. 724 F.2d at 1183. Thereafter the plaintiff sought another barge or other platform to serve its specialized needs, and found "a suitable replacement barge" in November 1979 (i.e., nine months later). However, although "suitable" the replacement had a hole that needed to be patched, and the plaintiff therefore spent an additional $202,996.75 to fix the barge (other alternatives available to plaintiff included manufacturing a new barge for one million dollars, or combining smaller barges for a cost of around $600,000). 724 F.2d at 1185. The district court awarded plaintiff damages of $232,996.75. The defendant objected on appeal that the value of the barge was only $30,000, because that was the "exchange" or market value established by plaintiff's purchase, but the appellate court disagreed by noting that the true value to the barge was its "unique capabilities [that] made it valuable for use other than as a barge." 724 F.2d at 1185. In denying rehearing, the Fifth Circuit cited and relied upon §911 of the Restatement (Second) of Torts, and while agreeing with defendant that the general rule was to award the exchange value, the court also noted that "the barge's value to [plaintiff], however, is the proper measure of its loss in the circumstances presented here."

12. Applied here, Fisher Marine teaches that proof of the value of Dog to Plaintiffs can and should include the amount of money they will spend to reproduce, as close as

they may be able, the attributes and qualities that they intentionally instilled in Dog through the training they provided him. Like the replacement barge, Dog's value is not simply the market cost of another chocolate Lab, but also includes the time and money Plaintiffs invested to create the dog that he was at the time he was shot.

13. Plaintiffs also point to Trustees of Univ. of the Dist. of Columbia v. Vossoughi, 963 A.2d 1162 (D.C. Ct. of App. 2009), where a professor sued his former university employer after the university cleared out the professor's office/laboratory and destroyed its contents. 963 A.2d at 1165-66. Included among the destroyed materials were three categories of items that the court determined to be "unique or had no fair market value" (963 A.2d at 1168): course materials, unpublished research data, and scientific instruments plaintiff had fabricated himself. The items in a fourth category, consisting of equipment and other materials that had been purchased, were determined to have a fair market which was used as the measure of damages for those items. 963 A.2d at 1176. The trial court instructed the jury that, in determining damages for property that "was unique or possessed special qualities which could only be appreciated by its owner, you may consider the following factors in determining the actual value of the property. One, the age of the property; two, the degree to which the property was used by the owner; three, the condition of the property just before and after it was damaged; four, the uniqueness of the property; five, the reasonableness of recreating the property; six, the cost of recreating or replacing the property; seven, the degree to which the property wore out with age; and, eight, the opinion of the owner as to its value." 963 A.2d at 1173. The jury awarded plaintiff $1.6 million in damages, and on appeal the defendant complained

about the evidence introduced by the plaintiff to support the damage award. The appellate court followed the Restatement (Second) of Torts, though, and noted that "'[a] person tortiously deprived of property is entitled to damages based upon its special value to him if that is greater than its market value.' Where the lost property in such cases is replaceable, it is appropriate to measure damages for its loss by the cost of replacement." 963 A.2d at 1175–76 (quoting Restatement (Second) of Torts §911 comment c, and citing Restatement (Second) of Torts §911 comment e). The appellate court discussed, and approved of, the plaintiff's proof of the value of the destroyed materials, which essentially consisted of plaintiff's estimates of "the time it would take him to replicate it." 963 A.2d at 1176. With specific reference to the lost course materials, which consisted of notes and materials the plaintiff had developed to teach twenty-one different courses (963 A.2d at 1168 -69), the plaintiff had estimated the value in part based upon the amount of time it took to create the materials, and the defendant objected that the plaintiff had already been paid by his former academic employers for creating those materials, which should have been deducted from their value; the court answered, though, that the fact that he had already been paid to produce those materials "does not diminish the value of his course materials to [plaintiff]; if anything, it confirms their value." 963 A.2d at 1177.

14. The Vossoughi analysis applies here. Plaintiffs should be able to prove the value of Dog to them based, in part, upon the amount of money it will take to replicate the type of hunting dog they had developed in their years of working with Dog. Moreover, the amount of money they spent creating Dog does not diminish the value they have lost by Dog's death, but to the contrary that number confirms the loss they

have suffered as a result of his death.

### Value of Dog

15. This Court's June 29 Order also concluded that "relevant case law would support a value for a dog *possibly* in the thousands of dollars, but certainly not in the tens of thousands." (Order , #93, at 12).

16. This Court has not requested, nor has any previous motion filed in this case raised an issue that has required, a discussion of relevant case authorities for the value of a dog.

17. Plaintiffs are unsure of the meaning of the Court's reference to a reasonable value of a companion dog, in terms of evidence to be considered by the jury in this case, or why that value must be considered to be in the thousands of dollars or less. Even as a matter of market value, many dog breeds (including chocolate Labrador retrievers) sell for several thousand dollars or more. This case, however, concerns the actual value to Plaintiffs of the particular dog that was killed, and not merely the market value of that dog or of dogs in general. Plaintiffs do not in this case value their dog merely as a companion animal (although certainly he was that too), but also as a working dog whose abilities and knowledge were extremely important to Plaintiffs. Finally, this case requests damages for the deprivation of Plaintiffs' constitutional rights based upon Defendant's shooting of Dog, which includes but is not limited to the harms they have suffered by the loss of Dog, so the value of Dog is just a piece of the Plaintiffs' damages.

18. The outcomes of other cases known to Plaintiffs are illustrative of the range of damages available to Plaintiffs in a §1983 case such as this.

19. In Green v. Barden, No 14-4629 (N.D. Ill.), the court entered judgment on December

13, 2013 for $75,000 on plaintiff's acceptance of an offer of judgment made by the defendant; the complaint alleged that the defendant police officer had shot and injured the plaintiff's Corso dog, in violation of the plaintiff's constitutional rights. A copy of the complaint is attached hereto as Ex. 1, and the docket entry entering judgment is attached as Ex. 2; both are also available for review through Pacer.

20. On April 19, 2013 the court entered judgment on the plaintiff's acceptance of an offer of judgment in the amount of $101,162.78 in the case <u>Wright v. City of Des Moines</u>, No. 12-1962 (W.D. Wash.); the complaint in that case alleged the defendant police officers had shot and killed the plaintiffs' Newfoundland dog in violation of their constitutional rights, and the Plaintiffs' Motion for Reasonable Fees and Costs reflects that the offer of judgment was for damages of $51,000, and the remainder was for plaintiffs' costs and fees. A copy of the order entering judgment on the accepted offer of proof is attached hereto as Ex. 3, a copy of the complaint is attached as Ex. 4, and a copy of the Plaintiffs' Motion for Reasonable Fees and Costs is attached as Ex. 5; all are also available on Pacer.

21. In 2011 the court entered judgment of $330,000 in compensatory damages awarded by a jury in favor of four plaintiffs in <u>Russell v. City of Chicago</u>, No. 10-C-525 (N.D. Ill.). The complaint alleged, among other things, that the plaintiffs' nine year old black Lab had been shot by the defendant police officers in violation of the plaintiffs' civil rights. A copy of the complaint is attached hereto as Ex. 6, and the judgment is attached as Ex. 7; both are also available on Pacer.

22. Plaintiffs do not cite these docket materials as direct evidence or authority in support of any damage calculation in this case, but rather cite them as illustrative of the range

of damages that have been found to be available to successful plaintiffs in cases similar to this one.

23. Reported appellate court decisions do not, generally, provide sufficient information to generalize about the range of damages available in a particular case; even if an appellate decision discusses damages, the discussion by necessity is usually limited to the facts of the case being considered. In Taleferro, for instance, the trial court had awarded $50,000 for destroyed documents with no market value based solely upon the number proposed by the plaintiff's attorney; the appellate court reversed not because $50,000 was inconceivable as a reasonable value for such items, but because the plaintiff had failed to introduce evidence to support the award. Even then, the appellate court simply reduced the award to $25,000, rather than vacating it altogether.

24. Similarly, the cases discussed in this Court's June 29 Order do not compel a conclusion that a companion dog cannot reasonably be valued at any more than a few thousand dollars. Demeo v. Manville, 68 Ill. App. 3d 843, 386 N.E.2d 917 (2d Dist. 1979), is perhaps factually the closest to this, since it concerned the death of a dog with special values beyond its value as a house pet (it had been a first-prize winner in several dog shows). The court there noted that the dog had been purchased for $200, but awarded to the plaintiffs two and a half times that amount in damages ($500) as a result of the special attributes of the dog. However, the case does not suggest that the plaintiffs had argued that they were entitled to additional damages for lost breeding opportunities, or that they had incurred any particular expenses in developing their dog to become a show winning dog, and the case did not concern constitutional

violations. In fact, the issue being considered by the appellate court was whether one of the plaintiffs was competent to offer testimony about the dog's value (the court held that the plaintiff was). Moreover, that case was decided forty years ago, and there have been no intervening discussions about whether and how the damage consideration might have developed in the decades since then, or how much a $500 value would be worth today.

25. Anzalone v. Kragness, 356 Ill. App. 3d 365, 826 N.E.2d 471 (1st Dist. 2005), was a suit for damages for the death of a cat, not a dog. The court considered that the $100,000 claimed by plaintiff's complaint for "value to owner" damages to a domestic house cat would be excessive, but the court did not analyze that amount beyond stating that the excessiveness was no reason to dismiss the complaint. Anzalone did expressly recognize that a pet owner seeking damages for the pet's death is entitled to amounts in excess of mere market value where the special value exceeds the market value, but the case did not discuss any particular factors that should be considered by the jury in making that determination, nor did it set any limits as to how much could be recovered other than to state that it appeared that $100,000 was excessive (but even then, the full measure of damages was dependent upon the plaintiff's proof at trial). As with Demeo, the Anzalone case did not suggest that the plaintiff had incurred any particular costs in raising or training her cat, or that it had any particular skills or qualities that other household cats do not have, nor was the case decided based upon any violation of the plaintiff's constitutional rights.

26. Jankoski v. Preiser Anim. Hosp. Ltd., 157 Ill. App. 3d 818, 510 N.E.2d 1084 (1st Dist. 1987), rejected the plaintiffs' request to create a new cause of action for loss of

companionship of a pet German shepherd that died during veterinary care. The court recognized that sentimental value of a pet may be a part of Restatement (Second) of Torts §911 actual value to owner damages in such a case, but refused to create an independent cause of action focused solely upon the loss of companionship, loyalty, security and friendship suffered upon the death of a pet dog. The <u>Jankoski</u> ruling, like the others discussed above, was silent about the limits of damages available under the value to owner damage calculation, and to any extent it did touch upon that issue, the decision is thirty-five years old, and may not reflect more recent recoveries. Further, there again appeared no argument by the plaintiffs that the deceased dog had any value beyond the companionship value they sought – there is no indication that the pet had been specially trained for any purpose, or that the plaintiffs utilized his purposes for anything other than companionship. Finally, the case did not consider the damages available for deprivation of a constitutional right, either, but instead concerned only an action against private veterinarians for negligence.

27. Finally, in <u>Leith v. Frost</u>, 387 Ill. App. 3d 430, 899 N.E.2d 635 (4th Dist. 2009), a four and a half year old dachshund was severely injured by a neighbor's dog. The plaintiffs, owners of the dachshund, sued for that dog's veterinary charge of $4,784, but the trial court limited available damages to the exchange value of the dog, found to be no more than $200. The appellate court reversed, ruling that the Restatement (Second) of Torts §911 alternative damage formula of value to owner was available on a damage-to-pets case just as in a death case, and so the plaintiffs would not be limited in their damage claim to no more than the fair market value of the dog. Notably, the result of the <u>Leith</u> holding was to allow a recovery of value-to-owner

damages that was twenty-four times the exchange value of the dog (extrapolated, an exchange value for a dog of $3,000 could, under the Leith values, support a value to owner of $72,000, if this were only a purely mathematical process). In any event, that case, like the others discussed above, did not purport to set any value range for the fair market value of domestic pets, did not consider any special attributes, training, abilities or qualities that the dachshund had or unique relationship dynamics between the dog and the owners, and did not consider the value of the dog's injuries in the context of constitutional violations.

28. In sum, other than the anecdotal value of the cases discussed in paragraphs 19 through 21 above, Plaintiffs are unaware of any reported authorities that set forth or discuss the current reasonable value of dogs. Plaintiffs would welcome the opportunity, though, to address any authorities thought to authoritatively discuss that topic.

WHEREFORE Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, submit to this Court their memorandum addressing two apparent issues concerning the damage evidence in this case..

Date: July 3, 2015

Respectfully submitted,

JACOB SAATHOFF, KATHY SAATHOFF and
KELSEY MARKOU, Plaintiffs

/s/ Stephen F. Hedinger
Stephen F. Hedinger (#6198999)

Sorling Northrup
Attorneys for Plaintiffs

1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone:  (217) 544-1144
Facsimile:   (217) 522-3173
E-Mail:  sfhedinger@sorlinglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2015, I electronically filed the foregoing Plaintiffs' Motion to Reconsider with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. David E. Krchak
Mr. Thomas Yu
Thomas, Mamer & Haughey, LLP
30 Main Street, Suite 500
P.O. Box 560
Champaign, IL 61824-0560


Frederick C. Stavins, City Attorney
City of Champaign
102 N. Neil Street
Champaign, IL 61820

/s/ Stephen F. Hedinger

Stephen F. Hedinger (#6198999)
Attorneys for Plaintiffs
Sorling Northrup
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone: (217) 544-1144
Facsimile: (217) 522-3173
E-Mail: sfhedinger@sorlinglaw.com