IN THE UNITED STATE DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, <br><br> Plaintiffs, <br><br> v. <br><br> OFFICER ANDRE DAVIS, <br><br> Defendant. | No. 13-cv-02253 |

## MOTION FOR NEW TRIAL AND FOR IMPOSITION OF DISCOVERY SANCTIONS

NOW COME Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, through their attorneys, Sorling Northrup, Stephen F. Hedinger of counsel, and pursuant to Rules 59(a)(1) and 37(c)(1) of the Federal Rules of Civil Procedure, move this Court for entry of an Order granting a new trial in this action, and imposing sanctions against Defendant for discovery violations. In support of this motion, Plaintiffs state as follows:

1. Pursuant to Rule 59(a)(1), "[t]he court may, on motion, grant a new trial on all or some of the issues - and to any party - as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. . . ."

2. This case was tried before a jury on July 7, 8 and 9, 2015, and a jury verdict in favor of Defendant was entered on July 9, 2015. This Court entered judgment on that verdict the same day (later amended to add costs of suit).

3. Plaintiffs at this time request, pursuant to Rule 59(a)(1), a new trial on the grounds that evidentiary rulings made by this Court were in error, and severely prejudiced Plaintiffs at trial. Plaintiffs also request appropriate sanctions be imposed against Defendant as a result of that evidence, pursuant to Rule 37(c)(1). Further, Plaintiffs request a new trial on the

basis that this Court declined to instruct the jury in a manner requested by Plaintiffs, on an issue central to this case that resulted in the jury reaching an erroneous decision based upon an incorrect and/or incomplete statement of the applicable law. Plaintiffs also seek a new trial because the jury verdict was against the manifest weight of the evidence.

### A. IMPROPERLY ADMITTED EVIDENCE

4.     For the first time, in the middle of trial, Defendant offered certain information into evidence, during his own testimony, which had not previously been disclosed to Plaintiffs. Specifically, Defendant testified at trial for the first time that he heard the dispatch caller relevant to this action assert that the dog being attacked by a pit bull was nearly dead. Further, Defendant testified that, between the time he exited his squad car and the time he began firing his gun at the fighting dogs, Defendant performed a detailed mental analysis of potentially available alternatives to shooting, and only after conducting that comprehensive analysis and ruling out certain alternatives did he determine the appropriateness of shooting.

5.     The sole issue concerning liability in this case to be determined by the jury was whether the shooting engaged in by Defendant was reasonable. The action proceeded to trial on Plaintiffs' allegations that the shooting constituted a violation of their Fourth Amendment right to be secure in their possessions, and that the shooting was an unconstitutionally unreasonable seizure of their property (specifically, destruction of their dog). The parties were in agreement that shooting the dog constituted a seizure, leaving the sole factual issue for jury determination the reasonableness of the shooting.

6.     In anticipation of issues to be determined during the trial, Plaintiffs engaged in discovery pursuant to Rule 26 of the Federal Rules of Civil Procedure. Among other things, Plaintiffs submitted to Defendant interrogatories (a true and correct copy is attached as Ex. 1),

which Defendant answered (a true and correct copy of Defendant's answer is attached as Ex. 2). Interrogatory No. 7 of Plaintiffs' interrogatories directed to Defendant requested that he describe, in his own words, the shooting incident, including specific statements by the dispatcher to the best of Defendant's recollection, and including Defendant's "explanation for each action You took." In response to this Interrogatory, Defendant answered that his "recollection of the incident at issue in this case is contained in the Champaign Police Dept. police report included in the Aug. 5, 2014 document production, Champaign Case # cc1211545." The description corresponds with the document introduced during trial as Plaintiffs' Exhibit 9A (hereinafter the "Police Report").

7.   In addition, Interrogatory No. 14 submitted by Plaintiffs to Defendant stated, "If You contend that there is any lawful justification or excuse for the shooting of Dog by You on November 17, 2012, state the lawful justification or excuse and state all factual and legal support for the contention." Defendant responded: "All justifications are included in the documentation provided to Plaintiffs on Aug. 5, 2014."

8.   At no time prior to trial (nor subsequently) has Defendant submitted to Plaintiffs any supplement to his answers to these interrogatories.

9.   In accordance with Defendant's interrogatory responses, it was Plaintiffs' understanding and belief that the full and complete explanation for Defendant's actions on November 17, 2014 were contained within the Police Report. The Police Report reflects that the dispatch call was for "a vicious pit bull dog running at large." The Police Report also reflects that, "METCAD dispatched a call regarding a vicious Pit Bull dog in the area of John and Crescent." Conversely, the Police Report says nothing about the dispatcher asserting that the dog being attacked was nearly dead.

10. The Police Report is also silent about any thought processes or considerations engaged in by Defendant, or any alternatives considered by him, prior to the shooting, except that the Police Report reflects that Defendant observed and considered which dog appeared to him to be the more aggressive, and based solely upon that determination Defendant decided which dog to aim at when he shot. The Police Report is silent about any consideration of using OC spray to separate the dogs, or concerning the futility of calling for backup or Animal Control, or the unavailability of any officers to obtain the Department's catchpole, or any other alternatives. Further, the Police Report does not suggest that the two fighting dogs posed any current or potential danger prior to the time that Defendant shot one of the dogs.

11. Accordingly, Defendant's testimony on these subjects constituted a complete and unexpected surprise to Plaintiffs during the middle of trial, and conversely was never disclosed to Plaintiffs prior to the time of trial.

12. Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

13. At the time the evidence was offered during trial, Plaintiffs objected and moved to exclude that evidence pursuant to Rule 37(c)(1). (Plaintiffs had also moved in limine before trial to bar Defendant from testifying to any matters beyond what was written in the Police Report, but this Court denied that motion). Defendant did not at that time, nor has he ever, suggested that the late disclosure was substantially justified. In fact, Defendant admitted on the witness stand that at least some of the evidence was first developed during a meeting he had with counsel just prior to trial, at which time counsel "refreshed" Defendant's recollection concerning what

the dispatcher might have said. Defendant, though, failed to notify Plaintiffs of this newly refreshed information, nor did Defendant notify of the additional evidence concerning his alleged though processes, and never supplemented his answers to the subject interrogatories.

14. Further, the failure to disclose was not harmless, but to the contrary was deeply prejudicial to Plaintiffs and resulted in the jury verdict in favor of Defendant in this case. Without the undisclosed evidence, the jury had before it a Police Report, and testimony from three eyewitnesses, that established that Defendant arrived at the scene and thirty or forty seconds later shot Plaintiffs' dog. During the intervening thirty or forty seconds, Defendant shined his car's spotlight on the fighting dogs, walked from his car to near where the dogs were fighting, spoke very briefly with the eyewitnesses, unholstered his gun, took aim, and then fired. This brief span of a half of a minute or so did not provide time for Defendant to contemplate and evaluate various options, and in any event Defendant at no time stated that he did so, either in the Police Report, in his interrogatory answers, or in his deposition testimony, and based solely upon that evidence, it is clear that the jury would have to have found Defendant's actions to have been unreasonable.

15. Indeed, the clear unreasonableness undoubtedly prompted Defendant to develop this new testimony in the first place. Absent the new testimony, the jury was faced with an officer making a rash and uncontemplated decision unjustified by the existing circumstances (including that no person was in any danger). The new testimony, though, presented Defendant as experienced and trained, calmly and rationally contemplating the situation and the circumstances and reaching a logical decision for a course of conduct - none of which had ever been expressed to Plaintiffs in any prior discovery response in this case, although Plaintiff had expressly asked.

16.     Plaintiffs would also point out that the issue of the reasonableness of Defendant's actions was addressed in great detail in the cross motions for summary judgment filed in this case. In all of that factual discussion (including the Declaration submitted by Defendant), Defendant not once mentioned these new and previously undisclosed factual assertions. This clearly and strongly suggests that either Defendant first developed these new assertions in the short weeks between dispositve motions and trial (after he saw the strength of Plaintiffs' evidence against him), or intentionally kept silent in order to sandbag Plaintiffs at trial. Either option reveals improper behavior, and bad faith.

17.     Had Plaintiffs received timely notification of Defendant's revised testimony, they certainly could, and would, have developed and presented evidence to rebut that testimony, in some cases conclusively. Plaintiffs could, and would, have done among the following:

   a.   With respect to the purported information from the dispatcher that the dog being attacked was nearly dead, Plaintiffs would have obtained and offered a tape recording or a transcript of the actual dispatch (if available), or at least the testimony of other officers who heard the dispatch concerning their recollection of what was said, or even the testimony of the dispatcher herself.

   b.   Plaintiffs would have presented evidence to contradict Defendant's assertion that the time of this incident, at about a shift change, meant that no backup was available and no one could bring the catchpole. Sergeant Crane had testified that he <u>was</u> on duty and available (he was not sure, but he may even have been at the station, where the catchpole was located - see Crane dep., at 35 (attached as Ex. 4 to Plaintiffs' Motion for Summary Judgment, d/e #47-4); and Plaintiffs certainly would have asked Sergeant Crane about the availability of other officers and about the availability of a catchpole.

Defendant, however, presented this testimony only after Plaintiffs had presented Sergeant Crane's testimony and allowed him to depart, and in any event, Plaintiffs had no advance notice of this testimony and so could not have prepared for it.

c. Plaintiffs had virtually no opportunity to challenge Defendant's assertion that the use of OC spray would have created a hazard to nearby persons, but undoubtedly many of the witnesses deposed in this case, including Sergeant Crane and Lieutenant Swenson, could have spoken authoritatively on the truthfulness and accuracy of that testimony. Notably, both Sergeant Crane (Crane dep., at 93-94 (d/e #47-4)), and Lieutenant Swenson (Swenson dep., at 87-88 (ex. 5 to Plaintiffs' Motion for Summary Judgment, d/e #47-5)), acknowledged the option of using OC spray in the situation confronted by Defendant, but said nothing about any potential risk to bystanders.

18. Pursuant to Rule 37(c)(1), evidence such as that which was sprung upon Plaintiffs at trial is to be excluded, and exclusion is only not required if the proponent shows that the failure to disclose was substantially justified and that the failure to disclose was harmless. Here Defendant has not met that burden, and the evidence should have been excluded at trial. Due to the substantial prejudice suffered by Plaintiffs as a result of the evidence, this Court should order a new trial pursuant to Rule 59(a)(1).

19. Moreover, Rule 37(c)(1)(A) provides that, in addition to or instead of exclusions, the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Plaintiffs request that, in addition to ordering a new trial and excluding the new evidence, this Court order Defendant to pay Plaintiffs' fees and costs incurred during the first trial of this case.

## B. IMPROPER JURY INSTRUCTION

20. The Seventh Circuit has expressly ruled that, when a police officer shoots a dog, the shooting is only reasonable if the dog did not pose an immediate threat <u>and</u> no alternatives were available. <u>Viilo v Eyre</u>, 547 F.3d 707, 710 (7th Cir. 2008). Both prior to and at the time of the jury instruction conference, Plaintiffs requested that the instruction concerning the meaning of "unreasonable" in this Fourth Amendment case include the standard announced in <u>Viilo</u>. This Court declined, though, upon the basis that the <u>Viilo</u> standard was limited to Wisconsin.

21. Plaintiffs respectfully submit that rejection of Plaintiffs' proffered instruction was prejudicial error. The <u>Viilo</u> court itself indicated that the standard was both pursuant to Wisconsin law and as a matter of common sense. Presumably, "common sense" applies regardless of what state one is in, and in any event, the standard is one of federal constitutional law, not of state law. That is, presumably even if Illinois law provided that a police officer could shoot a dog for no reason whatsoever, that law would not provide a defense to a Fourth Amendment challenge, which instead would be guided by the reasonableness standard articulated in <u>Viilo</u>.

22. Moreover, the standard articulated as Wisconsin law by the <u>Viilo</u> court is also the standard applicable in Illinois, as Plaintiffs' prior pleadings before this Court have indicated. The Illinois Animal Control Act, 510 ILCS 5/1 et seq., specifically addresses the actions to be taken by law enforcement personnel in response to both dogs thought to be "dangerous" and those thought to be "vicious". Here, the Police Report repeatedly referred to the pit bull as "vicious". Illinois law specifically requires that such a dog be taken into custody (see 510 ILCS 5/9, 5/15), and only allows its killing by humane euthanasia, not by shooting in the street (510 ILCS 5/11). Defendant has never identified any statutory support for a contention that shooting a

dog under these circumstances in any way complies with Illinois law, and to the contrary, a review of the Animal Control Act reveals that no support exists.

23.  Here the jury was instructed generally that it was to determine whether Defendant's shooting was reasonable, but aside from stating that the determination was to be made based on information known to the officer at the time of the shooting, no further guidance was provided to the jury as to when it is reasonable for a police officer to shoot a dog. Accordingly, the jury was free to determine that the shooting could have been reasonable even though no person was in any danger - in fact, Defendant himself testified that he was only concerned for bystanders' <u>potential</u> safety, and not because of any immediate danger, which is clearly an inversion of the applicable standard (<u>Viilo</u> requires "an immediate danger"). Similarly, the jury was free to determine that the Defendant's actions were reasonable based upon his self-serving discussion of potential alternatives, and was not instructed as to how to interpret those actions in the event Defendant chose not to attempt any of them (again, contrary to <u>Viilo</u>'s admonition that the use of deadly force be "unavoidable", 547 F.3d at 710). Ultimately, in fact, the jury was unconstrained from evaluating "reasonableness" based upon the inflammatory and exaggerated arguments of Defendant's counsel, that Defendant was protecting the bystanders from a "vicious" and unpredictable pit bull and that the pit bull deserved to be executed, even if it did not pose an immediate danger and other alternatives could have been, but were not, attempted.

24.  The outcome of this case would have been far different had this Court correctly instructed the jury concerning the standard of reasonableness applicable in the instance a police officer shoots a domestic pet. Accordingly, Plaintiffs request a new trial for this reason, as well.

### C. MANIFEST WEIGHT OF EVIDENCE

25.     Finally, Plaintiffs request a new trial because the jury verdict was against the manifest weight of the evidence. The only factual issue the jury resolved in this case was whether Defendant acted reasonably when he shot Plaintiffs' dog. The unrebutted and undisputed evidence presented to the jury reveals that the only answer to this question is that Defendant did not act reasonably, and therefore the jury's verdict was against the manifest weight of the evidence.

26.     The unrebutted and undisputed facts, or the facts Defendant himself presented, reveal that, on the evening in question, Davis:

- Arrived and within thirty to forty seconds shot the dog;
- During that half minute time span, spoke briefly with Kelsey and Tyrone;
- Learned that Kelsey's dog was colored brown and the pit bull was colored gray;
- Knew he was impaired with a condition that prevented him from distinguishing brown from gray (that is, colorblindness);
- Knew his colorblindness has impeded both his personal life and his professional life in the past;
- Knew that the colorblindness was exacerbated by the dark, and knew that it was twilight and so becoming darker;
- Knew that no person present was in any immediate danger from either of the two fighting dogs;
- Knew that a number of alternatives to shooting the dogs existed, including calling for a supervisor, for backup, and/or for animal control;
- Decided, without attempting any, to reject all available alternatives;

- Shot at one of the dogs without first speaking further with either Kelsey or Tyrone;
- Less than two minutes later, called for a supervisor and for animal control (two alternatives he had rejected only moments before).

27. During closing argument, Defendant's counsel admitted that shooting Plaintiffs' dog was a mistake. The undisputed and unrebutted facts reveal, though, that the root cause for that mistake was Defendant's colorblindness, which he alone knew about, and of which he knew the consequences. Despite that impairment, Defendant failed to take any actions or precautions to avoid potential injuries or damages resulting from the impairment itself, and that is exactly what the "mistake" of shooting Plaintiffs' dog was. It was simply unreasonable, under these facts, for Defendant to have behaved as he did.

28. Moreover, the undisputed and unrebutted facts reveal that Defendant was also unreasonable in shooting, where no person was in any immediate danger, and where alternatives could have been attempted, but were simply disregarded by Defendant. Defendant himself admitted that his concern for the bystanders' safety was only in regards to what might happen once the fight ended, and not immediately. Further, Defendant admitted that a number of alternatives existed, which he simply disregarded - he claimed to disregard the options of calling for a supervisor, for backup or for animal control because it would take too long, but that excuse was completely undermined by his own actions of calling for supervisor assistance and animal control less than two minutes after shooting the dogs. Under prevailing Seventh Circuit precedent (Viilo), under Illinois law (the Animal Control Act), and under common sense, Defendant's actions were unreasonable, and the jury's verdict to the contrary is against the manifest weight of the evidence.

## CONCLUSION

29. For the foregoing reasons, Plaintiffs request that this Court grant a new trial in this matter. Further, Plaintiffs request pursuant to Rule 37, that this Court award in their favor attorney's fees and cost in the amount incurred in conducting the original trial in this matter.

30. Pursuant to Local Rule 7.1(B), CDIL-LR 7.1(B), Plaintiffs also submit their memorandum of law in support of this motion.

31. Plaintiffs request, pursuant to Local Rule 7.1(A)(2), CDIL-LR 7.1(A)(2), that this Court schedule oral argument on this motion in order to permit Plaintiffs to fully explain their arguments and to answer any questions the Court may have.

WHEREFORE Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, request that this Court grant a new trial pursuant to Rule 59(a)(1) of the Federal Rules of Civil Procedure, and award to them sanctions, including the exclusion of evidence and the award of attorney's fees, for Defendant's discovery abuse, pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, and request that this Court grant in their favor all such other and further relief as this Court deems just and appropriate.

Date: August 6, 2015

Respectfully submitted,
JACOB SAATHOFF, KATHY SAATHOFF and
KELSEY MARKOU, Plaintiffs

__/s/ Stephen F. Hedinger__
Stephen F. Hedinger (#6198999)

Sorling Northrup
Attorneys for Plaintiffs
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone: (217) 544-1144
Facsimile: (217) 522-3173
E-Mail: sfhedinger@sorlinglaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on August 6, 2015, I electronically filed the foregoing Plaintiffs' Motion for New Trial and For Imposition of Discovery Sanctions with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. David E. Krchak
Mr. Thomas Yu
Thomas, Mamer & Haughey, LLP
30 Main Street, Suite 500
P.O. Box 560
Champaign, IL 61824-0560

Frederick C. Stavins, City Attorney
City of Champaign
102 N. Neil Street
Champaign, IL 61820

/s/ Stephen F. Hedinger

Stephen F. Hedinger (#6198999)
Attorneys for Plaintiffs
Sorling Northrup
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone: (217) 544-1144
Facsimile: (217) 522-3173
E-Mail: sfhedinger@sorlinglaw.com