**E-FILED**
Thursday, 06 August, 2015  04:26:01 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATE DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | No.  13-cv-02253 |
| | ) | |
| **OFFICER ANDRE DAVIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR NEW TRIAL AND IMPOSITION OF DISCOVERY SANCTIONS

NOW COME Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, through their attorneys, Sorling Northrup, Stephen F. Hedinger of counsel, and for their memorandum of law in support of their Motion for New Trial and Imposition of Discovery Sanctions, state as follows:

### A.  Introduction

Jury trial was held in this case on July 7, 8 and 9, and a jury verdict in favor of Defendant was rendered on July 9, 2015.  This Court entered judgment on that verdict on July 9.  Plaintiffs have now filed, pursuant to Rule 59(a)(1) of the Federal Rules of Civil Procedure, their Plaintiffs' Motion for New Trial and Imposition of Discovery Sanctions.  This memorandum provides the legal support for that motion.

Rule 59(a)(1) provides that, "[t]he court may, on motion, grant a new trial on all or some of the issues - and to any party - as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."

"In deciding a motion for a new trial under Rule 59, the 'district court must determine

whether the verdict is against the weight of evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party.'" Krippelz v. Ford Motor Co., 750 F.Supp. 2d 938, 942 (N.D. Ill. 2010), quoting Westchester Fire Ins. Co. v. General Star Ident. Co., 183 F.3d 578, 582 (7th Cir. 1999). The courts have identified several potential grounds for setting aside a verdict and granting a new trial, including an unfair evidentiary ruling, an erroneous jury instruction, or because the jury verdict is against the manifest weight of the evidence. Krippelz, 750 Supp. 2d at 942. Here, Plaintiffs assert all three of these grounds as reasons for this Court to grant a new trial pursuant to Rule 59.

### B. Prejudicial Evidentiary Ruling

Plaintiffs object that this Court erred, to their substantial prejudice, in allowing Defendant to testify concerning matters that had never previously been disclosed in discovery, even though Plaintiffs had specifically requested to be informed of those issues. In particular, Defendant never disclosed, but testified at trial, that because of the dispatcher's statement he believed upon arrival at the scene that the dog being attacked was nearly dead; Defendant also testified, for the first time, that upon arrival he conducted a thorough mental evaluation of numerous alternatives available, and only upon conducting that detailed mental analysis did he decide that shooting a dog was the best option. Plaintiffs have supported their motion for new trial with their interrogatory requests and Defendant's answer; Plaintiffs also point out that, in Defendant's arguments in support of his motion for summary judgment and in opposition to Plaintiffs' motion for summary judgment, he never mentioned this new testimony, which was sprung upon Plaintiffs as a complete surprise at trial.

Plaintiffs' argument begins with the requirements of Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure. In pertinent part, that rule provides: "A party . . . who has responded

to an interrogatory . . . must supplement or correct its disclosure or response:  (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Here, Defendant himself testified that the information about the dispatcher became "known" to him only at a conference with his attorney in preparation for trial.  Further, the absence of these facts from any of Defendant's summary judgment pleadings strongly suggests that Defendant only "developed" the new evidence during the short interval between the summary judgment rulings and the start of trial.  Defendant has not, and cannot, point to any discovery response or other writing in which he ever notified Plaintiffs either of the dispatcher information or of his purported mental analysis.  There is no question that this new information materially changed his answer (which, again, was that his entire "recollection of the incident at issue in this case is contained in the Champaign Police Dept. Police Report . . ."; that report, again, is silent as to these new matters).

Accordingly, it is clear that Defendant is in violation of Rule 26(e) by having failed to have supplemented his discovery response.  Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, as applicable to this situation, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."  The rule further provides for alternative or additional sanctions, including "payment of the reasonable expenses, including attorney's fees, caused by the failure."  As the Seventh Circuit has expressed, "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation . . . was either justified or harmless."  David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003), quoting

Salgado v. General Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998).  To assist the district court in determining whether to exclude, the Seventh Circuit has identified four factors for consideration:  "(1)the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." David, 324 F.3d at 857, citing Bronk v. Ineichen, 54 F.3d 425, 428 (7th Cir. 1995).

Application of the four factors identified by the Appellate Court warranted this Court's exclusion of Defendant's new evidence at the time of trial.  As more fully discussed in Plaintiffs' motion, the new evidence came as a complete surprise to Plaintiffs, and was offered at a time and in a way that precluded them from developing or offering counterveiling evidence; moreover, it seems clear that the jury verdict was largely, if not entirely, the result of that new, surprise evidence.  Second, in light of the timing of the evidence (in the middle of trial, after Plaintiffs had already put on the testimony of most of their witnesses, including those who may have been able to contradict the new evidence), and after Defendant failed to mention any of the new facts in his summary judgment pleadings, Plaintiffs were completely unable to cure the prejudice. Third, the only alternative to exclusion would have required an immediate halt to the trial in order to allow Plaintiffs to conduct some further discovery in order to adequately address the new testimony; the new evidence therefore certainly did disrupt trial.  Fourth, Defendant has expressed virtually no justification for having failed to present this evidence in a timely fashion, or to have at least informed Plaintiffs (and the Court) of the supplemental information prior to trial.

Exclusion of this evidence is also amply supported by case authority.  See Holiday Inns, Inc. v. Robertshaw Controls Co., 560 F.2d 856 (7th Cir. 1977) (affirming exclusion of evidence

first presented at the time of trial, and never provided in a pre-trial supplementary disclosure); Harris v. City of Chicago, 266 F.3d 750 (7th Cir. 2001) (reversing and remanding for new trial where defendant had refused to answer questions based upon Fifth Amendment prior to trial, but then testified at trial, to plaintiff's surprise); Fortina v. Quasar Co., 950 F.2d 389 (7th Cir. 1991) (reversing and remanding for new trial based upon evidentiary errors, including introduction of surprise testimony at trial); Klonoski v. Mahlab, 156 F.3d 255 (1st Cir. 1998) (remanding for new trial where defendant introduced evidence at trial that had not been disclosed previously); Licciardi v. TIG Insurance Group, 140 F.3d 357 (1st Cir. 1998) (remanding for new trial where testimony of expert at time of trial differed from expert report previously produced); Iowa-Mo Enterprises, Inc. v. Avren, 639 F.2d 443 (8th Cir. 1981) (affirming trial court exclusion of evidence not disclosed prior to trial).

Accordingly, the evidence newly submitted by Defendant at the time of trial should have been excluded pursuant to Rule 37(c)(1). "To obtain a new trial based on an evidentiary ruling, the movant must show that: (1) a timely objection or motion to strike appears in the record, stating specific grounds for the objection if the specific ground is not apparent; (2) the erroneous ruling prejudiced the movant's substantial rights." Krippelz, 750 F.Supp. 2d at 942, citing Alverio v. Sam's Warehouse Club, Inc., 253 F.3d 933, 942 (7th Cir. 2001).

Here, Plaintiffs objected during the middle of Defendant's testimony, and argued to this Court that Defendant's new testimony should be stricken. This Court denied that motion. Plaintiffs also preemptively filed a pretrial motion in limine asking that Defendant be limited to testifying only to matters stated in the police report, but that motion was denied.

Further, introduction of that evidence substantially prejudiced Plaintiffs' rights, as has been expressed fully in Plaintiffs' motion and above. Simply put, the new evidence was key and

critical to the jury's verdict in favor of Defendant, and was sprung upon Plaintiffs at a time and in a manner that virtually precluded Plaintiffs the opportunity to challenge the testimony in any meaningful way.

Accordingly, a new trial is appropriate based upon prejudicial evidentiary rulings.

### C.  Erroneous Jury Instruction

"A party may also move for a new trial based on an erroneous jury instruction." Krippelz, 750 F.Supp. 2d at 942.  The Seventh Circuit has acknowledged a district court's substantial discretion in formulating jury instructions "so long as they represent a complete and correct statement of the law." Krippelz, 750 F.Supp. 2d at 942, quoting Warfield v. City of Chicago, 679 F. Supp. 2d 876, 884 (N.D. Ill. 2010).  A new trial based on an erroneous jury instruction requires a moving party to "show both that the instruction did not adequately state the law and that the error was prejudicial to him because the jury was likely to be confused or misled." Krippelz, 750 F.Supp. 2d at 943, quoting Warfield, 679 F. Supp. 2d at 884, and citing Lasley v. Moss, 500 F.3d 586, 589 (7th Cir. 2007).

In this case, Plaintiffs have objected to the instruction given by this Court for the definition of "unreasonable" in this Fourth Amendment context.  The instruction given was based upon Seventh Circuit Pattern Instruction 7.09, modified (see Court's Instruction #20), and this Court also cited the Seventh Circuit ruling in Viilo v. Eyre, 547 F.3d 707, 710 (7th Cir. 2008).

Plaintiffs submitted a proposed modification of this instruction (see Plaintiffs' Motion for Leave to Submit Modified Proposed Jury Instructions, d/e #90), and reiterated that request during the jury instruction conference.  Plaintiffs' proposal was to add language directly from the Viilo case that is specifically applicable to the circumstances in this case - the shooting by a

police officer of a domestic pet.

For reasons expressed more fully in Plaintiffs' motion, Plaintiffs respectfully submit that this Court's instruction did not accurately or adequately state the law applicable to this case. The Court's instruction did not guide the jury in any way in determining the parameters of reasonableness of shooting a household pet by a state actor, even though the Seventh Circuit has spoken directly to that issue.

Moreover, it is apparent that the jury was confused or misled by the general instruction given. The Viilo decision specifically provides that "the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable." 547 F.3d at 710. This language, proposed by Plaintiffs, would have guided the jury into examining Defendant's actions in terms of whether the two dogs fighting posed an immediate danger, and whether the use of deadly force was unavoidable. As matters developed at trial, though, the jury clearly was asked by Defendant to consider the pit bull itself to be a dangerous instrumentality worthy of being shot regardless of the specific circumstances. Defendant himself admitted during his testimony that he did not have any immediate fear for the safety or wellbeing of anyone present, but rather his only concern was that, if the dogfight were broken up, the "vicious pit bull" might turn upon and attack people who were present. Absent the specific admonition from the Viilo case, the jury was free to consider that the pit bull deserved execution as simply a potential hazardous or vicious instrumentality, and not because of any immediate, actual danger. Further, Defendant's testimony acknowledged the existence of alternatives to shooting, but simply rejected each of those alternatives for various reasons without having attempted any, whereas Viilo makes clear that deadly force must be "unavoidable", not merely the most convenient choice. Again, the jury was not guided with the language given.

This Court rejected Plaintiffs' proposed instruction in part because the <u>Viilo</u> court noted that the standard it expressed was consistent with Wisconsin statutory law (whereas, of course, the incident in this case occurred in Illinois).  Plaintiffs respectfully submit, though, that the Seventh Circuit noted the standard as not only being consistent with Wisconsin law, but was a matter of "common sense" as well.  547 F.3d at 710.  Moreoever, in determining that the standard was applicable, the <u>Viilo</u> court also cited <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 210-11 (3d Cir. 2001).  The court there analyzed the circumstances under which it may be deemed reasonable for a police officer to shoot a domestic pet, and noted, among other things, that the state would have an interest in assuring that a dog running at large posed no danger to person or property of others, and that the interest is implicated "when there is reason to believe the pet poses an imminent danger.  In the latter case, the state's interest may even justify the extreme intrusion occasioned by the destruction of the pet in the owner's presence.  This does not mean, however, that the state may, consistent with the Fourth Amendment, destroy a pet when it poses no immediate danger, and the owner is looking on, obviously desirous of retaining custody."  <u>Brown</u>, 269 F.3d at 210-211.  The <u>Viilo</u> court also noted that the Ninth Circuit held, in 1998, "that it was clearly established . . . that an officer cannot kill a person's pet unnecessarily." 547 F.3d at 710.

The analysis of whether the shooting of the dog in this case was reasonable is an analysis under the federal Constitution, not under the laws of the state.  The <u>Viilo</u> observation that the standard is consistent with Wisconsin law does not obviate the supremacy of the constitutional standard over the state law - surely, for instance, if a state law purported to allow a police officer to shoot a dog for no reason, an officer enforcing that law could still be subject to a Fourth Amendment claim.  In any event, however, the standard expressed by <u>Viilo</u> is also the law in

Illinois - as Plaintiffs have previously pointed out in their pleadings in this case, the Illinois Animal Control Act, 510 ILCS 5/1 et seq., is the Illinois law applicable to dealing with dogs running at large and with vicious and dangerous animals, and that statute has virtually no provision allowing for a police officer to shoot a dog, even if it is deemed "vicious" or "dangerous" within the defined meanings of the statute.

Accordingly, Plaintiffs submit that the jury was insufficiently instructed concerning the meaning of "unreasonable" as that expression applies to the shooting of a domestic pet by a state actor, and requests a new trial for that reason.

### D.  Manifest Weight of the Evidence

"The Supreme Court has long recognized that a district court can grant a motion for a new trial if the verdict was against the weight of the evidence." Mejia v. Cook County, Illinois, 650 F.3d 631, 633 (7th Cir. 2011) (citations omitted). "In passing on a motion for a new trial, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial. . . .If, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence, a new trial is appropriate." Id. (citations and parenthetical quotations omitted).  As the Mejia court continued, "[a] motion for a new trial can be granted when the district court - in its own assessment of the evidence presented - believes that the verdict went against the manifest weight." 650 F.3d at 634 (citation omitted).

Plaintiffs respectfully submit that the jury's verdict of July 9 is against the manifest weight of the evidence.  As is more fully discussed in Plaintiffs' motion, the evidence before the jury was that, at the time Defendant shot Plaintiffs' dog, there was no immediate danger to anyone.  In fact, Defendant himself admitted that his concern was with potential future danger,

not immediate danger.   Further, the unrebutted evidence showed that numerous options were available to Defendant, and he even claims to have considered some of those, but rejected them without attempting them, and without any further discussion or analysis.   Finally, Defendant also admitted that the shooting of Plaintiffs' dog was a "mistake" - his counsel, in fact, highlighted that point during his closing argument.   The unrebutted evidence also showed, though, that the root cause of the "mistake" was Defendant's own impairment - his colorblind condition - that Defendant had failed to either make accommodations for, or to inform anyone else about (including those present at the scene, who could have assisted in identifying the correct dog). The unrebutted facts simply cannot support the jury's conclusion that Defendant acted reasonably in shooting Plaintiffs' dog, and Plaintiffs accordingly request that this Court grant a new trial pursuant to Rule 59(a)(1).

WHEREFORE, Plaintiffs, JACOB SAATHOFF, KATHY SAATHOFF and KELSEY MARKOU, request that this Court grant a new trial pursuant to Rule 59(a)(1). Further, Plaintiffs request that, pursuant to Rule 37(c)(1), this Court exclude Defendant's undisclosed evidence and enter further sanctions against Defendant for his discovery violation, and award to Plaintiffs all costs and fees incurred in the first trial of this matter.   Plaintiffs further request that this Court grant in their favor all such other and further relief as this Court deems just and appropriate.

Date: August 6, 2015                              Respectfully submitted,
                                                  JACOB SAATHOFF, KATHY SAATHOFF and
                                                  KELSEY MARKOU, Plaintiffs


                                                     /s/ Stephen F. Hedinger
                                                  Stephen F. Hedinger (#6198999)

Sorling Northrup
Attorneys for Plaintiffs
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone:  (217) 544-1144
Facsimile:  (217) 522-3173
E-Mail:  sfhedinger@sorlinglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2015, I electronically filed the foregoing Memorandum of Law in Suppport of Motion for New Trial and Imposition of Discovery Sanctions with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. David E. Krchak
Mr. Thomas Yu
Thomas, Mamer & Haughey, LLP
30 Main Street, Suite 500
P.O. Box 560
Champaign, IL 61824-0560

Frederick C. Stavins, City Attorney
City of Champaign
102 N. Neil Street
Champaign, IL 61820

/s/  Stephen F. Hedinger

Stephen F. Hedinger (#6198999)
Attorneys for Plaintiffs
Sorling Northrup
1 North Old State Capitol Plaza, Suite 200
P.O. Box 5131
Springfield, IL 62705
Telephone:  (217) 544-1144
Facsimile:  (217) 522-3173
E-Mail:  sfhedinger@sorlinglaw.com