IN THE UNITED STATE DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | No.  13-cv-02253 |
| OFFICER ANDRE DAVIS | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR NEW TRIAL
AND FOR IMPOSITION OF DISCOVERY SANCTIONS
WITH INCORPORATED MEMORANDUM OF LAW**

NOW COMES Defendant, Officer Andre Davis ("Defendant" of "Davis"), by one of his attorneys, Thomas Yu, and under Rule 59(a)(1) of the Federal Rules of Civil Procedure and Local Rule 7.1 of the U.S. District Court for the Central District of Illinois, moves for denial of the Motion for New Trial and for Imposition of Discovery Sanctions filed by Plaintiffs, Jacob Saathoff, Kathy Saathoff and Kelsey Markou ("Markou"), and in support states as follows:

### I.     INTRODUCTION

Plaintiffs filed suit against Defendant alleging that on the evening of 11/17/12, Davis' actions in responding to a dogfight taking place at Centennial Park in Champaign, Illinois resulted in the death of their dog, which was an unreasonable seizure of their property and a violation of their Fourth Amendment rights under the U.S. Constitution. A jury trial was held in this action on 7/7, 7/8 and 7/9/15 before Judge Bruce. After approximately one hour of deliberations, the jury returned a verdict in favor of Defendant and against Plaintiffs. Accordingly, an Order of Judgment was entered on 7/9/15. (Doc.105). Plaintiffs have now filed their Motion for New Trial and for Imposition of Discovery Sanctions (Doc.108, 109) alleging, among other things, that:

1

(1) Evidentiary rulings by the court were made in error and were prejudicial;
(2) Defendant violated the rules of discovery;
(3) Certain jury instructions were improperly excluded; and
(4) The jury verdict was against the manifest weight of the evidence.

Defendant denies these allegations and affirmatively states that Plaintiffs are not entitled to a new trial or imposition of sanctions for the reasons set forth herein.

## II.   LEGAL STANDARD

The court may grant a new trial if the movant shows that there is good reason to grant a new trial. Fed. R. Civ. P. 59(a)(1). For example, an unfair evidentiary ruling, an erroneous jury instruction, or a verdict against the manifest weight of the evidence may be sufficient grounds for a new trial. *Kippelz v. Ford Motor Co.*, 750 F. Supp.2d 938, 942 (N.D.Ill. 2010), quoting *Westchester Fire Ins. Co. v. General Star Ident*. Co., 183 F.3d. 578, 582 (7th Cir. 1999). However, a court will only grant a new trial if the alleged evidentiary errors "substantially sway[ed]" the jury in reaching its verdict. Barber v. City of Chicago, 725 F.3d 702, 715 (7th Cir. 2013). In addition, the court may properly exclude evidence introduced at trial that has not previously been disclosed during discovery. *Holiday Inns Inc. v. Robertshaw Controls Co.*, 560 F.2d 856 (7th Cir. 1977).

The evidence in the record demonstrates that the evidentiary rulings were proper, evidence introduced at trial was otherwise previously disclosed during discovery and the verdict was not against the manifest weight of the evidence. Therefore Plaintiffs are not entitled to a new trial or imposition of sanctions against Defendant.

## III.   ARGUMENT

### A. Defendant's Testimonial Evidence Was Properly Admitted

After Plaintiffs' direct examination of Davis at trial in this matter, Plaintiffs made an oral motion for sanctions against Defendant. (Ex. A. Trial Tr. p.249-252). The grounds for the motion

2

were that Davis' testimony at trial went beyond the scope of Defendant's written discovery disclosures and thus came as an unfair surprise and resulted in prejudice to Plaintiffs. (Ex. A. p.249-252). Defense counsel responded that all of the topics of Davis' trial testimony were previously made known and available to Plaintiffs during routine pre-trial discovery. (Ex. A. p.252-253). In particular, they were disclosed during Davis' deposition. This court agreed and ruled as follows on Plaintiffs' oral motion:

> Number one, it is not the defendant's obligation, nor is it yours, Mr. Hedinger, vice versa, that either party disclose every single thing that could possibly arise. I'm sure some of the testimony of some of your witnesses, perhaps including your clients, they brought up matters that were not mentioned during their depositions. That doesn't mean it has to be sanctionable. A deposition doesn't cover every single possible question and answer. This isn't as though we're conducting a stage play where people have to stick to their lines. Everybody in here is human. Everybody in here is testifying to the best of their ability. If there are matters that were not fully explored in depositions, so be it. So I don't find that there is any need for sanctions. I think this is standard.

(Ex. A. p.253-255)

Similarly, in their post-trial motion, Plaintiffs again contend that certain contents of Davis' trial testimony were not previously disclosed. More specifically, they point to the portion of testimony where Davis testified that he heard and relied upon the dispatch broadcast over the radio that "one of the dogs was almost dead." (Ex. A. p.211-212)

1. **Dispatch Communications**

The evidence in the record unequivocally supports that the contents of the subject dispatch communications was properly disclosed as part of routine discovery in this matter. Specifically, a copy of the dispatch log with entries of the radio communications from the dispatcher was disclosed to Plaintiffs. In fact, a copy of the dispatch log was used by Plaintiffs' counsel, Mr. Hedinger, as Exhibit Number 2 in Sgt. Crane's deposition, which took place on

2/19/15. (Ex. B. Crane Tr. Ex. No. 2). Along those lines, Mr. Hedinger posed detailed questions, which span over 12 pages of Sgt. Crane's deposition transcript regarding the particular contents and entries on the subject dispatch log. (Ex. B. Tr. p.34-36, 68-78). Significantly, the deposition questioning, includes the following by Plaintiffs' counsel:

> Q: Okay. Well, at the time entry of 17:24:05, there's a Priority 4, 2 and then a comment and it says, "Female walking a dog and a pit bull is attacking her dog. **The dog is almost dead**." Do you see where I am reading there?

(Ex. B. Tr. p.71-72)(emphasis added). Clearly, Plaintiffs had possession of the dispatch log during discovery and were fully aware of its contents, including the information that was relayed by the dispatcher over the radio that, "The dog is almost dead."

Subsequently, on 2/26/15 (7 days after Crane's deposition), Mr. Hedinger conducted a 3-hour deposition examination of Davis. (Ex. C. Davis Dep. Tr. p.1-127). As expected, Davis was questioned regarding the subject dispatch communications. (Ex. C. p.77, 81-82, 84). Significantly, however, Mr. Hedinger did not use a copy of the dispatch ticket as an exhibit during Davis' deposition. Instead, he used copies of other documents, including Davis' resume, police department internal memos, photos, and police reports. (Ex. C. Ex. No.1-4). Whether the failure to show Davis a copy of the dispatch log and ask him specific questions regarding it was a strategic decision or simply an oversight is unclear. What is crystal clear, however, is that the evidence of the contents of the dispatch log were in the possession of Plaintiffs during pre-trial discovery.

Interestingly, Plaintiffs developed a trial strategy to focus heavily on the amount of time Davis was on the scene before using deadly force in order to convey, suggest and argue to the jury that Davis acted quickly, rashly and thus unreasonably. Consequently, more of the questions and answers during Davis' trial testimony, as opposed to his deposition testimony, highlighted

information that Davis took into account in determining that the subject incident was an emergency situation in which time was of the essence. As a result, the contents of the dispatch log and the emergency nature of the dispatch emerged as an important issue at trial. The fact that Plaintiffs did not realize the importance of the dispatch log during pre-trial discovery does not now entitle them to a new trial. *U.S. v. Nero*, 733 F.2d 1197 (7th Cir. 1984)(Where defendant was not entitled to new trial based on alleged grounds of newly discovered evidence because defendant was in possession of the evidence for more than 19 months prior to trial.)

Furthermore, at trial, Plaintiffs were given the opportunity and did attack the credibility of Davis' alleged "new" testimony regarding his reliance upon "The dog is almost dead" portion of the dispatch log. In fact, Plaintiffs' counsel attempted to cast doubt on Davis' credibility by asking him why he did not mention this portion of the dispatch communications during his deposition. (Ex. A. p.211). Plaintiffs then proceeded to attempted to impeach Davis with the contents of his police report. Specifically, Davis admitted that there was no specific mention of this portion of the dispatch communications in his police report. (Ex. A. p.213-214). In addition to the fact that the dispatch log was disclosed during pre-trial discovery, Plaintiffs were also allowed to attempt to impeach the credibility of the alleged "new" testimony. As a result, there was no error committed by the court or prejudice suffered by Plaintiffs due to the admission into the record of this portion of Davis' testimony.

**2. Shift Change, OC Spray And Emergency Situation**

Plaintiffs contend they were given no advance notice or opportunity to challenge Davis' trial testimony with respect to:

- The reduced number of officers being available for backup because the time of the incident coincided with a shift change at the police department;
- The use of OC spray may have created a hazard to nearby persons; and
- Time was of the essence at the scene.

(Doc. 108, ¶17).

Contrary to Plaintiff's claims, these topics had all "otherwise been made known to the other parties during the discovery process" in compliance with the federal rules of discovery. Fed. R. Civ. P. 26(e)(1)(a).

The topics of shift change and OC spray were covered during depositions, however, they were not fully developed by the questioning of Plaintiffs' counsel. For example, during depositions the following topics were discussed:

- Shift change (Ex. C. p.37-38, Ex. B. p.56); and
- OC spray (Ex. B. p.87, 89; Ex. C. p. 48).

These are examples of additional instances where Plaintiffs had the opportunity to explore a topic more fully during depositions and simply failed to do so.

Plaintiffs also had advance notice through Davis' deposition testimony that he relied upon numerous factors to determine that this was an emergency situation, including, among other things, the following:

- Officers were dispatched to a vicious pit bull attack (Ex. C. p. 84);
- He was frantically waved down by a group of people (Ex. C. p. 82);
- There were bystanders (Ex. C. p. 90); and
- It appeared that one dog was mauling the other (Ex. C. p. 91-92).

Plaintiffs also had advance notice through the pleadings in this action that Davis considered the protection of the safety of himself, bystanders and Markou's dog as compelling factors which necessitated a swift response by him at the scene of the dogfight. Along those lines, Defendant argued repeatedly in his Motion for Summary Judgment that based on the totality of circumstances (including his interest in protecting the safety of himself, bystanders and Markou's dog) he had to make "spur-of-the-moment assessments and decisions" (Doc.43, p.9, 10). Moreover, the courts recognize that "police officers are often forced to make split

second judgments in circumstances that are tense, uncertain and rapidly evolving." *Phillips v. Community Ins. Corp.*, 678 F.3d 513 (7th Cir. 2012). Thus, Plaintiffs post-trial claims that Davis' trial testimony came as a complete surprise, which revealed improper behavior, bad faith and an intention to sandbag Plaintiffs is meritless. (Doc.108, ¶16).

Lastly, Plaintiffs argue that had they known that Davis would testify at trial in the manner that he did, they would have taken other action during pre-trial discovery. This argument falls on deaf ears because: (1) Plaintiffs already had in their possession a copy of the actual dispatch log during routine pre-trial discovery; and (2) Plaintiffs had advance notice through deposition testimony and pleadings that Davis believed that he needed to act quickly at the scene based on numerous factors and considerations.

### B. Defendant's Disclosures Complied with the Rules of Discovery

Plaintiffs contend that Defendant's discovery disclosures (including Answers to Interrogatories) were incomplete and violated federal discovery rules because they did not include a fully nuanced narrative written description of the subject shooting and legal justification for same. (Doc.108, 109). Moreover, Plaintiffs allege that Davis' testimony at trial was "new" as it "presented Davis as experienced and trained, calmly and rationally contemplating the situation and the circumstances and reaching a logical decision for a course of conduct – none of which had ever been expressed to Plaintiffs in any prior discovery response in this case, although Plaintiff had expressly asked." (Doc.108, ¶15). Substantially similar allegations regarding discovery violations were made by Plaintiffs prior to trial, which were summarily denied by this court. (Doc.56, 58, 66).

Along those lines, Plaintiffs' repeated attempts to revive frivolous arguments of alleged discovery violations are unfounded. A party is not required to supplement their disclosures if the

7

evidence had "otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(a). The federal rules applicable to discovery do not require a party to supplement or correct its discovery if the "new" information was provided at deposition - as they were in this case. See *Gutierrez v. AT&T Broadband, LLC,* 382 F.3d 725, 731 (7th Cir. 2004).

Davis' deposition testimony provided Plaintiffs advance notice of the options that he considered before using deadly force. The fact that Plaintiffs object that Davis' trial testimony "presented Davis as experienced and trained, calmly and rationally contemplating the situation and the circumstances and reaching a logical decision for a course of conduct- none of which was ever expressed" is a frivolous objection based upon Plaintiffs' miscalculations and misevaluations in trial strategy. (Doc.108, ¶15). Credibility determinations based on intelligence, the manner while testifying and the reasonableness of the testimony in light of all the evidence are all considerations that the jury is routinely permitted to consider,  including pursuant to this Court's Jury Instruction No. 10. (7th Cir. Pattern 1.13 (modified)(Agreed))(Doc.97, p.11).

Plaintiffs cite a string of federal cases to support their argument that all of the allegedly "new" trial testimony from Davis be excluded. These cases are all distinguishable from the case at bar because no portion of Davis's trial testimony was not otherwise disclosed to Plaintiffs in pre-trial discovery. For example, in *Holiday Inns*, *Fortina*, *Klonoski*, and *Iowa- Mo Enterprises*, evidence was introduced at trial that had not been disclosed during discovery, thus the court properly excluded the evidence. *Holiday Inns Inc. v. Robertshaw Controls Co.*, 560 F.2d 856 (7th Cir. 1977); *Fortina v. Quasar Co.*, 950 F.2d 389 (7th Cir. 1991); *Klonoski v. Mahlab*, 156 F.3d 255 (lst Cir. 1998); *Iowa-Mo Enterprises. Inc. v. Avren*, 639 F.2d 443 (8th Cir. 1981).

In *Harris*, defendant previously refused to testify based upon his invocation of his 5th Amendment rights, then at trial testified, thus the court excluded the testimony. *Harris v. City of*

*Chicago*, 266 F.3d 750 (7th Cir. 2001). In *Licciardi*, at trial an expert's testimony was substantially different than the expert report that was previously produced in discovery, thus the court properly excluded the expert's testimony. *Licciardi v. TIG Insurance Group*, 140 F.3d 357 (1st Cir. 1998). These cases are distinguishable from the case at bar because Davis' testimony at trial was based on the contents of his deposition testimony and information otherwise disclosed to Plaintiffs during pre-trial discovery.

### C. The Jury Instructions Were Proper

This court has substantial discretion in formulating jury instructions, "so long as they represent a complete and correct statement of the law." *Krippelz v. Ford Motor Co.*, 750 F.Supp.2d 938, 942 (N.D.Ill. 2010). Plaintiff contends that this court's denial of Plaintiffs' proposed modification to jury instruction number 20 constitutes error. Specifically, Plaintiffs proposed that the definition of "Unreasonable" include the following:

> Use of deadly force against a household pet is reasonable only if the pet poses no immediate danger and the use of force is unavoidable.

(Doc.90-4)

At the jury instruction conference, Plaintiffs repeated their request to supplement jury instruction number 20 with language pursuant to the *Viilo* case that "it is unreasonable to shoot a dog unless there was either endangerment or other circumstances." *Viilo v. Eyre*, 547, F.3d 707, 710 (7th Cir. 2008);(Trial Tr. p.354). This court ruled that the *Viilo* case does not apply because it involved the execution of a search warrant and whether the officers needed to shoot a dog to protect themselves in the execution of a search warrant. *Id.;* (Trial Tr. p.355). Further, the *Viilo* case did not apply because it was an application of Wisconsin state law, as opposed to Illinois law in the case at bar. *Id.*;(Trial Tr. p.355).

Plaintiffs argue that the standard applicable in Wisconsin is applicable in Illinois because the Animal Control Act, 510 Ill. Comp. Stat. 5/1 *et seq.*, similarly does not permit a police officer to shoot a dog. (Doc.108, ¶22). First, the Animal Control Act only applies to the owner of the dog and Davis was not an owner of the subject dog. 510 Ill. Comp. Stat. 5/16. Second, the Animal Control Act does not apply because police officers are immune from any potential liability for damage or loss of property pursuant to the Local Governmental and Governmental Employees Tort Immunity Act. 745 Ill. Comp. Stat. 10/1-101 *et seq*. In Illinois a pet dog "is an item of personal property." *Anzalone v. Kragness*, 356 Ill.App.3d 365, 369 (2005); *Leith v. Frost*, 387 Ill.App.3d 430 (2008). The only exception to the Tort Immunity Act is if the act or omission in the execution or enforcement of any law constitutes willful and wanton conduct. 745 Ill. Comp. Stat. 10/2–202. The court has already ruled that Davis' shooting of Plaintiffs' dog cannot be considered "willful and wanton conduct." (Doc.65, p.24)

The *Viilo* case is also distinguishable based on the facts of the case. *Viilo v. Eyre*, 547, F.3d 707 (7th Cir. 2008). In *Viilo* there was no dogfight incident. *Id*. The officers were executing a search warrant and in the course of doing so, an officer shot a dog at the premises (there were disputed issues of fact as to whether the dog displayed any dangerous or violent propensities). *Id.,* at 708. The court in *Viilo* ruled as it did based on the unique set of facts in that case. *Id*. To the contrary, in this action, Davis' decision to shoot the dog was made under the totality of additional, different and unique circumstances, which impacted his decision-making and whether or not his actions were reasonable in light of them. As a result, modifying the jury instructions in accordance with *Viilo* would be improper. *Id.*

D. **The Jury Verdict Was Not Against the Manifest Weight of the Evidence**

In considering whether the jury verdict is against the manifest weight of the evidence, a court analyzes the "general sense of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County, Illinois*, 650 F.3d 631, 633 (7th Cir. 2011).

Oftentimes, the manner in which a witness testifies bolsters the credibility of the substance of his testimony. Interestingly, Plaintiffs concede that Davis' trial testimony "presented Davis as experienced and trained, calmly and rationally contemplating the situation and the circumstances and reaching a logical decision for a course of conduct." (Doc.108, ¶15). Defendant agrees.

First, Davis testified that his assessment of the totality of the circumstances led him to believe that this was an emergency situation in which he needed to act quickly in order to protect everyone at the scene and prevent one of the dogs from being mauled to death. (Ex. A. p. 240-247). Further, Davis testified that pursuant to his training and experience he was going through his "mental checklist" of all of his options and alternatives before determining that he needed to shoot the dog that he believed was mauling the other dog. (Ex. A. p. 240-247)

Second, Davis believed the other dog belonged to Markou for a number of factors other than his colorblindness. For example, he testified that:

- it was dark outside;
- both dogs appeared dark;
- there were shadows cast by the spotlight onto the dogs;
- one dog was bigger and on top of the other;
- the dog on the bottom was hard to see because the dog on top was on top of it and casting a shadow;
- the dog on top was mauling the other dog.

(Ex. A. p. 373-375).

11

Thus, Davis' colorblindness was not the "root cause" of the mis-identification as alleged by Plaintiffs. (Doc.108, ¶27). In any case, the weight of all of the other evidence in the record supports the jury's conclusion that Davis acted reasonably under the totality of the circumstances in shooting Plaintiffs' dog.

Third, Davis testified that at the scene he went through his mental checklist one-by-one and considered all of the less deadly options before determining that it was necessary to discharge his weapon at the subject dog, which includes, among other things:

- Calling for back-up: Reduced police staff available for backup due to shift change;
- Animal Control: Response would take 15 minutes;
- Asp (baton): Risk of danger to himself, bystanders and the dogs;
- Catchpole: Not in his possession;
- OC spray: Ineffective based on experience and risk of danger to himself and bystanders; and
- Fire extinguisher: Did not consider.

(Ex. A. p. 240-246)

In conclusion, the undisputed evidence in the record shows that the evidentiary rulings were proper, the jury instructions were proper and the verdict was not against the manifest weight of the evidence.

## IV.    CONCLUSION

For the foregoing reasons, Defendants move this court to deny Plaintiffs' motion for new trial, motion for discovery sanctions and motion for oral argument, and for such other relief as it deems just and proper.

                                  Respectfully submitted,
                                  Defendant Andre Davis

David Krchak                             By: s/Thomas S. Yu_____
Thomas Yu                                Thomas S. Yu, Bar No. 6273289
THOMAS, MAMER & HAUGHEY, LLP
30 Main St., Suite 500
Champaign, IL  61824-0560
Phone: (217) 351-1500

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2015, I electronically filed the foregoing Response to Motion for New Trial and for Imposition of Discovery Sanctions with the Clerk of the Court using the CM/ECF system which will send notification to the attorneys of record.

/s/ Thomas Yu

Thomas S. Yu, Bar No. 6273289
THOMAS, MAMER & HAUGHEY, LLP

30 Main St., P.O. Box 560
Champaign, IL 61824-0560
Ph: (217) 351-1500
tyu@tmh-law.com