### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| JACOB SAATHOFF, KATHY SAATHOFF, and KELSEY MARKOU, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 13-CV-2253 |
| ) | |
| CITY OF CHAMPAIGN, ILLINOIS, and OFFICER ANDRE DAVIS, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This case is before the court for ruling on the Motion for New Trial and Imposition of Discovery Sanctions (#108) and the Motion for Leave to File Reply Instanter (#113) filed by Plaintiffs, Jacob Saathoff, Kathy Saathoff and Kelsey Markou. This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Plaintiffs' Motions (#108, #113) are DENIED.

## BACKGROUND

A jury trial was held in this case from July 7 to July 9, 2015. Plaintiffs claimed that Defendant, Andre Davis, violated their constitutional rights when he shot their dog, a chocolate-colored Labrador retriever named "Dog." At trial, Plaintiffs presented lengthy testimony about how they were affected by the loss of their dog before they presented any evidence regarding the incident which resulted in the dog being shot. Tyrone Jones, who was a bystander at the scene, was the first witness to testify about

the incident, which occurred on November 17, 2012. Jones testified that Plaintiff Markou was walking a brown lab when a stray pit bull approached the brown lab, leading to a dog fight. Jones described the pit bull as gray and white. Jones testified that the brown dog was taller, but the two dogs were similar in weight. He testified that the dog fight was "vicious." Jones testified that he told Markou to let go of the leash to allow the dog to protect itself. Jones, who testified that he had "a lifetime of experience" in "dealing with dogs," described his efforts to break up the dog fight. Jones testified that he "kicked, punched, got a tree branch, tried to hit them with the tree branch." Jones testified that these efforts "did nothing to stop them from fighting." Jones testified that Markou was "hysterical" and they "called the law" by having another bystander call 911. Jones testified that Defendant arrived and they explained to Defendant what was going on, that the brown dog was in danger and the gray and white dog was the stray dog. Jones testified that Defendant ended up shooting Markou's dog.

Plaintiffs then called Defendant to testify regarding the incident. Defendant testified that he had witnessed two prior dog fights while he was a police officer. During the first dog fight, police officers tried OC spray, beating the dogs to separate them and the department's catch pole, none of which worked to break up the dog fight. One of the officers then called for permission and shot one of the dogs. During the other dog fight, which involved two pit bulls fighting in a bedroom, animal control was called and stopped the fight. Defendant was next asked about his color blindness and

explained that he is unable to distinguish between "certain shades of greens and reds and browns and grays" and the condition gets worse at night.

Defendant testified that, on November 17, 2012, at approximately 5:30 in the evening, he was on duty and received a call about a residential alarm.  As he was driving to that call, he heard a dispatch come through concerning a vicious put bull attacking another dog.  Defendant testified that the dispatch said that one of the dogs was almost dead.  Defendant testified that, as he drove, he saw a group of five people, two adults and three juveniles, who were "frantically waving him down."  He stopped his squad car and reported to dispatch that he was responding to the call regarding the dog fight.  Defendant turned his spotlight and directed it at the dog fight.  Markou told him that her dog was a brown or chocolate lab and it had a leash and was the one being attacked.  Defendant testified that he made a half circle around the dogs to assess which dog was the right dog and then came back to where he started.  At one point, he saw that the dog on the bottom had a white belly.  Defendant stated that he saw that one dog was on top and his head was angled down and he could only see the other dog from the midsection onto the back.  Defendant testified that he then went through a checklist of things he should be doing.  Defendant testified that he came to the conclusion that, if he was going to save Markou's dog, he was going to have to shoot the aggressive dog.  Defendant fired once and nothing happened.  He fired a second time and the smaller dog, the pit bull, disengaged at that point.  Defendant testified that Markou screamed, "You shot my dog."  Defendant testified that he then followed the

3

pit bull and fired four more times at the pit bull.  Defendant agreed that the entire incident took about two minutes.

Plaintiffs' counsel asked Defendant why he did not testify at his deposition that dispatch said one of the dogs was almost dead.  Defendant testified that he did not recall that particular portion of the dispatch during the deposition.  Defendant also stated that he did not include that fact in his police report regarding the incident.

During examination by his counsel, Defendant testified that he looked at the dispatch ticket after his deposition and before his testimony at trial, during a meeting with his counsel.  Defendant testified that the dispatch ticket refreshed his recollection regarding what he heard from dispatch.  Defendant also testified that, at the scene, Markou was hard to understand because she was very emotional and, also, other people at the scene were feeding him information.  In addition, following his counsel's questioning, Defendant provided more detail about the mental checklist he went through at the scene.  Defendant provided this testimony over Plaintiffs' objection. Defendant stated that, because of his prior experience, he knew that pit bulls generally fight until the end and "there's no happy ending to a pit bull fight based on my prior two experiences."  Defendant testified that, in considering the options that were immediately available to him, he was thinking about manpower issues and the fact that, at that time at night, they were in the middle of shift change so there were only two officers available, himself and another officer who was actually dispatched to the scene. Defendant testified that he also considered the fact that animal control was not within

their normal operating hours and would have to be paged.  Defendant testified that this

normally took about 15 minutes and he did not know if Markou's dog had 15 minutes

to continue to fight.  Defendant also testified that he considered using his collapsible

ASP (apparently something similar to a baton or nightstick) but was concerned about

what could happen if he was able to separate the dogs and whether the pit bull would

turn on the people immediately in the area, including himself and Markou.  Defendant

testified that he considered using OC spray but, from his experience, OC spray does not

work on dogs engaged in fights and, in addition, OC spray develops a cloud and can

affect whoever's in the immediate vicinity.  Defendant testified that using his fire

extinguisher never came to his mind.  Defendant testified that he decided that perhaps

shooting the aggressive dog would be the right answer.  Defendant testified that, after

shooting, he was in profound disbelief because he could not believe he shot the wrong

dog.

During a break in Defendant's testimony, Plaintiffs asked for appropriate

sanctions based on Defendant's testimony regarding the shift change and the possible

detrimental effects of OC spray, arguing that these issues were not disclosed in

discovery.  This court denied the request for sanctions, stating:

> It does not surprise the court that there are matters in a
>
> deposition that are, in the course of human nature, are not
>
> thoroughly expanded upon but later on become more important.
>
> Frankly, this isn't my first rodeo, nor is it yours, Mr. Hedinger, and

sometimes in a deposition a single sentence during the trial - - during testimony you've blown up into hours of testimony.  I don't find that there is any surprise. . . . .

Number one, it is not the defendant's obligation, nor is it yours, Mr. Hedinger, vice versa, that either party disclose every single thing that could possibly arise.  I'm sure some of the testimony of some of your witnesses, perhaps including your clients, they brought up matters that were not mentioned during their depositions.  That doesn't mean it has to be sanctionable.

A deposition doesn't cover every single possible question and answer.  This isn't as though we're conducting a stage play where people have to stick to their lines.  Everybody in here is human.  Everybody in here is testifying to the best of their ability.  If there are matters that were not fully explored in depositions, so be it.  So I don't find that there is any need for sanctions.  I think this is standard.

The second comment I'm going to make is, of course, Mr. Hedinger, as you've already demonstrated, you know how to impeach people.  You've already done it very well several times.  So you can freely point out that some of these things weren't mentioned during the deposition.

6

Plaintiff Kelsey Markou, the only Plaintiff who was present at the time of the incident, was Plaintiffs' last witness. Markou described how the pit bull approached her dog and the dog fight started. She testified that Jones came over and they started kicking the pit bull. Jones told her to drop her dog's leash, so she did. She stated that they decided to call 911 and somebody made the call. Markou testified that she "was freaked out crying." Markou testified that when Defendant arrived she told him that her dog was "[t]he brown chocolate lab with the two collars and a leash." She stated that those were her exact words. She said that Defendant then walked past her and stated firing. Markou testified that the dogs were not a threat to her or anybody else and that it was pretty light outside. She testified that, when she made the decision to call the police, she expected that the dogs would be separated, she did not expect there to be any shooting at all.

Following Defendant's presentation of evidence and closing arguments, the jury began its deliberations at 10:45 a.m. on July 9, 2015. The jury reached its verdict at 11:51 a.m. The jury found in favor of Defendant and against Plaintiffs. Judgment (#105) was entered in favor of Defendant the same day.

## PENDING MOTIONS

On August 6, 2015, Plaintiffs filed a Motion for New Trial and for Imposition of Discovery Sanctions (#108), with attached exhibits, and a Memorandum of Law in Support (#109). Plaintiffs argued that, pursuant to Rule 59(a)(1) of the Federal Rules of Civil Procedure, they were entitled to a new trial because evidentiary rulings by this

court were made in error and severely prejudiced Plaintiffs.  In addition, Plaintiffs

asked this court to impose appropriate sanctions against Defendant as a result of that

evidence.  Plaintiffs also argued that they were entitled to a new trial because this court

did not give a jury instruction requested by Plaintiffs and because the jury verdict was

against the manifest weight of the evidence.  On August 24, 2015, Defendant filed his

Response (#110), with attached exhibits including a transcript from the jury trial.

Defendant argued that Plaintiffs are not entitled to a new trial or discovery sanctions.

MOTION TO FILE REPLY INSTANTER

On August 31, 2015, Plaintiffs filed a Motion for Leave to File a Reply (#111).

Plaintiffs recognized that, pursuant to Rule 7.1(B)(3) of the Local Rules of the Central

District of Illinois, no reply to a motion response is allowed.  Plaintiffs asked this court

to allow them to file a Reply because their post-trial motion raised extremely important

issues and Defendant's response raised several issues that "are new and not previously

addressed."  Plaintiffs asked this court to allow them until September 11, 2015, to file

their Reply.  On September 1, 2015, this court entered a text order and granted Plaintiffs'

Motion (#111).  Plaintiffs' Reply was due on September 11, 2015.  On September 11,

Plaintiffs filed a Motion for Short Extension to File Reply (#112).  Plaintiffs stated that

the air conditioner at Plaintiffs' counsel's office malfunctioned, resulting in exceedingly

high temperatures within counsel's office.  Plaintiffs stated that the high temperatures

resulted in the malfunction and destruction of the computer servers in their counsel's

office.  Plaintiffs stated that they needed a short extension, to September 14, 2015, to

8

submit their Reply.  This court granted this request.  However, Plaintiffs did not file their Reply on September 14, 2015.  Instead, on September 15, 2015, Plaintiffs filed a Motion for Leave to File Reply Instanter (#113).  Plaintiffs stated that the "process of reviewing the record, conducting research, and drafting and revising the reply took somewhat longer than Plaintiffs anticipated."  Plaintiffs also filed their Reply (#114), with attached Exhibits.

Defendant filed a Response to Motion for Leave to File Reply Instanter (#115) on September 15, 2015.  Defendant pointed out that this was not the first time in this litigation that Plaintiffs had asked for an extension of time and then, missing the extended deadline, filed a motion for leave to file instanter.  Defendant argued that "Plaintiffs' repeated pattern of requesting extensions of time and late filings [is] unreasonable."  Defendant contended that Plaintiffs had not shown "good cause" for a subsequent extension of time.

This court agrees with Defendant.  This court generously allowed Plaintiffs to file a Reply, even though replies are not allowed by the Local Rules, and gave Plaintiffs ample time to file their Reply.  This court also gave Plaintiffs the extension of time they requested when there were difficulties at Plaintiffs' counsel's office.  This court has to agree with Defendant that the fact that producing the Reply "took somewhat longer than Plaintiffs anticipated" is not an adequate reason for yet another extension.  It is not uncommon for the preparation of documents to take longer than anticipated.  If that were enough to show "good cause," deadlines would rarely be met and would not

mean anything.   Accordingly, for all the reasons stated, Plaintiffs' Motion for Leave to

File Reply Instanter (#113) is DENIED.[1]

### IMPROPER EVIDENCE AND DISCOVERY VIOLATIONS

Plaintiffs have argued that this court erred in allowing Defendant to testify that

the dispatch call said that the dog being attacked by a pit bull was almost dead and in

allowing Defendant to testify regarding the "mental checklist" he went through before

deciding to shoot the dog.  Plaintiffs argued that this evidence was not disclosed during

discovery and should have been barred.

This court has already commented, both before and during trial, regarding

Plaintiffs' unrealistic view of discovery.  In its pretrial rulings, this court rejected

Plaintiffs' arguments that only evidence specifically disclosed by Defendant in response

to written discovery requests could be presented by Defendant at trial.  Plaintiffs had

argued that nothing else could be presented by Defendant because he did not

supplement the disclosures.  In its Order (#65) ruling on the parties' Motions for

Summary Judgment, this court concluded that the supplemental disclosures Plaintiffs

argued were necessary were absolutely not required because the evidence was

"otherwise made known to the other parties during the discovery process."  Fed. R. Civ.

P. 26(e)(1)(A).  In its Order (#66) ruling on the parties' Motions in Limine, this court

again concluded that Defendant did not need to supplement his disclosures if the

---

[1] This court notes that it has reviewed Plaintiffs' late-filed Reply (#114).  This review did not affect this court's conclusions regarding the issues raised by Plaintiffs in their post-trial motion.

evidence had "'otherwise been made known to the other parties during the discovery process,' pursuant to Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure."  This court therefore agreed with Defendant that "to the extent that the evidence he intends to present at trial was disclosed during the discovery process and is relevant, the evidence will not be barred."  (#66, p. 8).  And, during trial, this court explained that discovery responses are not a script which must be followed by witnesses verbatim at trial.

Nonetheless, Plaintiffs have argued at length that, because Defendant responded to Plaintiffs' interrogatories by stating that his recollection of the incident at issue was contained in his police report, he should not have been able to present any testimony which was not included in the police report because he did not supplement his answers to interrogatories.  Plaintiffs argued that Defendant's testimony on these subjects constituted a complete and unexpected surprise to Plaintiffs during the middle of trial.  Plaintiffs argued that, if they had received timely notification of Defendant's revised testimony, they "would have obtained and offered a tape recording or a transcript of the actual dispatch (if available), or at least the testimony of other officers who heard the dispatch concerning their recollection of what was said, or even the testimony of the dispatcher herself."  Plaintiffs also argued that they would have presented evidence to contradict Defendant's assertion that the time of the incident, around the time of a shift change, meant that no backup was available and no one could bring the catchpole.  Plaintiffs stated that they certainly would have asked Sergeant Matthew Crane about the availability of the officers and the availability of a catchpole.  Plaintiffs argued that

this was not possible because Defendant presented his testimony only after Plaintiffs had presented Sergeant Crane's testimony and allowed him to depart. Plaintiffs also argued that they would certainly have been able to counter Defendant's testimony that the use of OC spray would have created a hazard to nearby persons. Plaintiffs asked this court to order a new trial and exclude the new evidence and also asked that Defendant be ordered to pay Plaintiffs' fees and costs incurred during the first trial of this case.

In his Response (#110), Defendant stated that the evidence in the record unequivocally supports that the contents of the dispatch communications was properly disclosed as part of routine discovery in this matter. Defendant stated that a copy of the dispatch log with entries of the radio communications from the dispatcher was disclosed to Plaintiffs. Defendant stated that, in fact, a copy of the dispatch log was used by Plaintiffs' counsel as Exhibit No. 2 during the deposition of Sergeant Matthew Crane, which took place on February 19, 2015. Defendant attached a copy of the transcript of Crane's deposition which includes the following question by Plaintiffs' counsel:

> Q:    Okay. Well, at the time entry of 17:24:05, there's a Priority 4, 2
>         and then a comment and it says, "Female walking a dog and a
>         pit bull is attacking her dog. The dog is almost dead." Do
>         you see where I am reading there?

Defendant argued that, clearly, Plaintiffs had possession of the dispatch log during

discovery and were fully aware of its contents, including the information that was relayed by the dispatcher over the radio that, "The dog is almost dead." Defendant noted that, seven days after Crane's deposition, Plaintiffs' counsel took Defendant's deposition. Defendant was questioned about the dispatch communications but Plaintiffs' counsel did not use a copy of the dispatch ticket in questioning Defendant. Defendant argued that Plaintiffs are not entitled to a new trial based upon the presentation of evidence which was in their possession long before trial.

Defendant also pointed out that Plaintiffs were given the opportunity and did attack the credibility of Defendant's "new" testimony regarding his reliance upon "[t]he dog is almost dead" portion of the dispatch log. Plaintiffs' counsel asked Defendant why he did not mention this portion of the dispatch communication during his deposition. Plaintiffs also impeached Defendant with the contents of his police report, which stated only that he heard a dispatch call regarding a vicious pit bull dog. Defendant argued that, because the dispatch log was disclosed during pre-trial discovery and because Plaintiffs were allowed to impeach the credibility of the alleged "new" testimony, there was no error committed by the court in allowing the testimony or prejudice suffered by Plaintiffs.

Defendant also argued that the topics of the shift change and OC spray were covered during depositions taken in this case but were not fully developed during questioning by Plaintiffs' counsel. Defendant stated that Plaintiffs had advance notice through Defendant's deposition testimony that officers were dispatched to a vicious pit

bull attack, Defendant was frantically waved down by a group of people, there were bystanders, and it appeared that one dog was mauling the other. Defendant argued that Plaintiffs had advance notice, through Defendant's arguments in his Motion for Summary Judgment, that Defendant considered the protection of the safety of himself, bystanders and Plaintiffs' dog as compelling factors which necessitated a swift response by him at the scene of the dogfight. Defendant contended that Plaintiffs' post-trial claims that Defendant's trial testimony came as a complete surprise, which revealed improper behavior, bad faith and an intention to sandbag Plaintiffs, must be considered meritless. Defendant also argued that the case law relied upon by Plaintiffs does not support a finding that the challenged testimony from Defendant should have been excluded.

This court agrees with Defendant that the Seventh Circuit cases cited by Plaintiffs are not on point.[2] In *Harris v. City of Chicago*, 266 F.3d 750 (7th Cir. 2001), the defendant, during discovery, refused to respond to a number of discovery requests, instead invoking his Fifth Amendment privilege against self-incrimination. *Harris*, 266 F.3d at 751. At trial, however, the defendant waived his Fifth Amendment privilege and answered all questions posed to him on direct and cross-examination. *Id.* at 753. Over the objection of the plaintiff's counsel, the district court barred the plaintiff from

---

[2] This court has also reviewed the cases cited from other jurisdictions and does not find them applicable or persuasive. This court agrees with Defendant that the cases are distinguishable because Defendant's testimony at trial was based on the contents of his deposition testimony and information otherwise disclosed to Plaintiffs during pre-trial discovery.

impeaching or cross-examining the defendant with his prior silence.  *Id.* at 753.  On

appeal, the Seventh Circuit determined that the defendant did not abandon his Fifth

Amendment privilege until just before trial and, therefore, the district court should

have either prevented the defendant from testifying about matters about which he had

previously refused to testify or allowed the plaintiff to impeach him with his prior

silence on those matters.  *Id.* at 754-55.  The court agreed with the plaintiff that "it was

error for the district court to exclude [the defendant's] prior silence because the effect of

such a ruling" was tantamount to allowing the defendant to avoid discovery altogether.

*Id.* at 754.  The court then determined that the erroneous exclusion of the defendant's

prior invocation of the Fifth Amendment was not harmless error and reversed and

remanded for a new trial.  *Id.* at 755-56.  This court concludes that the situation here was

entirely different.  Defendant clearly participated in discovery and Plaintiffs are only

complaining about some details they contend were not disclosed, not the avoidance of

discovery altogether.

In *Fortino v. Quasar Co.*, 950 F.2d 389 (7th Cir. 1991), the case was remanded for a

new trial on two of the plaintiffs' age discrimination claims.  This ruling was based, in

part, on a witness's testimony that an executive of the defendant company told him that

the executive planned "'to reduce costs by targeting the older employees' for

termination."  *Fortino*, 950 F.2d at 396.  The plaintiffs had disclosed the witness but not

the statement.  *Id.*  The court concluded that, given the "critical and unexpected nature

of the [witness's] testimony," the defendant could not have anticipated it.  *Id.*  The court

15

also stated that the plaintiffs could not have thought either that the defendant would anticipate it or that "the testimony would be of merely incidental significance to the trial." *Id.* at 396. The court concluded that "the plaintiffs' failure to disclose it could not be shrugged off as an inadvertent or immaterial failure to supplement—the sort of thing easy to overlook in the haste and turmoil of trial preparation" so that it "was unquestionably a violation of Rule 26." *Id.* at 396-97.

Again, the situation here was much different. The subject matter of the challenged testimony by Defendant was disclosed during discovery, just not in the manner Plaintiffs would have preferred.

In *Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir. 1977), another case relied upon by Plaintiff, the court found that the district judge properly refused to let the plaintiff present an alternative theory of liability at trial because the plaintiff failed to supplement discovery responses to disclose this theory. That was not the situation here.

This court agrees with Defendant that the testimony presented at trial was adequately disclosed during discovery and was properly admitted. Defendant has shown that the dispatch communications were disclosed during discovery and Plaintiffs' counsel was clearly aware of the statement that "[t]he dog is almost dead." Further, because Defendant had not previously stated that he relied on that statement, Plaintiffs were given the opportunity to impeach Defendant's testimony on that point. And the subjects of the shift change and the possible use of OC spray were also

16

discussed during discovery.[3]

Most importantly, this court does not find persuasive Plaintiffs' argument that Defendant could not testify regarding anything not specifically included in this police report because he did not supplement his answers to interrogatories.   As noted, this court has already rejected this argument.

This court now notes that, if Plaintiffs' view were correct, an attorney could ask one question in the interrogatories, "Tell me everything you know about this case." Then, at trial, anything that was not explicitly stated in response to that question would be barred as a violation of discovery.  However, that simply is not how it works in actual litigation.  Parties provide answers to written discovery that are as complete as possible, but generally do not include every single possible detail.  Depositions are therefore utilized to discover additional information.  Nonetheless, it is not uncommon for additional details to come up at trial, and that these details may be important[4] to a party's theory of the case.

In this court's view, the addition of a few details to a disclosed narrative cannot be considered a discovery violation.  Further, as any experienced litigator knows, impeachment can be used, as it was in this case, to inform the jury that a witness did not

---

[3] This court is not persuaded by Plaintiffs' argument that they were prejudiced because they had no ability to explore these topics with Sergeant Crane.  Plaintiffs have argued that they could not question Crane on these subjects because they were not raised by Defendant's testimony until after Sergeant Crane had already testified. Plaintiffs have not given any reason why they could not have recalled Crane to testify.

[4] Or perhaps even details that become critical in closing arguments.

17

include these details in deposition testimony thereby calling the witness's credibility on those points into question.

This court also concludes that, in any case, Plaintiffs have not shown that they are entitled to a new trial based upon any erroneously admitted evidence. "A new trial may be granted in the event of an error in the admission of evidence only if the improperly admitted evidence had a 'substantial influence over the jury' and the result was 'inconsistent with substantial justice.'" *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 929-30 (7th Cir. 2004), *quoting David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003). The Seventh Circuit has recognized that "evidentiary errors satisfy this standard only if a significant chance exists that they affected the outcome of the trial." *Woodward*, 368 F.3d at 930, *quoting Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1048 (7th Cir. 2000). Accordingly, a court will only grant a new trial if the alleged evidentiary errors "substantially sway[ed] the jury" in reaching its verdict. *See Barber v. City of Chicago*, 725 F.3d 702, 715 (7th Cir. 2013).

This court simply cannot agree with Plaintiffs that "the new evidence was key and critical to the jury's verdict in favor of Defendant." The challenged evidence was only a small part of Defendant's persuasive testimony and this court is confident that the evidence did not have a "substantial influence over the jury" and did not "substantially sway the jury" in reaching its verdict.

REQUESTED JURY INSTRUCTION

18

Plaintiffs next argued that they are entitled to a new trial because this court erred when it did not give a jury instruction requested by Plaintiffs.  Prior to trial, Plaintiffs proposed a signifcant modification of the jury instruction regarding "Fourth Amendment: Seizure - Definition of "Unreasonable."  Plaintiffs proposed that the instruction be modified to state:

> You must decide whether Defendant's shooting of Plaintiffs' dog was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendant faced.  You must make this decision based on what the officer knew at the time of the incident, not based on what you know now.  In deciding whether Defendant's shooting was reasonable, you must not consider whether Defendant's intentions were good or bad.

> In performing his job, an officer can use force that is reasonably necessary under the circumstances.

> Use of deadly force against a household pet is reasonable only if the pet poses [an] immediate danger and the use of force is unavoidable.[5]

Plaintiffs cited *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) in support of this instruction.

---

[5]  The actual instruction proposed by Plaintiffs stated that "Use of deadly force against a household pet is reasonable only if the pet poses <u>no</u> immediate danger and the use of force is unavoidable."  This, obviously, makes no sense so this court has corrected the typographical error.

This court rejected this instruction, finding that the last sentence of the proposed
instruction, which contained language included in the *Viilo* case, was not applicable to
this case.  This court gave the following instruction:

> You must decide whether Defendant's seizure was
>
> unreasonable from the perspective of a reasonable officer facing the
>
> circumstances that Defendant faced.  You must make this decision
>
> based on what Defendant knew at the time of the incident, not based
>
> on what you know now.  In deciding whether Defendant's seizure
>
> was unreasonable, you must not consider whether Defendant's
>
> intentions were good or bad.
>
> In performing his job, an officer can use force that is
>
> reasonably necessary under the circumstances.

This instruction was based upon Instruction 7.09 of the Federal Civil Jury Instructions of
the Seventh Circuit.  This court also instructed the jury that "[t]he term 'seizure' used in
these instructions refers to the shooting of the dog."

Plaintiffs insist that it was prejudicial error for this court to reject their proposed
instruction because the instruction  was consistent with the standard applicable in
Illinois.  Plaintiffs argued that the "outcome of this case would have been far different
had this Court correctly instructed the jury concerning the standard of reasonableness
applicable in the instance a police officer shoots a domestic pet."

Defendant responded that modifying the jury instruction as requested by
Plaintiffs would have been improper because *Viilo* was distinguishable based on the
facts.  This court agrees with Defendant.

In *Viilo*, six police officers approached the front door of the plaintiff's house after
receiving an anonymous tip that a wanted felon had entered the house accompanied by
a pit bull.  *Viilo*, 547 F.3d at 708.  The plaintiff's dog, a seven-year-old Labrador
Retriever/Springer Spaniel mix, ran toward the officers from the backyard.  *Id.* at 708-
09.  One of the police officers fired two shots at the plaintiff's dog, seriously injuring
him.  *Id.* at 709.  The dog retreated to the bushes and hid.  *Id.* at 709.  When the dog later
came out from under the bushes, another police officer shot the dog a third and fourth
time, killing the dog.  *Id.* at 709.

The Seventh Circuit noted that the parties' versions of the events leading up to
the shooting of the dog "could not be more different."  *Id.* at 712.  The plaintiff and other
witnesses described a friendly dog who was trying to greet the police officers and came
out from under the bushes to try to get to the plaintiff.  *Id.* at 709.  The police officers,
however, described a growling dog who was exposing his teeth and gums and ran out
from under the bushes with his teeth and gums exposed.  *Id.* at 708-09.  The Seventh
Circuit determined that the existence of disputed issues of fact deprived the court of
jurisdiction, and the court dismissed the police officers' appeal from the district court's
denial of their motion for summary judgment on the basis of qualified immunity.  *Id.* at
712.  The Seventh Circuit stated, however, that there was "no question that [the

plaintiff's] account of events establishes a violation of her constitutional rights." *Id.* at 710. The court then stated that the defendant police officers' actions were "constitutional only if reasonable" and that "[b]oth common sense, and indeed Wisconsin law, *see* Wis. Stat. § 174.01(1), counsel that the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable." *Id.* at 710.

This court stated, in rejecting Plaintiff's request for an instruction including non-pattern instruction language taken from the decision in *Viilo*, that the facts of *Viilo* were distinguishable from the facts of this case and that Wisconsin law is not applicable in this case.[6] This court again concludes that the requested instruction was properly rejected. The facts of *Viilo* involved police officers coming to a house and shooting and killing a pet dog at the house. That is a much different situation from the facts of this case, where Defendant was flagged down at the scene of a dog fight. In fact, this court concludes that the requested instruction would have been confusing to the jury. The instruction would have stated that Defendant could not use deadly force against Plaintiffs' dog, a household pet, unless the dog posed an immediate danger. This statement would make sense in the situation in *Viilo*, where police officers arrived at a home and claimed to be concerned for their safety when the plaintiff's dog ran toward

---

[6] This court now recognizes that it misspoke when it stated that the facts of *Viilo* involved the execution of a search warrant. Instead, it involved police officers who, based upon an anonymous tip, came to the plaintiff's home to search for a wanted felon that had allegedly entered the house. This court concludes that this misstatement did not make any difference in the court's analysis.

them.  It does not make sense in this situation, where Defendant came to the scene of the dog fight to try to protect Plaintiffs' dog from an attack by a stray pit bull.  Also, the Wisconsin statute referred to by the Seventh Circuit states that "a person may intentionally kill a dog only if a person is threatened with serious bodily harm by the dog and . . . "[o]ther restraining actions were tried and failed; or . . . [i]mmediate action is necessary."  Wis. Stat. § 174.01(1).

Plaintiffs have cited to various sections included in Illinois' Animal Control Act and have argued that the Wisconsin statute is not different from Illinois law.  This court, in its Order (#65) ruling on the Motions for Summary Judgment, noted that Plaintiffs did not explain why the Animal Control Act has any application to this case.  This court notes that the Animal Control Act appears to regulate how the animal control administrator and animal control personnel are to do their jobs and, for example, talks about when a dog "may be apprehended and impounded," 510 Ill. Comp. Stat. 5/9.  In any case, the sections cited by Plaintiffs do not include language similar to the language in the Wisconsin statute.

To win a new trial based on a the court's failure to give a proposed jury instruction, Plaintiffs "must show that the instructions did not adequately state Seventh Circuit law and [they were] prejudiced by the error because the jury was likely confused or misled."  *See Huckaba v. CSX Transp., Inc.*, 2015 WL 672334, at *6 (S.D. Ill. 2015), *citing Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001).  This court concludes that the instructions given to the jury adequately stated

Seventh Circuit law and the jury was not confused or misled.  As noted, the instruction

proposed by Plaintiffs is the one that could have caused jury confusion.

WEIGHT OF EVIDENCE

Plaintiffs' last argument is that the jury verdict was against the manifest weight

of the evidence.  This court does not agree.

In considering whether the jury verdict is against the manifest weight of the

evidence, a court analyzes the "general sense of the weight of the evidence, assessing

the credibility of the witnesses and the comparative strength of the facts put forth at

trial." *Mejia v. Cook County, Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).  "Once a jury has

spoken, [courts] are obliged to construe the facts in favor of the parties who prevailed

under the verdict." *Tate v. Executive Mgmt. Servs., Inc.*, 546 F.3d 528, 531 (7th Cir. 2008),

*quoting Tart v. Ill. Power Co.*, 366 F.3d 461, 464 (7th Cir. 2004).  After a jury has evaluated a

case, the question is not whether the jury believed the right people, "but only whether it

was presented with a legally sufficient amount of evidence from which it could

reasonably derive its verdict." *Massey v. BlueCross-Blue Shield of Ill.*, 226 F.3d 922, 924

(7th Cir. 2000).  A verdict will be set aside as contrary to the manifest weight of the

evidence only if "no rational jury" could have rendered the verdict. *Moore ex rel. Estate*

*of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008); *see also BP Amoco Chem. Co. v. Flint*

*Res., LLC*, 697 F. Supp. 2d 1001, 1015 (N.D. Ill. 2010).  However, "[i]f, after evaluating the

evidence, the district court is of the opinion that the verdict is against the manifest

weight of the evidence, a new trial is appropriate." *Mejia*, 650 F.3d at 633.

24

At trial, this court had the opportunity to observe the manner and demeanor of the witnesses who testified.  During their testimony, all three Plaintiffs, by their body language and choice of words, showed that  they were angry and believed that they were entitled to substantial damages for the loss of their dog.  It appeared that Plaintiffs' presentation of evidence was more focused on damages than liability.  This court wants to be clear that Plaintiffs did present evidence from which a jury could have found in their favor.  However, in contrast to the Plaintiffs, Defendant came across on the witness stand as a very reasonable person who came into a chaotic, emergency situation and did what he thought was best at the time.  This court therefore concludes that the jury was presented with a legally sufficient amount of evidence from which the jury could reasonably derive its verdict in favor of Defendant.  There is no doubt that a rational jury could have rendered a verdict in favor of Defendant.  Accordingly, following its consideration of the evidence presented, this court concludes that the verdict was not against the manifest weight of the evidence and a new trial is not warranted.

IT IS THEREFORE ORDERED THAT:

(1)  Plaintiffs' Motion for Leave to File Reply Instanter (#113) is DENIED.

(2) Plaintiffs' Motion for New Trial and for Imposition of Discovery Sanctions (#108) is DENIED.

ENTERED this 30th day of September, 2015.

s/COLIN S. BRUCE

25

U.S. DISTRICT JUDGE